CRAIG H. MISSAKIAN (CABN 125202)
United States Attorney
PAMELA T. JOHANN (CABN 145558)
Chief, Civil Division
ROMAN A. SWOOPES (CABN 274167)
Assistant United States Attorneys
60 South Market Street, Suite 1200
San Jose, California 95113
Telephone: (408) 535-5084
FAX: (408) 535-5081
Roman.Swoopes@usdoj.gov

Attorneys for Federal Defendants

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | | |
|---|---|---|
| THE CENTER FOR INVESTIGATIVE REPORTING, | ) ) ) | No. 4:25-cv-07309-AMO |
| Plaintiff, | ) ) ) | **DEFENDANTS' NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT** |
| v. | ) ) ) | |
| UNITED STATES DEPARTMENT OF JUSTICE, | ) ) ) ) | Hearing Date:    September 3, 2026<br>Time:    2:00 p.m.<br>Courtroom:    TBD |
| Defendant. | ) ) ) | Judge:    Hon. Araceli Martínez-Olguín |

DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
No. 4:25-CV-07309-AMO

**TABLE OF CONTENTS**

NOTICE OF MOTION AND MOTION ...................................................................................1

MEMORANDUM OF POINTS AND AUTHORITIES ........................................................1

I.    INTRODUCTION ........................................................................................................1

II.   BACKGROUND ...........................................................................................................2

A.    The DOJ's Civil Rights Division and Criminal Section Enforce Civil Rights Laws...................................................................................................................2

B.    Plaintiff's FOIA Requests and DOJ's Responses ...........................................3

    1.    CRT FOIA Reference No. 20-00072-F ("First Request") ....................3

    2.    CRT FOIA Reference No. 24-00143-F ("Second Request")...................5

C.    District Court Litigation and Subsequent Searches for Records .........................5

III.  LEGAL STANDARD.....................................................................................................6

IV.   ARGUMENT...................................................................................................................7

A.    DOJ Properly Invoked Exemption 5.................................................................7

    1.    Overview of Exemption 5 ......................................................................7

    2.    The Requested Records Constitute Attorney Work Product ...................8

    3.    Releasing the Memoranda Would Result in Reasonably Foreseeable Harm .......................................................................................................9

    4.    Publishing Till Act Case Closing Memoranda Does Not Preclude CRT's Exemption 5 Withholdings .........................................................10

B.    DOJ Properly Invoked Other FOIA Exemptions............................................12

    1.    Exemption 3 .........................................................................................12

    2.    Exemption 6 and 7(C).........................................................................13

    3.    Exemption 7(D) ...................................................................................17

    4.    Exemption 7(E) ....................................................................................18

    5.    Exemption 7(F) ....................................................................................19

C.    Plaintiff's First Request Fails to Comply with 5 U.S.C. § 552(a)(3)(A) .........20

V.    CONCLUSION..............................................................................................................22

**TABLE OF AUTHORITIES**

Page(s)

Cases

*A. Michael's Piano, Inc. v. FTC*,
   18 F.3d 138 (2d Cir. 1994)...................................................................................................... 9

*Am. Civil Liberties Union of N. Calif. v. U.S. Dep't of Justice*,
   880 F.3d 473 (9th Cir. 2018) ................................................................................................ 7

*Am. Fed'n of Gov't Emps., Loc. 2782 v. U.S. Dep't of Com.*,
   907 F.2d 203 (D.C. Cir. 1990)............................................................................................ 20

*Anderson v. Liberty Lobby Inc.*,
   477 U.S. 242 (1986)............................................................................................................... 6

*Blackwell v. FBI*,
   646 F.3d 37 (D.C. Cir. 2011).............................................................................................. 14

*Celotex Corp v. Catrett*,
   477 U.S. 317 (1986)............................................................................................................... 6

*Church of Scientology Int'l v. IRS*,
   995 F.2d 916 (9th Cir. 1993) .............................................................................................. 14

*CIA v. Sims*,
   471 U.S. 159 (1985)............................................................................................................. 12

*Corley v. DOJ*,
   998 F.3d 981 (D.C. Cir. 2021)............................................................................................ 12

*DOJ v. Landano*,
   508 U.S. 165 (1993)............................................................................................................. 17

*DOJ v. Reporters Comm. for Freedom of the Press*,
   489 U.S. 749 (1989)...................................................................................................... 13, 14

*Dow Jones & Co. v. DOJ*,
   917 F.2d 571 (D.C. Cir. 1990)............................................................................................ 17

*Gardels v. CIA*,
   689 F.2d 1100 (D.C. Cir. 1982).......................................................................................... 12

*Gavin v. SEC*,
   No. 04-4522, 2007 WL 2454156 (D. Minn. Aug. 23, 2007)................................................ 9

*Hamdan v. DOJ*,
   797 F.3d 759 (9th Cir. 2015) .............................................................................................. 18

*Heggestad v. U.S. Dep't of Just.*,
   182 F. Supp. 2d 1 (D.D.C. 2000).......................................................................................... 9

*Kamman v. IRS*,
   56 F.3d 46 (9th Cir. 1995) .................................................................................................... 7

*King v. U.S. Dep't of Justice*,
   830 F.3d 210 (D.C. Cir. 1987).............................................................................................. 7

*Kishore v. DOJ*,
   575 F. Supp. 2d 243 (D.D.C. 2008) ...................................................................................... 9

*Lane v. Dep't of the Interior*,
   523 F.3d 1128 (9th Cir. 2008) .............................................................................................. 7

*Martin v. Off. of Special Couns.*,
   819 F.2d 1181 (D.C. Cir. 1987)............................................................................................ 9

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
   475 U.S. 574 (1986)............................................................................................................... 6

Michael v. DOJ,
   No. 17-0197 (ABJ), 2018 WL 4637358 (D.D.C. Sept. 27, 2018) ...................................... 19

*Military Audit Project v. Casey*,
   656 F.2d 724 (D.C. Cir. 1981).............................................................................................. 7

*Morley v. CIA*,
   508 F.3d 1108 (D.C. Cir. 2007) .......................................................................................... 12

*Multi Ag Media LLC. v. USDA*,
  515 F.3d 1224 (D.C. Cir. 2008) ............................................................................................ 13
*Nat. Labor Relations Bd. v. Sears, Roebuck & Co.*,
  421 U.S. 132 (1975) ................................................................................................................ 7
*Nation Mag., Washington Bureau v. U.S. Customs Serv.*,
  71 F.3d 885 (D.C. Cir. 1995) ............................................................................................... 20
*Nat'l Archives & Records Admin. v. Favish*,
  541 U.S. 157 (2004) .............................................................................................................. 13
*Nat'l Resources Defense Council v. U.S. Dep't of Defense*,
  388 F. Supp. 2d 1086 (C.D. Cal. 2005) ................................................................................. 6
*Nat'l Sec. Couns. v. Cent. Intel. Agency*,
  969 F.3d 406 (D.C. Cir. 2020) ............................................................................................. 20
*Pac. Fisheries Inc. v. United States*,
  539 F.3d 1143 (9th Cir. 2008) ............................................................................................... 9
*Porter v. Cal Dep't of,*
  *Corrs.*, 419 F.3d 885 (9th Cir. 2005) .................................................................................... 6
*Power the Future v. White House Council on Env't Quality*,
  No. CV 24-1942 (RC), 2025 WL 2206947 (D.D.C. Aug. 4, 2025) ...................................... 20
*Rosenfeld v. U.S. Dep't of Justice*,
  57 F.3d 803 (9th Cir. 1995) ................................................................................................. 14
*Sakamoto v. U.S. Envt'l Prot. Agency*,
  443 F. Supp. 2d 1182 (N.D. Cal. 2006) ................................................................................. 6
*Schultz v. Fed. Bureau of Investigation*,
  No. 1:05-CV-0180 AWI GSA, 2016 WL 829154 (E.D. Cal. Mar. 3, 2016) ......................... 19
*Simon v. Dep't of Justice*,
  980 F.2d 782 (D.C. Cir. 1992) ............................................................................................. 14
*U.S. Dep't of Def. v. Fed. Labor Relations Auth.*,
  510 U.S. 487 (1994) .............................................................................................................. 13
*United States v. Richey*,
  632 F.3d 559 (9th Cir. 2011) ................................................................................................. 7
*United States v. Weber Aircraft Corp.*,
  465 U.S. 792 (1984) ................................................................................................................ 8
*Vaughn v. Rosen*,
  484 F.2d 820 (D.C. Cir. 1973) ............................................................................................... 2
*Weirich v. Bd. of Governors of the Fed. Rsrv. Sys.*,
  No. CV-10-5031-EFS, 2010 WL 4717211 (E.D. Wash. Nov. 15, 2010) ............................. 22
*Yagman v. Pompeo*,
  868 F.3d 1075 (9th Cir. 2017) ............................................................................................. 20
*Yeager v. DEA*,
  678 F.2d 315 (D.C. Cir. 1982) ............................................................................................. 20

Statutes

5 U.S.C. § 552 ................................................................................................................. passim
18 U.S.C. §§ 241-242 ...................................................................................................... passim
18 U.S.C. § 3509 .................................................................................................................... 12
28 U.S.C. § 509 ...................................................................................................................... 11
42 U.S.C. § 3631 .................................................................................................................... 11
Pub.L. 110-344 ................................................................................................................... 6, 10
Pub.L. 114-325 ................................................................................................................... 6, 11
Pub.L. 115-426 ...................................................................................................................... 11

Rules

Fed. R. Civ. P. 26 .................................................................................................................... 7
Fed. R. Civ. P. 56 .................................................................................................................... 6

**NOTICE OF MOTION AND MOTION**

PLEASE TAKE NOTICE that, on September 3, 2026, at 2:00 p.m., or as soon thereafter as the matter may be heard before the Honorable Araceli Martínez-Olguín, in the Federal District Courthouse, 1301 Clay Street, Oakland, CA 94612, Defendant United States Department of Justice ("DOJ") will and hereby does move this Court for an order pursuant to Federal Rule of Civil Procedure 56 for summary judgment as to Plaintiff The Center for Investigative Reporting ("Plaintiff" or "CIR")'s requests for documents pursuant to the Freedom of Information Act (FOIA). This motion is based on this notice; the accompanying memorandum of points and authorities; the Declaration of John Buchko, any other matters of which the Court takes judicial notice; and any such oral argument the Court may hear.

**RELIEF SOUGHT**

DOJ seeks summary judgment in its favor and against Plaintiff.

**ISSUES TO BE DECIDED (CIV. L.R. 7-4(A)(3))**

1. Whether DOJ has complied with its obligations under FOIA regarding withholding information?

2. Whether Plaintiff's December 19, 2019 FOIA Request complies with 5 U.S.C. § 552(a)(3)(A)'s requirement to reasonably describe the records sought without posing an undue burden to DOJ?

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.    INTRODUCTION**

This case involves Plaintiff's requests under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, for internal "closing memoranda" describing the DOJ Civil Rights Division's decisions to close particular civil rights investigations without bringing criminal charges. Plaintiff's requests relate to 18 U.S.C. § 242, which makes it a crime for a person acting under color of any law to willfully deprive a person of a right or privilege protected by the Constitution or laws of the United States. Plaintiff submitted two FOIA requests to DOJ for long-form closing memoranda from cases involving alleged violations of 18 U.S.C. § 242 that resulted in death. The First Request sought closing memos from 1998 to 2018, and the Second Request covered 2018 to 2024—collectively, a 25-year period. When DOJ responded that Plaintiff's requests were improper and that the closing memoranda are exempt from disclosure, Plaintiff

filed the instant lawsuit seeking to compel production of the memoranda.

Plaintiff's claims lack support, and DOJ is entitled to summary judgment. First, as explained in the declaration of John Buchko, all of the closing memoranda in dispute constitute attorney work product and are thus exempt from disclosure under FOIA Exemption 5, 5 U.S.C. § 552(b)(5). DOJ reviewed all 50 of the long-form closing memos that were responsive to Plaintiff's Second Request, covering 2018 to 2024.[1] It found that all of the closing memos constitute attorney work product and are thus exempt from disclosure.[2] DOJ further found that the same logic would apply to the memos sought by Plaintiff's First Request, covering 1998 to 2018. Accordingly, all of the memos that Plaintiff seeks are exempt from disclosure.

Second, as explained in Mr. Buchko's declaration and in § IV.B below, additional FOIA exemptions apply to many of the records responsive to Plaintiff's Second Request.

Third, DOJ was not required to respond to Plaintiff's First Request because it fails to comply with 5 U.S.C. § 552(a)(3)(A)'s requirement to reasonably describe the records sought. Courts have repeatedly held that an agency need not respond to a request that is so broad as to impose an unreasonable burden upon the agency. As explained in Mr. Buchko's declaration, responding to Plaintiff's First Request, which covers a 20-year period, would require DOJ to locate, retrieve, and manually review hundreds or thousands of boxes of paper case files that might or might not contain the long-form closing memoranda responsive to Plaintiff's request. The Court should not require DOJ to undertake this unduly burdensome search.

For the above reasons, the Court should grant summary judgment to DOJ.

## II.    BACKGROUND

### A.    The DOJ's Civil Rights Division and Criminal Section Enforce Civil Rights Laws

The Criminal Section of DOJ's Civil Rights Division investigates and prosecutes cases throughout the United States involving the interference with liberties and deprivation of rights defined in the Constitution or federal law. Declaration of John Buchko ("Buchko Decl.") ¶ 36. 18 U.S.C. §§ 241-242 are two of the criminal statutes enforced by the section. *Id.* The Civil Rights Division is sometimes

---

[1] A list of the case files that DOJ reviewed is found in DOJ's *Vaughn* Index, Attachment A to the Declaration of John Buchko. *See Vaughn v. Rosen*, 484 F.2d 820 (D.C. Cir. 1973).

[2] Prior to this lawsuit, DOJ had released two of the memos pursuant to the Emmit Till Act, which involves different considerations than the FOIA. *See* § IV.A.4 below.

abbreviated "CRT."

18 U.S.C. § 241, Conspiracy Against Rights, makes it a crime for:

> two or more persons [to] conspire to injure, oppress, threaten, or intimidate any person in any State, Territory, Commonwealth, Possession, or District in the free exercise or enjoyment of any right or privilege secured by him by the Constitution or laws of the United States, or because of his having so exercised the same" or for "two or more persons go in disguise on the highway, or on the premises of another, with intent to prevent or hinder his free exercise or enjoyment of any right or privilege so secured."

18 U.S.C. § 242, Deprivation of Rights Under Color of Law, makes it a crime for anyone:

> under color of any law, statute, ordinance, regulation, or custom, [to] willfully subject[] any person in any State, Territory, Commonwealth, Possession, or District to the deprivation of any rights, privileges, or immunities secured or protected by the Constitution or laws of the United States, or to different punishments, pains, or penalties, on account of such person being an alien, or by reason of his color, or race, than are prescribed for the punishment of citizens … .

The Criminal Section is the only component of the Civil Rights Division that prosecutes criminal violations, while the remainder of the Division handles civil matters. Buchko Decl. ¶ 52. As experts in the field of criminal civil rights enforcement, Criminal Section prosecutors often partner with the 94 United States Attorney's Offices throughout the country, as well as with federal and local investigators. *Id.* Criminal Section prosecutors often work with state and local prosecutors to determine where a case should be handled. *Id.* In some instances, Criminal Section prosecutors handle investigations due to actual or perceived conflicts of interest in local jurisdictions. *Id.* In every case, the ultimate goal of the Criminal Section is to ensure that allegations are thoroughly and fairly investigated, that acts constituting federal criminal civil rights violations are sufficiently remedied, and that the rights of the victims are vindicated. *Id.*

**B.      Plaintiff's FOIA Requests and DOJ's Responses**

**1.      CRT FOIA Reference No. 20-00072-F ("First Request")**

By letter dated December 19, 2019, and received by CRT via First Class Mail on January 2, 2020, Melissa Lewis, an investigative reporter with Plaintiff, the Center for Investigative Reporting (CIR), submitted a FOIA request to CRT. Ex. 1.[3] The exhibit CIR attached to Plaintiff's Complaint is a request

---

[3] All cited exhibits are attached to the concurrently filed Declaration of John Buchko.

that CIR apparently submitted to the FBI; a true and correct copy of the separate request that Plaintiff submitted to CRT, at issue here, is attached as Exhibit 1. Buchko Decl. ¶ 6. Plaintiff's request sought:

- The number of matters investigated or reviewed by the Civil Rights Division under 18 USC 241-242, Deprivation of Rights Under the Color of Law, between 1998 and 2018 including:

  o File Number or Case Number
  o Date Opened
  o Type of Case
  o Synopsis of Case
  o Cause & Manner of Death When Applicable
  o Date of Disposition
  o Recommendation/Disposition of cases
  o Name of Victim(s)/Subject(s)/Each Party
  o Race of Victim(s)/Subject(s)/Each Party
  o Age of Victim(s)/Subject(s)/Each Party
  o Gender of Victim(s)/Subject(s)/Each Party
  o Date(s) of Incident
  o Location of Incident – Municipality, County, State
  o Name of Lead Investigator/Trial Attorney
  o Other local and federal agencies involved in reviewing, assisting or investigating
  o Any other significant actions, recommendations or findings

- Any long-form closing memoranda reflecting the Division's decision not to prosecute a 242 matter that resulted in death.

Ex. 1. CRT assigned this request FOIA reference number 20-00072-F. Buchko Decl. ¶ 9.

In response to the first part of this request, on September 19, 2022, CRT released a spreadsheet compiled by the Criminal Section, which included many of the data elements identified in the first bullet point of the request (seeking the numbers of matters investigated or reviewed by CRT under 18 U.S.C. §§ 241-242, Deprivation of Rights Under Color of Law). Buchko Decl. ¶ 12.a. CRT explained that names of victims, subjects, and investigators/attorneys were not included in the spreadsheet because they were exempt from disclosure pursuant to Exemption 7(C), 5 U.S.C. § 552(b)(7)(C). *Id.* CRT further explained that it does not track race, age, or gender of victims or subjects in its database, nor does the database include synopses, so this data was not available. *Id.* DOJ understands that its response to the first bullet point of Plaintiff's request is not at issue in this litigation.

In response to the second bullet point of the request for "long-form closing memoranda reflecting the Division's decision not to prosecute a 242 matter that resulted in death," CRT responded that those memoranda are exempt in full pursuant to FOIA Exemptions 5, 7(C), and 7(E), 5 U.S.C. §§ 552(b)(5),

(7)(C), (7)(E).  Buchko Decl. ¶ 12.b.  Following an administrative appeal, CRT maintained its refusal to provide the requested records and also explained that the request failed to satisfy the statutory requirement that FOIA requests reasonably describe the records sought, *see* 5 U.S.C. § 552(a)(3)(A), because the request was overly broad and complying with it would be unduly burdensome.  *See* Ex. 7.  DOJ identified around 1,773 cases that may contain long-form closing memos.  Buchko Decl. ¶ 40.

### 2.    CRT FOIA Reference No. 24-00143-F ("Second Request")

On March 7, 2024, Jonathan Jones, a reporter with CIR, attempted to submit a new FOIA request to CRT for the long-form closing memoranda.  Ex. 11.  In the request, Jones sought "any long-form closing memoranda reflecting the Division's decision not to prosecute a (18 U.S.C.) 242 matter that resulted in death between 2018 and 2024."  *Id.*  He indicated that he "previously requested this exact material and the OIP remanded the request on September 20, 2023 to your office … but your office has still not processed the request."  *Id.*  CRT mistakenly concluded that this new request fully duplicated Part 2 of 20-00072-F.  As a result, CRT closed it as a duplicate request, included it in 20-00072-F, and advised Plaintiff of this via email dated March 7, 2024.  Ex. 12.

During the course of an administrative appeal, DOJ realized that the Second Request included a different date range and was not an exact duplicate of the First Request.  Buchko Decl. ¶ 27.  DOJ reopened the request.

### C.    District Court Litigation and Subsequent Searches for Records

On August 29, 2025, Plaintiff filed the present lawsuit concerning both requests described above.  Dkt. No. 1.

On February 3, 2026, the parties submitted a Joint Status Report in which CRT agreed to "provide a final determination and disclose all nonexempt material" in response to the Second Request by April 3, 2026.  *See* Dkt. No. 25.  DOJ estimated at the time that the Second Request (covering 2018-2024) would require it to search the files from over 50 cases.  *Id.*  The parties indicated that they would "confer in good faith about the scope of the request for Closing Memos from 1998-2017 and whether and to what extent the universe of potentially responsive material might be narrowed."  *Id.*

On April 3, 2026, CRT notified Plaintiff that it was withholding all but two long-form memoranda from cases closed between 2018 and 2024 because they are exempt pursuant to Exemption 5 in

conjunction with the attorney work product privilege. Ex. 16. As to the other two memoranda, CRT notified Plaintiff that they were reviewed under the Emmett Till Unsolved Civil Rights Crime Act, Pub.L. 110-344 (Oct. 7, 2008), and its reauthorization act, the Emmett Till Unsolved Civil Rights Crimes Reauthorization Act of 2016, Pub.L. 114-325 (Dec. 16, 2016) (collectively, the "Emmett Till Act"); explained that CRT publishes closure memoranda in Emmett Till Act cases consistent with the transparency aspects of the civil rights cold case initiative; and provided links to those memoranda on DOJ's website. CRT further explained that some of the withheld memoranda also contained information that is exempt pursuant to Exemptions 3, 6, 7(C), 7(D), and/or 7(E). Finally, CRT explained that it had considered whether there was foreseeable harm from disclosure and concluded that such harm existed.

DOJ's *Vaughn* index, Attachment A to the Buchko declaration, shows the exemptions that apply to records DOJ found responsive to Plaintiff's Second Request.

On May 4, 2026, the parties submitted a stipulation proposing cross-motions for summary judgment to resolve their disagreements with DOJ's production obligations. Dkt. No. 26.

## III.    LEGAL STANDARD

A motion for summary judgment is appropriately granted when the pleadings and evidence demonstrate "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby Inc.,* 477 U.S. 242, 247 (1986); *Celotex Corp v. Catrett*, 477 U.S. 317, 322 (1986). The party seeking summary judgment bears the burden of demonstrating the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. A genuine issue of material fact is one that "might affect the outcome of the suit under the governing law." *Anderson,* 477 U.S. at 248. In determining whether there exists a genuine issue of material fact, the court must view all facts, and reasonable inferences drawn therefrom, in light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Porter v. Cal Dep't of Corrs.*, 419 F.3d 885, 891 (9th Cir. 2005).

Summary judgment is recognized as a proper avenue for resolving a FOIA claim. *See Sakamoto v. U.S. Envt'l Prot. Agency*, 443 F. Supp. 2d 1182, 1188 (N.D. Cal. 2006). In fact, it "is the procedural vehicle by which nearly all FOIA cases are resolved." *Nat'l Resources Defense Council v. U.S. Dep't of Defense*, 388 F. Supp. 2d 1086, 1094 (C.D. Cal. 2005). The government bears the burden of proving that

any withheld information falls within an exemption it invokes. *See* 5 U.S.C. § 552(a)(4)(B); *King v. U.S. Dep't of Justice*, 830 F.3d 210, 217 (D.C. Cir. 1987). The government may meet its burden by submitting agency affidavits or declarations that "describe the documents and the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith." *Military Audit Project v. Casey*, 656 F.2d 724, 738 (D.C. Cir. 1981); *Kamman v. IRS*, 56 F.3d 46, 48 (9th Cir. 1995) (noting that government affidavits "may not rely upon conclusory and generalized allegations of exemptions"). "If the affidavits contain reasonably detailed descriptions of the documents and allege facts sufficient to establish an exemption, the district court need look no further" and may grant summary judgment to the government based entirely on information set forth in the affidavit. *Lane v. Dep't of the Interior*, 523 F.3d 1128, 1135-36 (9th Cir. 2008); *Kamman*, 56 F.3d at 48; *Military Audit Project*, 656 F.2d at 738.

## IV.  ARGUMENT

### A.  DOJ Properly Invoked Exemption 5

#### 1.  Overview of Exemption 5

FOIA Exemption 5 protects from disclosure "inter-agency or intra-agency memorandums or letters" that are not discoverable in litigation. 5 U.S.C. § 552(b)(5). "Exemption 5 encompasses records 'normally privileged in the civil discovery context.'" *Am. Civil Liberties Union of N. Calif. v. U.S. Dep't of Justice*, 880 F.3d 473, 483 (9th Cir. 2018) (quoting *Nat. Labor Relations Bd. v. Sears, Roebuck & Co.*, 421 U.S. 132, 149 (1975)). Simply put, "Exemption 5 withholds from a member of the public documents which a private party could not discover in litigation with the agency." *Sears*, 421 U.S. at 148.

Among other privileges, Exemption 5 incorporates the attorney-client privilege and the work product doctrine. *ACLU*, 880 F. 3d at 483. "The attorney-client privilege protects confidential communications between attorneys and clients, which are made for the purpose of giving legal advice." *United States v. Richey*, 632 F.3d 559, 566 (9th Cir. 2011). The work product doctrine protects from discovery "mental impressions, conclusions, opinions, or legal theories of a party's attorney" prepared in anticipation of litigation. Fed. R. Civ. P. 26(b)(3)(B). Plaintiff should not be allowed to use FOIA to circumvent traditional discovery rules. The Supreme Court has consistently rejected the idea that a party

can "obtain through the FOIA material that is normally privileged [because it] would create an anomaly in that the FOIA could be used to supplement civil discovery." *United States v. Weber Aircraft Corp.*, 465 U.S. 792, 801 (1984). Were there a civil rights lawsuit, Plaintiff would not be able to obtain DOJ's closing memoranda, and Plaintiff should not be able to obtain through FOIA material that it could not obtain in litigation.

### 2.    The Requested Records Constitute Attorney Work Product

The records at issue in this case—long form closure memoranda—are covered by the attorney work product privilege and thus exempt from disclosure under Exemption 5. Because the memoranda all follow the same fundamental format, contain the same types of information, and serve the same purpose, Buchko Decl. ¶ 47, the Court should find that all of them are exempt from disclosure, regardless of date.

As a threshold matter, the memoranda, prepared by Civil Rights Division prosecutors recommending that prosecution be declined, are internal to the Department of Justice and thus satisfy Exemption 5's "inter- or intra-agency" requirement. Buchko Decl. ¶ 49.

The memoranda are also materials prepared or developed by or at the direction of an attorney in reasonable anticipation of litigation. For purposes of attorney work product protection, litigation is anticipated when the Government is investigating specific wrongdoing in an attempt to gather evidence and build a case against a suspected wrongdoer. The Civil Rights Division's Criminal Section enforces criminal civil rights laws that date to the post-Civil War Reconstruction Era. Buchko Decl. ¶ 52. The section investigates and prosecutes cases throughout the United States involving the interference with liberties and deprivation of rights defined in the Constitution or federal law including, for example, 18 U.S.C. §§ 241, Conspiracy Against Rights, and 242, Deprivation of Rights Under Color of Law. *Id.* As experts in the field of criminal civil rights enforcement, Criminal Section prosecutors often partner with the 94 United States Attorney's Offices throughout the country, as well as with federal and local investigators. *Id.*

With respect to the memoranda at issue, the Criminal Section was investigating and analyzing the cases at issue for the purpose of determining whether the actions of federal, state, or local law enforcement officials violated federal criminal civil rights laws. *Id.* ¶ 53. If it was determined that any such laws were violated, the Civil Rights Division could have prosecuted the subjects. *Id.* Accordingly, the long form

closure memoranda were prepared in aid of litigation.

The memoranda at issue are, in the purest sense, attorney work product in that they consist of the thoughts and impressions of the Criminal Section prosecutors assigned to the criminal investigations. *Id.* ¶ 54. The memoranda reflect prosecutors' analysis and mental impressions about what facts were relevant to the potential charges in the case, the relative strengths and/or weaknesses of evidence necessary to prove those facts and the existence of any contradictory facts or evidence, the availability and reliability of witnesses, and whether the facts that could be proven were sufficient to carry the government's burden of establishing guilt beyond a reasonable doubt. *Id.* They were intended solely for use within the Department of Justice. *Id.* Hence, these records were prepared in reasonable anticipation of litigation.

Moreover, under the FOIA, work product protection extends to factual materials as well as an attorney's legal analysis, mental impressions, and opinions. *See, e.g., Martin v. Off. of Special Couns.*, 819 F.2d 1181, 1187 (D.C. Cir. 1987) ("The work-product privilege simply does not distinguish between factual and deliberative material."); *accord Pac. Fisheries Inc. v. United States*, 539 F.3d 1143, 1148 (9th Cir. 2008) (noting that "if a document is covered by the attorney work-product privilege, the government need not segregate and disclose its factual contents."). In this case, each of the requested memoranda is exempt in its entirety, and there are no segregable portions that can be released, because all fact and opinion/analytical content are inseparable and privileged. *See* Buchko Decl. ¶ 63.

The fact that litigation never occurred does not render the privilege inapplicable; as long as specific claims have been identified which make litigation possible, the attorney work product privilege applies. *See, e.g., A. Michael's Piano, Inc. v. FTC*, 18 F.3d 138, 146-47 (2d Cir. 1994) (concluding that work product privilege still was applicable even if staff attorney was considering or recommending closing investigation); *Kishore v. DOJ*, 575 F. Supp. 2d 243, 259-60 (D.D.C. 2008) (applying privilege to document explaining government's reasons for declining prosecution); *Gavin v. SEC*, No. 04-4522, 2007 WL 2454156, at *9 (D. Minn. Aug. 23, 2007) (approving use of privilege for documents recommending closing of SEC investigations); *Heggestad v. U.S. Dep't of Just.*, 182 F. Supp. 2d 1, 10–11 (D.D.C. 2000) (holding privilege applicable to prosecution memoranda).

### 3. Releasing the Memoranda Would Result in Reasonably Foreseeable Harm

Before deciding to withhold the long form closure memoranda responsive to Plaintiff's request,

CRT determined that it was reasonably foreseeable that their disclosure would harm an interest protected by Exemption 5 and the attorney work product privilege. *See* Buchko Decl. ¶ 58; 5 U.S.C. § 552(a)(8)(A)(i)(I). The attorney work product privilege exists to create a "zone of privacy" for attorneys contemplating litigation, and the records in this case were created and compiled in furtherance of CRT's decision making about whether to prosecute criminal civil rights violations. Buchko Decl. ¶ 59.

The closure memoranda reflect deliberations by Criminal Section prosecutors as part of the CRT's prosecutorial decision making. Buchko Decl. ¶ 61. A zone of privacy around the prosecutors' forthright internal discussions was and is necessary to protect attorney impressions about core legal strategy and ensure thorough and proper decisions about whether to bring the force of the United States government against an individual in a criminal proceeding. *Id.* Abrogating the protection afforded to this zone by the work product privilege will hinder CRT's future prosecutions. *Id.* Knowing that otherwise privileged communications may be publicly disclosed will chill prosecutors in expressing and memorializing candid thoughts about and analysis of different legal theories, discussing and disagreeing about potential legal arguments and enforcement/prosecution strategies, considering and advocating for or against potentially unpopular or controversial positions, candidly identifying weaknesses, and otherwise zealously representing the interests of their client, the American people. *Id.* Due to the role of these records in CRT's law enforcement/prosecutorial process, their disclosure would deprive prosecutors of the privacy necessary to cull relevant from irrelevant facts, analyze and decide between different legal theories and arguments, assess the strengths and weaknesses of the case, and effectively strategize. *Id.* These are the very harms the attorney work product privilege is intended to prevent.

### 4.    Publishing Till Act Case Closing Memoranda Does Not Preclude CRT's Exemption 5 Withholdings

In 2006, the Federal Bureau of Investigation (FBI) launched a "Cold Case Initiative" to identify and investigate racially motivated murders committed decades ago. *See* https://www.justice.gov/crt/cold-case-initiative (last accessed 6/11/2026). In 2008, Congress passed the Emmett Till Unsolved Civil Rights Crime Act ("Till Act"). *See* Pub.L. 110-344 (Oct. 7, 2008). The law directed DOJ, including the Civil Rights Division and the FBI, to investigate and prosecute violations of criminal civil rights statutes that occurred no later than December 31, 1969, and resulted in death. The law was set to sunset at the end of

fiscal year 2017. The criminal civil rights statutes referenced in the Till Act are 18 U.S.C. §§ 241, 242, 245, 1581, and 1584, and 42 U.S.C. § 3631. The Till Act was reauthorized on December 16, 2016, by the Emmett Till Unsolved Civil Rights Crimes Reauthorization Act of 2016. *See* Pub.L. 114-325 (Dec. 16, 2016). The reauthorization extended coverage to violations of criminal civil rights statutes that occurred not later than December 31, 1979, and resulted in death. The reauthorization also included several transparency-related provisions. *See* 28 U.S.C. § 509 note, Pub.L. 114-325, ¶ 2(C)(3)-(8) (Dec. 16, 2016).

To further enhance transparency of cold civil rights cases, Congress enacted the Civil Rights Cold Case Records Collection Act of 2018 ("CRCCRA"), Pub.L. 115-426 (Jan. 8, 2019). "Civil rights cold cases" were defined to include those arising out of events occurring between January 1, 1940, and December 31, 1979, related to the criminal statutes referenced in the Till Act. This is a separate scheme from the FOIA for public disclosure of the records covered by the CRCCRA, although the CRCCRA explicitly and implicitly incorporates certain protective aspects from FOIA, such as protecting the privacy of living individuals. Buchko Decl. ¶ 67.

The Civil Rights Division's decision to publish closure memoranda from these cases, which are between 36 and 86 years old, does not waive its ability to protect long form closure memoranda from cases that were not part of the Till Act reviews. Buchko Decl. ¶ 68. The Civil Rights Division can decide to waive its privilege and make discretionary releases of information consistent with the transparency requirements of a separate statute without abrogating its ability to preserve the privilege or undermining its reasonable harm determination in other, unrelated FOIA cases. *Id.* For example, Till Act cases often suffered infirmaries due to age. *Id.* ¶ 68 n. 6. Subjects and/or witnesses were dead or their memories of the events had faded, evidence was lost or degraded, and applicable statutes of limitations had long since expired, rendering prosecution impossible. *Id.* These infirmaries, coupled with the Till Act's separate transparency requirements, undergird DOJ's decision to waive any privileges applicable to the Till Act memoranda and publish them on DOJ's website. *Id.* But importantly, these considerations that apply to many Till Act cases do not apply to all Section 241 or 242 investigations and their associated closing memoranda. Accordingly, release of closing memoranda under the Till Act does not waive work product protection for the requested closing memoranda that do not fall within the Till Act's scope.

## B.    DOJ Properly Invoked Other FOIA Exemptions

### 1.    Exemption 3

Exemption 3 exempts from disclosure records that are "specifically exempted from disclosure by [another] statute" if the relevant statute "requires that the matters be withheld from the public in such a manner as to leave no discretion on the issue" or "establishes particular criteria for withholding or refers to particular types of matters to be withheld."  5 U.S.C. § 552(b)(3)(A).  The Government's authority to withhold information under FOIA Exemption 3 is broader than its authority under other exemptions, as it does not have to demonstrate that the disclosure will cause foreseeable harm.  *See CIA v. Sims*, 471 U.S. 159, 167 (1985); *Gardels v. CIA*, 689 F.2d 1100, 1106–07 (D.C. Cir. 1982).  Instead, "the sole issue for decision is the existence of a relevant statute and the inclusion of withheld material within the statute's coverage."  *Morley v. CIA*, 508 F.3d 1108, 1126 (D.C. Cir. 2007).  In analyzing the propriety of a withholding made pursuant to FOIA Exemption 3, the Court need not examine "the detailed factual contents of specific documents."  *Id.*

The Child Victims' and Child Witnesses' Rights Act, 18 U.S.C. § 3509(d), protects from disclosure certain records containing personally identifying information of children who were witnesses to crimes committed against another person.  The statute provides that "all employees of the Government" involved in a particular case shall "keep all documents that disclose the name or any other information concerning a child in a secure place" and disclose such documents "only to persons who, by reason of their participation in the proceeding, have reason to know such information."  *Id.*  Courts have recognized this law as an Exemption 3 withholding statute.  *E.g.*, *Corley v. DOJ*, 998 F.3d 981, 985 (D.C. Cir. 2021).

Several of the records responsive to Plaintiff's requests contain information about minors who witnessed the crimes being investigated or related crimes at issue in the cases, including their names and relationships to other witnesses or victims.  *See* Buchko Decl. ¶ 72, Attach. A.  This information is exempt pursuant to Exemption 3 in conjunction with 18 U.S.C. § 3509(d).

The foreseeable harm standard does not apply to Exemption 3 withholdings.  The FOIA provides that an agency shall only withhold information if: (1) the agency reasonably foresees that disclosure would harm an interest protected by one of the nine exemptions that FOIA enumerates; or (2) disclosure is prohibited by law.  5 U.S.C. § 552(a)(8).  Since disclosure here is prohibited by law, CRT does not have

to demonstrate foreseeable harm from disclosure.

Thus, DOJ properly invoked Exemptions 3.

### 2.    Exemption 6 and 7(C)

Exemption 6 protects information about individuals in "personnel and medical files and similar files" when the disclosure of such information "would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6). Under Exemption 6, the concept of privacy not only encompasses that which is inherently private, but also includes an "individual's control of information concerning his or her person." *DOJ v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749, 763 (1989). To determine whether Exemption 6 protects against disclosure, courts require that agencies engage in a multi-part process: first, determine whether the information at issue is a personnel, medical, or "similar" file, 5 U.S.C. § 552(b)(6); second, determine whether there is a significant privacy interest in the requested information, *see Multi Ag Media LLC. v. USDA*, 515 F.3d 1224, 1229 (D.C. Cir. 2008); third, evaluate the requester's asserted FOIA public interest in disclosure, *see Nat'l Archives & Records Admin. v. Favish*, 541 U.S. 157, 160 (2004); and finally, if there is a significant privacy interest in nondisclosure and a FOIA public interest in disclosure, balance those competing interests to determine whether disclosure "would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6).

In particular, Exemption 6 states that FOIA does not apply to "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6). Because Exemption 6 speaks of an "unwarranted" invasion of personal privacy, "a court must balance the public interest in disclosure against the interest Congress intended the [e]xemption to protect." *U.S. Dep't of Def. v. Fed. Labor Relations Auth.*, 510 U.S. 487, 495 (1994). Once the Government has identified a cognizable privacy interest, "the only relevant 'public interest in disclosure' to be weighed in this balance is the extent to which disclosure would serve the 'core purpose of the FOIA,' which is 'contribut[ing] significantly to public understanding of the operations or activities of the Government." *Id.* (quoting *Reporters Comm. for Freedom of Press*, 489 U.S. at 775). Information that "sheds light on an agency's performance of its statutory duties" falls within this purpose, but "information about private citizens that is accumulated in various Governmental files but that reveals little or nothing

about an agency's own conduct" does not. *Id.* (quoting *Reporters Comm.*, 489 U.S. at 773).

Exemption 7(C) exempts disclosure of information based on privacy concerns by permitting an agency to withhold from disclosure information that is "compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information . . . could reasonably be expected to constitute an unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(7)(C).   The threshold test under Exemption 7(C) is whether the documents have a law enforcement purpose, which requires an examination of whether the agency serves a "law enforcement function."   *Church of Scientology Int'l v. IRS*, 995 F.2d 916, 919 (9th Cir. 1993). A government agency with a clear law enforcement mandate "need only establish a rational nexus between enforcement of a federal law and the document for which [a law enforcement] exemption is claimed." *Rosenfeld v. U.S. Dep't of Justice*, 57 F.3d 803, 808 (9th Cir. 1995); *see also Blackwell v. FBI*, 646 F.3d 37, 40 (D.C. Cir. 2011).   This test "requires courts to accord a degree of deference to a law enforcement agency's decisions to investigate." *Rosenfeld*, 57 F.3d at 808.[4]

Several of the responsive records identified in this case contain information exempt from disclosure pursuant to FOIA Exemptions 6 and 7(C).   This includes the names and other identifying or personal information (e.g., medical information) about numerous categories of people, including DOJ prosecutors and other law enforcement personnel, living crime victims, subjects not charged with Federal criminal civil rights violations, witnesses, informants/confidential sources, family members, and other third parties mentioned in the records.   Buchko Decl. ¶ 74; *see id.* Attach. A.

Here, the protected information applies to particular people.   Thus, Exemption 6's threshold requirement is readily satisfied.

Similarly, Exemption 7's threshold, which requires that records or information were "compiled for law enforcement purposes," is satisfied here.   The Civil Rights Division has authority to enforce Federal civil rights statutes.   Buchko Decl. ¶ 79.   This law enforcement authority includes responsibility for

---

[4] DOJ asserted Exemption 6 with Exemption 7(C) because they use a similar balancing test, even though Exemption 7(C)'s standard for withholding is lower than Exemption 6's standard.   But if a court determines that information was properly withheld under one exemption, it need not determine whether another exemption applies to that same information. *Simon v. Dep't of Justice*, 980 F.2d 782, 784-85 (D.C. Cir. 1992).

investigating and prosecuting criminal cases throughout the United States involving the interference with liberties and deprivation of rights defined in the Constitution or federal law including, for example, 18 U.S.C. §§ 241 and 242. *Id.* The records responsive to Plaintiff's request were compiled for law enforcement purposes as part of CRT's authority to enforce 18 U.S.C. §§ 241-242. *Id.*

Individuals associated with CRT's criminal investigations have a strong interest in their identities remaining private, whether as investigators/prosecutors/other law enforcement personnel, victims, subjects, witnesses, informants/sources, or third parties merely mentioned. For example, CRT prosecutors and other law enforcement personnel assigned to these criminal cases have privacy interests in avoiding publicity, adverse or otherwise, regarding any particular investigation as that may seriously impair their effectiveness in conducting future investigations and/or prosecuting cases. Buchko Decl. ¶ 82. They conduct official inquiries and other actions into violations of various criminal statutes, including investigations of violent and sensitive crimes such use of deadly force by law enforcement personnel. *Id.* It is possible for a person targeted by such law enforcement activity to carry a grudge for years. *Id.* The publicity associated with the release of the identity of these law enforcement personnel in connection with a particular investigation could trigger hostility towards them. *Id.* Moreover, these personnel have access to sensitive law enforcement information from the investigations, which could make them the targets of harassing inquiries for unauthorized access to such information. *Id.* CRT considers that they have a privacy interest in being free from such unnecessary, unofficial questioning as to the conduct of an investigation. Further, CRT concluded that there is no public interest in the identities of the law enforcement personnel protected in these records. Buchko Decl. ¶ 83. Specifically, their identities would not, by themselves, substantially increase the public's understanding of CRT operations and activities. *Id.*

Exemptions 6 and 7(C) also apply to the names and other identifying personal information of witnesses and confidential sources/informants who provided information to law enforcement during investigations of the conduct at issue in these cases. Information provided by individuals during interviews or otherwise is one of the most productive investigative tools used by law enforcement agencies. Buchko Decl. ¶ 85. The largest roadblock to successfully obtaining desired information through an interview or other cooperation during an investigation is fear by the individual that their identity will possibly be exposed and consequently they could be harassed, intimidated, or threatened with reprisal. *Id.*

These fears are more focused in the context of investigations like the ones at issue here, which involve deaths alleged to have been caused by law enforcement personnel. *Id.* To surmount these obstacles, individuals interviewed as part of/cooperating with law enforcement must be assured that their names and identifying information will be protected. CRT concluded that there is no public interest in these individuals' identities because on their own, they would not substantially increase the public's understanding of CRT's operations and activities. Buchko Decl. ¶ 86. But even assuming there is some minimal public interest in this information, law enforcement's continued access to individuals willing to honestly relate pertinent facts bearing upon a particular investigation far outweighs any benefit the public might derive from being furnished their names.

Exemptions 6 and 7(C) also apply to protect the identities of individuals who were of investigative interest in these cases but who CRT decided not to prosecute under Federal criminal civil rights statutes. Being linked with any law enforcement investigation carries a strong negative connotation and a stigma. Buchko Decl. ¶ 87. To release the identities of these individuals to the public could subject them to harassment or embarrassment, as well as undue public attention. *Id.* Accordingly, CRT concluded that these individuals have substantial privacy interests. *Id.* Further, any public interest in this information is minimal as it would add little, if anything, to the public's understanding of CRT operations and activities. Buchko Decl. ¶ 88. Any such minimal contribution to the public's understanding does not outweigh these individuals' substantial privacy interests.

Finally, Exemptions 6 and 7(C) apply to protect the identities of third parties who were merely mentioned in the records. These individuals were not of investigative interest, nor were they witnesses or sources. Buchko Decl. ¶ 89. Such individuals appearing by happenstance in law enforcement files have substantial privacy interests in not being publicly associated with Federal criminal investigations. *Id.* Disclosure of their identities could subject these individuals to possible harassment or criticism and focus derogatory inferences and suspicion on them. *Id.* In contrast, there is no public interest in this information, as these individuals' identities would not, themselves, significantly increase the public's understanding of CRT's operations and activities. Buchko Decl. ¶ 90. Accordingly, these individuals' privacy interests necessarily prevail over the nonexistent public interest.

CRT concluded that disclosure would result in reasonably foreseeable harm to the interests

DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
NO. 4:25-CV-07309-AMO                16

protected by these exemptions. Buchko Decl. ¶ 91. Public disclosure of this information creates a real and concrete risk of these individuals being directly contacted for no official reason or purpose, opening them up to harassment and exposing them to stigmatization for being associated with criminal investigations of violent and sensitive matters. *Id.* These are the very types of privacy invasions that Exemptions 6 and 7(C) are designed to prevent.

It is reasonably foreseeable that disclosure of the above categories of individuals' identities would invade their privacy interests without any overriding public interest in doing so, thus resulting in an unwarranted invasion of their privacy. Accordingly, DOJ properly invoked Exemptions 6 and 7(C).

### 3. Exemption 7(D)

Exemption 7(D) permits the withholding or redacting of law enforcement records, the release of which "could reasonably be expected to disclose the identity of a confidential source, . . . and, in the case of a record or information compiled by a criminal law enforcement authority in the course of a criminal investigation . . . , information furnished by a confidential source." 5 U.S.C. § 552(b)(7)(D). Exemption 7(D) requires no balancing of public and private interests. *See Dow Jones & Co. v. DOJ*, 917 F.2d 571, 575–76 (D.C. Cir. 1990). A confidential source is one who "provided information under an express assurance of confidentiality or in circumstances from which such an assurance could be reasonably inferred." *DOJ v. Landano*, 508 U.S. 165, 172 (1993). Criminal investigations often rely on assistance from confidential sources or informants – i.e., sources who provide information under express assurances of confidentiality or under circumstances from which an assurance of confidentiality can be reasonably inferred due to the nature of the crime and the source's relationship to it. Buchko Decl. ¶ 92.

The records at issue here involve circumstances resulting in the deaths of individuals, sometimes following violent confrontations with police officers, occurring in correctional facilities, or following suspected criminal activities by the victims, including murder and gang or drug activities. *See* Buchko Decl. ¶ 93, Attach. A. The sources were in close proximity to the potential criminal activities and/or had relationships with subjects or victims in the cases. *Id.*

There is foreseeable harm in disclosing these individuals' identities. Buchko Decl. ¶ 94. They are in positions that could subject them to acts of reprisal or harassment for cooperating with law enforcement officials investigating these cases, or that could draw an unnecessary amount of public attention if their

cooperation was disclosed. *Id.* Individuals who confidentially provide investigative information must be free to furnish that information with complete candor and without the understandable tendency to hedge or withhold information out of fear of public disclosure. *Id.* Disclosing their identities risks harm to sources and also threatens the ability of law enforcement to recruit or maintain confidential sources in the future. Exemption 7(D) protects against such harms, and DOJ properly invoked it for the marked records.

### 4.    Exemption 7(E)

Exemption 7(E) authorizes withholding of information compiled for law enforcement purposes if release of the information "would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law." 5 U.S.C. § 552(b)(7)(E). Congress intended that Exemption 7(E) protect law enforcement techniques and procedures from disclosure, as well as techniques and procedures used in all manner of investigations after crimes or other incidents have occurred. The Ninth Circuit does not interpret the "risk of circumvention" requirement as applying to first phrase; accordingly, Exemption 7(E) does not require a showing that disclosure of particular techniques would risk circumvention of the law. *Hamdan v. DOJ*, 797 F.3d 759, 778 (9th Cir. 2015).

Exemption 7(E) has been applied to several records here to protect non-public information about: procedures and techniques used by law enforcement agencies, including the FBI, in investigating the criminal civil rights cases at issue in this litigation; the use of a confidential source and an undercover officer in the context of particular investigations; and the composition and operational plans of a gang task force. Buchko Decl. ¶ 96, Attach. A. Disclosure of this information could enable subjects of criminal investigations to circumvent the use of these techniques and procedures in similar circumstances. *Id.* ¶ 96. The relative benefit of these techniques and procedures will be diminished if they are publicly disclosed. *Id.* Such disclosure would allow subjects of investigation to accumulate information regarding the circumstances under which the techniques and procedures are used or requested and the value of the information obtained. *Id.* There is foreseeable harm in releasing this type of information. Specifically, it would enable investigative subjects to educate themselves and then develop/deploy countermeasures to circumvent the effectiveness of these techniques and procedures, and continue to violate the law. Buchko

Decl. ¶ 97.

In several records, DOJ also applied Exemption 7(E) to information about the types of investigations initiated by the FBI in these criminal civil rights cases and information revealing the bases warranting initiation of a particular type or level of investigation. Buchko Decl. ¶ 98, Attach. A. Disclosure of this information would allow individuals to know the types of activities that trigger a full investigation as opposed to a preliminary investigation as opposed to an assessment. Buchko Decl. ¶ 98. This would also tell them what types of techniques, procedures, and tools are authorized for investigators to use. *Id.* There is foreseeable harm in disclosing this information. It would permit individuals to more effectively develop and deploy countermeasures to thwart investigative efforts. Buchko Decl. ¶ 99. Thus, disclosure is reasonably expected to impede the FBI's effectiveness and potentially aid in the circumvention of law.

### 5.   Exemption 7(F)

Exemption 7(F) protects records or information compiled for law enforcement purposes when disclosure "could reasonably be expected to endanger the life or physical safety of any individual." 5 U.S.C. § 552(b)(7)(F). "Information withheld pursuant to Exemption 7(F) is also subject to withholding pursuant to Exemptions 6 and 7(C), although no balancing test is required for protection under Exemption 7(F)." *Michael v. DOJ*, No. CV 17-0197 (ABJ), 2018 WL 4637358, at *12 (D.D.C. Sept. 27, 2018).

CRT concluded that the exemption applies to protect the identities of law enforcement personnel mentioned in the records who were working on drug and gang task forces, including one operating undercover; a confidential source involved in a drug buy; and witnesses to a murder allegedly perpetrated by the victim in one case. Buchko Decl. ¶ 101, Attach. A. The identities of law enforcement personnel and others involved with cases enforcing federal drug laws are regularly protected under Exemption 7(F) because of the threat of violence routinely associated with such cases. *See, e.g., Schultz v. Fed. Bureau of Investigation*, No. 1:05-CV-0180 AWI GSA, 2016 WL 829154, at *10 (E.D. Cal. Mar. 3, 2016). That threat is more acute for the undercover officer. Buchko Decl. ¶ 101. Similarly, confidential sources in drug trafficking cases and witnesses to murder face repercussions based on their proximity to and knowledge of criminal activity, as well as their cooperation with law enforcement investigations of that criminal activity. *Id.* CRT can reasonably expect that disclosure of their identities would endanger their

lives or physical safety. *Id.* Thus, there is foreseeable harm in releasing this information.

### C.    Plaintiff's First Request Fails to Comply with 5 U.S.C. § 552(a)(3)(A)

An agency need only respond to a request for records that "(i) reasonably describes such records and (ii) is made in accordance with published [agency] rules." 5 U.S.C. § 552(a)(3)(A). Courts have interpreted this statutory language to mean not only that a request needs to be clear but that "agencies need not honor a request that requires an unreasonably burdensome search." *Nat'l Sec. Couns. v. Cent. Intel. Agency*, 969 F.3d 406, 410 (D.C. Cir. 2020) (internal quotation marks omitted). Although "courts have been wary to prohibit this requirement from becoming a loophole through which federal agencies can deny the public access to legitimate information, it has been held that broad, sweeping requests lacking specificity are not permissible." *Yagman v. Pompeo*, 868 F.3d 1075, 1081 (9th Cir. 2017) (citation omitted). Relying on a 1982 D.C. Circuit case, *Yagman*, in a footnote, stated that "[t]his is not to say that [a] request fails simply because it may encompass a large number of documents." *Id.* at 1081 n.6 (citing *Yeager v. DEA*, 678 F.2d 315, 326 (D.C. Cir. 1982)).

The D.C. Circuit subsequently clarified that although a request "might identify the documents requested with sufficient precision to enable the agency to identify them," a request can still be "so broad as to impose an unreasonable burden upon the agency." *Am. Fed'n of Gov't Emps., Loc. 2782 v. U.S. Dep't of Com.*, 907 F.2d 203, 209 (D.C. Cir. 1990) ("*AFGE*"). In *AFGE*, the court ruled that the agency need not respond to a request that would "require the agency to locate, review, redact, and arrange for inspection a vast quantity of material," specifically, "every chronological office file and correspondent file, internal and external, for every branch office, staff office [etc.]" *Id.* at 208-09.

For example, in *Power the Future*, the district court ruled that an agency need not respond to a request for "all electronic mail sent to or from a high-ranking officer in the Agency without any restriction on subject matter." *Power the Future v. White House Council on Env't Quality*, No. CV 24-1942 (RC), 2025 WL 2206947, at *3 (D.D.C. Aug. 4, 2025) (internal quotation marks omitted).

In a case analogous to this one, the D.C. Circuit in *Nation Magazine* ruled that an agency need not search for "search through 23 years of unindexed files for records pertaining to [former presidential candidate Ross] Perot" because "this search would impose an unreasonable burden on the agency." *Nation Mag., Washington Bureau v. U.S. Customs Serv.*, 71 F.3d 885, 892 (D.C. Cir. 1995).

Here, the Court should find that Plaintiff's first request for closing memoranda from the period of 1998 to 2018—a 20-year-period—does not comply with 5 U.S.C. § 552(a)(3)(A)'s particularity requirement. Mr. Buchko's declaration explains that DOJ identified approximately 1,773 cases involving Section 242 violations that resulted in death that may contain long-form closing memoranda from that period. Buchko Decl. ¶ 40. But identifying the cases that potentially had long form closure memoranda was just the first step in the process. *Id.* ¶ 42. To fulfill Plaintiff's requests, each case file must be reviewed to locate any such memorandum associated with the case. *Id.* To do so, records management staff must research each case to determine whether it was archived in DOJ records storage (and where) or whether it has been accessioned to the National Archives and Records Administration (NARA). *Id.* Records management staff must then undertake administrative steps to retrieve the boxes in which the case files were archived from DOJ records storage or from NARA. *Id.*

Retrieving files is not necessarily straightforward. *Id.* ¶ 42 n.3. Case files stored in DOJ records facilities are maintained in boxes, and some cases span multiple boxes. *Id.* Some cases share boxes with other cases. *Id.* To locate any long form closure memorandum associated with a case requires first that records management staff identify the box or boxes in which a case is stored, which requires research of records transfer memoranda to identify the relevant box or boxes. *Id.* This could necessitate review of multiple record transfer memoranda because there may be several associated with a single case. *Id.* For example, for the 53 cases from 2018-2024 that may contain long form closure memoranda, CRT had to review more than 70 records transfer memoranda, which identified more than 100 boxes that potentially would need to be retrieved to search for/locate responsive records. *Id.* After locating the boxes, the boxes must be retrieved from DOJ records storage. *Id.* For case files that have been transferred to the National Archives and Records Administration (NARA), a similar process is required. *Id.* Once identified, the boxes/files must be returned by NARA to DOJ to be hand searched for relevant case files and the long form closure memoranda. *Id.*

Upon retrieval of the boxes, CRT staff would then have to hand search the boxes to locate the relevant case files and then hand search those case files for any responsive long form closure memoranda. *Id.* ¶ 42. Only then could CRT review the memoranda to apply exemptions and make disclosure decisions. *Id.* Based on the number of case files identified for review, nearly 2000 case files would need to be

researched, and hundreds or thousands boxes would need to be located, retrieved from different locations, and hand searched simply to identify records responsive to Plaintiff's requests. *Id.* These steps would need to take place before any review or processing could occur. *Id.*

Because of these circumstances, the Court should rule that Plaintiff's First Request (20-00072-F) was overly broad, that complying with it would be unduly burdensome and that it did not comply with 5 U.S.C. § 552(a)(3)(A). In an analogous case, a Washington district court ruled that the Federal Reserve need not respond to a request for "[a]ny documents showing any discussion/debate any member of the Federal reserve may have had from August 2008 onward concerning the Federal Reserve's bailout of investment firms." *Weirich v. Bd. of Governors of the Fed. Rsrv. Sys.*, No. CV-10-5031-EFS, 2010 WL 4717211, at *4 (E.D. Wash. Nov. 15, 2010) (internal quotation marks omitted). The court explained that the request "neither reasonably describes the records sought nor allows the Board to respond to that request without producing thousands of documents." *Id.* "Thus, not only do they lack specificity, but [the plaintiff's] requests would unduly burden the FOI Office and significantly interfere with the [agency's] operations." *Id.*

Here, Plaintiff's request not only lacks specificity—covering documents from a 20-year span—but it would require the search for, retrieval of, and hand review of hundreds or thousand of boxes of paper records before any production could take place. Such a search would significantly interfere with DOJ's operations, and the Court should rule that Plaintiff's request did not comply with § 552(a)(3)(A).

## V.    CONCLUSION

For the foregoing reasons, the motion for summary judgment should be granted because DOJ has established it has fully discharged its obligations under the FOIA.

DATED:  June 11, 2026

Respectfully submitted,

CRAIG H. MISSAKIAN
United States Attorney

*/s/ Roman A. Swoopes*
ROMAN A. SWOOPES
Assistant United States Attorney
Attorneys for Defendant