**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

|  |  |  |
|---|---|---|
| The Center for Investigative Reporting, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Civil Action No. 4:25-cv-07309-AMO |
| United States Department of Justice, | ) ) | |
| Defendant. | ) ) ) | |

**DECLARATION OF JOHN BUCHKO**

I, John Buchko, declare the following to be true and correct:

1. I am the Acting Chief of the Freedom of Information/Privacy Act (FOI/PA) Branch of the Civil Rights Division (CRT) of the United States Department of Justice (DOJ) in Washington, D.C. My duties include supervision of the FOI/PA Branch, which is responsible for processing all requests for access to CRT records pursuant to the Freedom of Information Act (FOIA), 5 U.S.C. § 552, and the Privacy Act, 5 U.S.C. § 552a.

2. I make the statements herein on the basis of personal knowledge and information provided to or acquired by me in the course of performing my official duties.

3. CRT's FOI/PA Branch receives hundreds of FOIA and Privacy Act requests annually, touching upon some of the most sensitive and publicized topics of the day. In addition to responding to these requests, the branch is responsible for handling all FOIA and Privacy Act litigation as well as myriad disclosure issues impacting CRT's records, such as FOIA consultations with other DOJ components and other federal agencies involving documents with CRT equities and assisting with responses to audits conducted by DOJ's Office of the Inspector General and by the Government Accountability Office.

1

4.      Due to the nature of my official duties, I am familiar with the procedures followed by CRT in responding to FOIA and Privacy Act requests generally and with those followed in responding to Plaintiff's requests specifically.

5.      In accordance with *Vaughn v. Rosen*, 484 F.2d 820 (D.C. Cir. 1973), this declaration, accompanying index, and referenced exhibits are submitted in support of CRT's Motion for Summary Judgment.  This declaration explains the administrative history of Plaintiff's requests and the basis for CRT's conclusion that the requested records are exempt from disclosure pursuant to Exemption 5 in conjunction with the attorney work product privilege; addresses additional exemptions that protect information within the records; and explains why Plaintiff's FOIA requests together are unduly burdensome and thus fail to satisfy the FOIA's requirement of a reasonably described request.

## PROCEDURAL HISTORY OF PLAINTIFF'S FOIA REQUESTS

 *CRT FOIA Reference Nos. 20-00072-F/23-00001-APP/24-00004-APP*
*OIP FOIA Appeal Reference Nos. A-2023-00087, A-2024-00230[1]*

6.      By letter dated December 19, 2019, and received by CRT via First Class Mail on January 2, 2020, Melissa Lewis, an investigative reporter with Plaintiff, the Center for Investigative Reporting (CIR), submitted a FOIA request to CRT.  **Exhibit 1.**

7.      This is referred to as the "First Request" in Plaintiff's Complaint. *See* ECF No. 1 at ¶¶ 20.[2]

8.      In her request, Lewis sought:

---

[1]  OIP is DOJ's Office of Information Privacy, which adjudicates appeals of initial FOIA decisions made by DOJ components including CRT.

[2]  The exhibit CIR attached to the Complaint is a request CIR apparently submitted to the FBI.  A true and correct copy of the separate request that CIR submitted to CRT is attached as Exhibit 1.

- The number of matters investigated or reviewed by the Civil Rights Division under 18 USC 241-242, Deprivation of Rights Under the Color of Law, between 1998 and 2018 including:

  o File Number or Case Number
  o Date Opened
  o Type of Case
  o Synopsis of Case
  o Cause & Manner of Death When Applicable
  o Date of Disposition
  o Recommendation/Disposition of cases
  o Name of Victim(s)/Subject(s)/Each Party
  o Race of Victim(s)/Subject(s)/Each Party
  o Age of Victim(s)/Subject(s)/Each Party
  o Gender of Victim(s)/Subject(s)/Each Party
  o Date(s) of Incident
  o Location of Incident – Municipality, County, State
  o Name of Lead Investigator/Trial Attorney
  o Other local and federal agencies involved in reviewing, assisting or investigating
  o Any other significant actions, recommendations or findings

- Any long-form closing memoranda reflecting the Division's decision not to prosecute a 242 matter that resulted in death.

*See* **Exhibit 1**.

9. CRT assigned this request FOIA reference number 20-00072-F.

10. By letter dated January 6, 2020, CRT acknowledged receipt of the request. The letter included the FOIA reference number. **Exhibit 2.**

11. The same day, CRT initiated a search of its Criminal Section for responsive records.

12. On September 19, 2022, CRT responded to 20-00072-F. **Exhibit 3**.

a. CRT released a spreadsheet compiled by the Criminal Section, which included many of the data points identified in the first bullet point of the request (seeking the numbers of matters investigated or reviewed by CRT under 18 U.S.C. §§ 241-242, Deprivation

3

of Rights Under Color of Law).  CRT explained that names of victims, subjects, and investigators/attorneys were not included in the spreadsheet because they were exempt from disclosure pursuant to Exemption 7(C), 5 U.S.C. § 552(b)(7)(C).  CRT further explained that it does not track race, age, or gender of victims or subjects in its database, nor does the database include synopses, so this data was not available.

      b.     In response to the second bullet point of the request for "long-form closing memoranda reflecting the Division's decision not to prosecute a 242 matter that resulted in death," CRT responded that those memoranda are exempt in full pursuant to FOIA Exemptions 5, 7(C), and 7(E), 5 U.S.C. §§ 552(b)(5), (7)(C), (7)(E).

13.     Plaintiff appealed CRT's response to 20-00072-F to DOJ's Office of Information Policy (OIP) on October 17, 2022.  **Exhibit 4**.

      a.     OIP assigned this appeal reference number A-2023-00087.

      b.     CRT assigned this appeal reference number 23-00001-APP.

14.     On October 19, 2022, OIP acknowledged receipt of the appeal.  **Exhibit 5**.

15.     On June 9, 2023, OIP affirmed CRT's response to Part 1 of the request and remanded Part 2 to CRT for further processing.  OIP did not order CRT to disclose the memoranda requested in Part 2 but rather to continue processing and disclose them "[i]f CRT determines that [the] records are releasable."  **Exhibit 6.**

16.     On September 20, 2023, following OIP's remand, CRT issued its final response to Part 2 of 20-00072-F, denying the request.  CRT concluded that the request failed to satisfy the statutory requirement that FOIA requests reasonably describe the records sought, *see* 5 U.S.C. § 552(a)(3)(A), because the request was overly broad and complying with it would be unduly burdensome.  **Exhibit 7.**

17.    On October 25, 2023, Plaintiff appealed to OIP regarding CRT's September 20th response to 20-00072-F.  **Exhibit 8.**

a.    OIP assigned this appeal reference number A-2024-00230.

b.    CRT assigned this appeal reference number 24-00004-APP.

18.    OIP acknowledged the appeal on October 26, 2023.  **Exhibit 9.**

19.    On July 23, 2024, OIP affirmed CRT's final decision regarding Part 2 of 20-00072-F.  **Exhibit 10.**

***CRT FOIA Reference No. 24-00143-F***
***OIP FOIA Appeal Reference No. A-2024-02286***

20.    On March 7, 2024, Jonathan Jones, a reporter with CIR, attempted to submit a new FOIA request to CRT for the long-form closing memoranda.  **Exhibit 11.**

21.    This is called the "Second Request" in Plaintiff's Complaint.  *See* ECF No. 1 at ¶¶ 27-29.

22.    In the request, Jones sought "any long-form closing memoranda reflecting the Division's decision not to prosecute a (18 U.S.C.) 242 matter that resulted in death between 2018 and 2024."  He went on to clarify that he "previously requested *this exact material* and the OIP remanded the request on September 20, 2023 to your office … but your office has still not processed the request."  **Exhibit 11** (emphasis added).

23.    When Plaintiff attempted to submit this request, its appeal of CRT's September 20, 2023, decision was still pending appeal before OIP.  *See supra.* at ¶¶ 17-20.

24.    CRT mistakenly concluded that this new request fully duplicated Part 2 of 20-00072-F.  As a result, CRT closed it as a duplicate request, included it in 20-00072-F, and advised Plaintiff of this via email dated March 7, 2024.  **Exhibit 12.**

25.     Plaintiff submitted an appeal to OIP on May 22, 2024.  **Exhibit 13**.  OIP initially interpreted the appeal as being about CRT's response to another FOIA request Plaintiff submitted to CRT in 2018 that is not at issue in this lawsuit (CRT FOIA Reference No. 19-00078-F) because that is the request Plaintiff referenced in the subject line of Plaintiff's letter.  **Exhibit 14**.

26.     Upon further review, OIP noted that Plaintiff referenced its March 4, 2024, request and attached a copy of emails exchanged between CRT and Plaintiff related to 24-00143-F in which CRT explained that the request had been deemed a duplicate of 20-00072-F and closed.  As a result, OIP concluded that Plaintiff's May 22, 2024, appeal also concerned 24-00143-F and opened an additional appeal file.  **Exhibit 15.**  OIP assigned this appeal reference number A-2024-002286.

27.     On July 29, 2025, OIP remanded 24-00143-F to CRT to be reopened because it included a different date range than 20-00072-F.  *Id.*  Specifically, 20-00072-F requested long-form closing memoranda for the period 1998-2018 and 24-00143-F requested long-form closing memoranda for the period 2018-2024.

28.     On August 29, 2025, Plaintiff filed the present lawsuit concerning both requests described above.  *See* ECF No. 1, Complaint.

29.     On February 3, 2026, the parties submitted a Joint Status Report in which CRT agreed to "provide a final determination and disclose all nonexempt material" in response to the Second Request by April 3, 2026.  *See* ECF No. 25, Joint Status Report.

30.     By letter dated April 3, 2026, CRT notified Plaintiff that it was withholding all but two long-form memoranda from cases closed between 2018 and 2024 because they are exempt pursuant to Exemption 5 in conjunction with the attorney work product privilege.  As to the other two memoranda, CRT notified Plaintiff that they were reviewed under the Emmett Till Unsolved

Civil Rights Crime Act, Pub.L. 110-344 (Oct. 7, 2008), and its reauthorization act, the Emmett

Till Unsolved Civil Rights Crimes Reauthorization Act of 2016, Pub.L. 114-325 (Dec. 16, 2016)

(collectively, the "Emmett Till Act"); explained that CRT publishes closure memoranda in

Emmett Till Act cases consistent with the transparency aspects of the civil rights cold case

initiative; and provided links to those memoranda on DOJ's website.  CRT further explained that

some of the withheld memoranda also contained information that is exempt pursuant to

Exemptions 3, 6, 7(C), 7(D), and/or 7(E).  Finally, CRT explained that it had considered whether

there was foreseeable harm from disclosure and concluded that such harm existed.  **Exhibit 16**.

<u>**SEARCH FOR RECORDS RESPONSIVE TO PLAINTIFFS' REQUESTS**</u>

31.     In the request identified by CRT as 20-00072-F, dated December 13, 2019,

Plaintiff requested two things: (1) a report of matters investigated or reviewed by CRT under 18

U.S.C. §§ 241-242 between 1998 and 2018, and (2) any long-form closing memoranda reflecting

CRT's decision not to prosecute an 18 U.C.C. § 242 case that resulted in death during that same

period.  *See* Exhibit 1.

32.      In the request identified by CRT as 24-00143-F, dated March 4, 2024, Plaintiff

requested long-form closing memoranda reflecting CRT's decision not to prosecute an 18 U.S.C.

§ 242 case that resulted in death between 2018 and 2024.  *See* Exhibit 11.

33.     18 U.S.C. § 241, Conspiracy Against Rights, makes it a crime for:

> two or more persons [to] conspire to injure, oppress, threaten, or
> intimidate any person in any State, Territory, Commonwealth,
> Possession, or District in the free exercise or enjoyment of any
> right or privilege secured by him by the Constitution or laws of the
> United States, or because of his having so exercised the same" or
> for "two or more persons go in disguise on the highway, or on the
> premises of another, with intent to prevent or hinder his free
> exercise or enjoyment of any right or privilege so secured."

34.     18 U.S.C. § 242, Deprivation of Rights Under Color of Law, makes it a crime for anyone:

> under color of any law, statute, ordinance, regulation, or custom, [to] willfully subject[] any person in any State, Territory, Commonwealth, Possession, or District to the deprivation of any rights, privileges, or immunities secured or protected by the Constitution or laws of the United States, or to different punishments, pains, or penalties, on account of such person being an alien, or by reason of his color, or race, than are prescribed for the punishment of citizens … .

35.     Because Plaintiff's requests both concern CRT's criminal law enforcement work, CRT concluded that any records responsive to Plaintiff's requests would be maintained by its Criminal Section.

36.     The Criminal Section investigates and prosecutes cases throughout the United States involving the interference with liberties and deprivation of rights defined in the Constitution or federal law.  18 U.S.C. §§ 241-242 are two of the criminal statutes enforced by the section.

37.     CRT further concluded that no other section or office would maintain records responsive to Plaintiff's requests.

38.     The Criminal Section was tasked with searching for records responsive to Plaintiff's requests.  The section was provided a copy of Plaintiff's FOIA requests to assist in its searches.

39.     In response to Item 1 of 20-00072-F, the section searched its case management database to produce a list of cases and provided a 217-page report, which was released to Plaintiff in full on September 19, 2022.

40.     CRT used that report to identify cases likely to contain long-form closure memoranda responsive to Item 2 of Plaintiff's request.  Based on that report, CRT identified approximately 1773 cases that may contain long-form closure memoranda.

41.     Similarly, in responding to 24-00143-F, the Criminal Section searched its case management database to identify additional relevant cases for the period 2018-2024.  Ultimately, CRT identified 53 cases involving potential 18 U.S.C. § 242 violations that resulted in death that were closed between 2018 and 2024 about which long form closure memoranda could have been written.

42.     Identifying the cases that potentially had long form closure memoranda was just the first step in the process.  To fulfill Plaintiff's FOIA requests for long form closure memoranda, each case file must be reviewed to locate any such memorandum associated with the case.  To do so, records management staff must research each case to determine whether it was archived in DOJ records storage (and where) or whether it has been accessioned to the National Archives and Records Administration (NARA).  Records management staff must then undertake administrative steps to retrieve the boxes in which the case files were archived from DOJ records storage or from NARA.[3]  Upon retrieval of the boxes, CRT staff would then have to

---

[3]  The matter of retrieval is itself not necessarily a straightforward or easy process.  Case files that stored in DOJ records facilities are maintained in boxes.  Some cases span multiple boxes.  Some cases share boxes with other cases.  To locate any long form closure memorandum associated with a case requires first that records management staff identify the box or boxes in which a case is stored.  This process requires research of records transfer memoranda to identify the relevant box or boxes.  This could necessitate review of multiple records transfer memoranda because there may be several associated with a single case.  Then, the boxes must be retrieved from DOJ records storage and hand searched to locate the relevant case file and any long form closure memorandum, if one exists for the case.  This could require hand searching a single box or multiple boxes.  For case files that have been transferred to the National Archives and Records Administration (NARA), a similar process is required to locate the boxes and files.  Once identified, the boxes/files must be returned by NARA to DOJ to be hand searched for relevant case files and the long form closure memoranda.  For example, for the 53 cases from 2018-2024 that may contain long form closure memoranda, CRT had to review more than 70 records transfer memoranda, which identified more than 100 boxes that potentially would need to be retrieved to search for/locate responsive records.

hand search the boxes to locate the relevant case files and then hand search those case files for any responsive long form closure memoranda.  Only then could CRT review the memoranda to apply exemptions and make disclosure decisions.  Based on the number of case files identified for review, nearly 2000 case files would need to be researched and hundreds or thousands boxes would need to be located, retrieved from different locations, and hand searched simply to identify records responsive to Plaintiff's requests and before any review or processing could take place.

43.    Because of these circumstances, CRT concluded that 20-00072-F and 24-00143-F, which together encompass 25 years of cases, are overly broad, that complying with them would be unduly burdensome, and that accordingly they do not comply with 5 U.S.C. § 552(a)(3)(A) and are not proper FOIA requests.[4]  Accordingly, CRT was not required to process these requests and CRT did not, in fact, retrieve the boxes containing relevant case files for the period 1998-2017.

44.    However, on its own, the Second Request – covering the 6-year period 2018-2024 – was more narrowly tailored and CRT concluded that it could process it alone without experiencing an undue burden.  Thus, CRT took the steps necessary to retrieve the 53 files it identified for this time period from DOJ's records storage in order to locate any responsive longform closure memoranda.[5]  Of the 53 files that were identified and researched, CRT concluded that two of them were associated with Emmett Till Act reviews and publicly available on DOJ's website.  Upon further review, CRT concluded that three of them were closed with short form closing memoranda, not long form closing memoranda, and therefore are not

---

[4] A FOIA request is not proper unless it satisfies statutory requirements.  *Cf.* 5 U.S.C. § 552(a)(3)(A).  The FOIA's requirements do not begin to apply until an agency receives a proper FOIA request.

[5] Because of the relative recency of these cases, CRT did not have to retrieve any records from NARA.

responsive to Plaintiff's requests.  Finally, CRT was unable to locate closing memoranda –

whether long or short form – for three of the cases.  All places where the memoranda would be

located have been searched.  Specifically, the physical files for each case were retrieved and

hand-searched, document-by-document, and CRT's Criminal Section searched its

office/electronic files, referencing the relevant file number/case name, in an effort to locate even

draft copies of the memoranda.

## LONG FORM CLOSING MEMORANDA ARE EXEMPT FROM DISCLOSURE

45.     By letter dated April 3, 2026, CRT notified Plaintiff that it was withholding the

long form closure memoranda from cases closed between 2018 and 2024 because they are

exempt pursuant to Exemption 5 in conjunction with the attorney work product privilege.  CRT

also explained that some memoranda include information exempt from disclosure pursuant to

Exemptions 3, 6, 7(C), 7(D), and/or 7(E).  Finally, upon further review while preparing this

declaration, CRT also determined that Exemption 7(F) applies to information in some of the

responsive records.

### EXEMPTION 5

46.     Exemption 5 protects "inter-agency or intra-agency memorandums or letters

which would not be available by law to a party other than an agency in litigation with the

agency."  5 U.S.C. § 552(b)(5).  In short, this exemption provides protection for information that

would otherwise be subject to discovery privileges, including the attorney-client, attorney work

product, and deliberative process privileges.

47.     The records at issue in this case – long form closure memoranda – are covered by

the attorney work product privilege and thus exempt from disclosure under Exemption 5.

Because the memoranda all follow the same fundamental format, contain the same types of

information, and serve the same purpose, CRT concluded that the justifications for withholding the memoranda are common to all of them and thus, has addressed them categorically here.

### Threshold Requirement

48.     With limited exceptions not present here, Exemption 5 protection is only available for information exchanged within the Executive Branch – *i.e.*, inter- or intra-agency information.

49.     The records here – memoranda prepared by Civil Rights Division prosecutors recommending that prosecution be declined – are internal to the Department of Justice and thus satisfy Exemption 5's "inter- or intra-agency" threshold requirement.

### Attorney Work Product Privilege

50.     The attorney work product privilege protects materials prepared or developed by or at the direction of an attorney in reasonable anticipation of litigation.  The privilege developed from recognition that the effectiveness of attorneys in representing their clients would be severely undermined, and it would be impossible to conduct litigation, if everything the attorney did for the client could be discovered by the other side.  The privilege shelters attorneys' mental processes so that they can prepare their case without undue and needless interference.  This includes shielding attorneys' efforts to assemble information, sift relevant from irrelevant facts, prepare legal theories, assess risks, and plan strategy.

51.     For purposes of attorney work product protection, litigation is anticipated when the Government is investigating specific wrongdoing in an attempt to gather evidence and build a case against a suspected wrongdoer.

52.     The Civil Rights Division's Criminal Section enforces criminal civil rights laws that date to the post-Civil War Reconstruction Era.  It is the only component of the Civil Rights Division that prosecutes criminal violations, while the remainder of the Division handles civil

12

matters. The section investigates and prosecutes cases throughout the United States involving the interference with liberties and deprivation of rights defined in the Constitution or federal law including, for example, 18 U.S.C. §§ 241, Conspiracy Against Rights, and 242, Deprivation of Rights Under Color of Law. As experts in the field of criminal civil rights enforcement, Criminal Section prosecutors often partner with the 94 United States Attorney's Offices throughout the country, as well as with federal and local investigators. While some violations may most appropriately be pursued by the federal government, others can be addressed by state or local jurisdictions. Criminal Section prosecutors therefore often work with state and local prosecutors to determine where a case should be handled. In some instances, Criminal Section prosecutors handle investigations due to actual or perceived conflicts of interest in local jurisdictions. In every case, the ultimate goal of the Criminal Section is to ensure that allegations are thoroughly and fairly investigated, that acts constituting federal criminal civil rights violations are sufficiently remedied, and that the rights of the victims are vindicated.

53. Here, the Criminal Section was investigating and analyzing the cases at issue for the purpose of determining whether the actions of federal, state, or local law enforcement officials violated federal criminal civil rights laws. If it was determined that any such laws were violated, the Civil Rights Division could have prosecuted the subjects.

54. The long form closure memoranda were prepared in aid of litigation. They are, in the purest sense, attorney work product in that they consist of the thoughts and impressions of the Criminal Section prosecutors assigned to the criminal investigations. The memoranda reflect prosecutors' analysis and mental impressions about what facts were relevant to the potential charges in the case, the relative strengths and/or weaknesses of evidence necessary to prove those facts and the existence of any contradictory facts or evidence, the availability and reliability of

13

witnesses, and whether the facts that could be proven were sufficient to carry the government's

burden of establishing guilt beyond a reasonable doubt. They were intended solely for use

within the Department of Justice. Hence, these records were prepared in reasonable anticipation

of litigation.

55.     The fact that litigation never occurred does not render the privilege inapplicable.

As long as specific claims have been identified which make litigation possible, the attorney work

product privilege applies.

56.     Finally, under the FOIA, work product protection extends to factual materials as

well as an attorney's legal analysis, mental impressions, and opinions, and thus no segregation is

required for information falling within the privilege.

**Determination of Reasonably Foreseeable Harm**

57.      After establishing the elements of a particular exemption, agencies must

demonstrate that public disclosure of otherwise privileged and exempt information would cause

reasonably foreseeable harm to an interest protected by that exemption. 5 U.S.C. §

552(a)(8)(A)(i)(I).

58.     Before deciding to withhold the long form closure memoranda responsive to

Plaintiff's request, CRT determined that it was reasonably foreseeable that their disclosure would

harm an interest protected by Exemption 5 and the attorney work product privilege. The nature

of the documents at issue in this case, and the context in/purpose for which they were compiled

or created, make the foreseeability of harm manifest.

59.     The attorney work product privilege exists to create a "zone of privacy" for

attorneys contemplating litigation. The records in this case were created and compiled in

furtherance of CRT's decisionmaking about whether to prosecute criminal civil rights violations.

14

60.     The Supreme Court has long recognized the critical importance of providing a privacy zone in which attorneys contemplating litigation can prepare their case, deliberate, analyze, question, debate, disagree about, and brainstorm arguments, approaches, and strategies to best represent their clients' interests.

61.     The records protected in this case document and reflect these very actions and deliberations by Criminal Section prosecutors as part of the CRT's prosecutorial decisionmaking. A zone of privacy around the prosecutors' forthright internal discussions was and is necessary to protect attorney impressions about core legal strategy and ensure thorough and proper decisions about whether to bring the force of the United States government against an individual in a criminal proceeding.  Abrogating the protection afforded to this zone by the work product privilege will hinder CRT's future prosecutions.  Knowing that otherwise privileged communications may be publicly disclosed will chill prosecutors in expressing and memorializing candid thoughts about and analysis of different legal theories, discussing and disagreeing about potential legal arguments and enforcement/prosecution strategies, considering and advocating for or against potentially unpopular or controversial positions, candidly identifying weaknesses, and otherwise zealously representing the interests of their client, the American people.  Due to the role of these records in CRT's law enforcement/prosecutorial process, their disclosure would deprive prosecutors of the privacy necessary to cull relevant from irrelevant facts, analyze and decide between different legal theories and arguments, assess the strengths and weaknesses of the case, and effectively strategize.  These are the very harms the attorney work product privilege is intended to prevent.

62.     Given the Government's power and authority, it is especially important that it makes careful, thorough, and thoughtful decisions when contemplating bringing criminal

15

prosecutions; protecting attorney work product helps ensure that this happens.  Thus, it is paramount to preserve the zone of privacy afforded by the work product privilege to prosecutors' deliberations, analyses, and preparation of their case, and to the agency's decisionmaking process about whether to prosecute.  For these reasons, CRT concluded that there is reasonably foreseeable harm in disclosing information that is otherwise privileged under the work product privilege.

**Segregability Determination**

63.    These records are exempt in their entireties.  They are attorney work product where all fact and opinion/analytical content are privileged and exempt under Exemption 5.  The Civil Rights Division determined that there is no reasonably segregable, non-exempt information that can be redacted for release.

**Publishing Till Act Case Closing Memoranda
Does Not Preclude CRT's Exemption 5 Withholdings**

64.    In 2006, the Federal Bureau of Investigation (FBI) launched a "Cold Case Initiative" to identify and investigate racially motivated murders committed decades ago.  *See* https://www.justice.gov/crt/cold-case-initiative (last accessed 1/12/2026).  This initiative was followed by formal Congressional action in 2008, when Congress passed the Emmett Till Unsolved Civil Rights Crime Act ("Till Act").  *See* Pub.L. 110-344 (Oct. 7, 2008).  The law directed the Department of Justice, including the Civil Rights Division and the FBI, to investigate and prosecute violations of criminal civil rights statutes that occurred no later than December 31, 1969, and resulted in death.  The law was set to sunset at the end of fiscal year 2017.

65.    The criminal civil rights statutes referenced in the Till Act are 18 U.S.C. §§ 241, 242, 245, 1581, and 1584, and 42 U.S.C. § 3631.

16

66.     The Till Act was reauthorized on December 16, 2016, by the Emmett Till Unsolved Civil Rights Crimes Reauthorization Act of 2016. *See* Pub.L. 114-325 (Dec. 16, 2016). The reauthorization extended coverage to violations of criminal civil rights statutes that occurred not later than December 31, 1979, and resulted in death. The reauthorization also included several transparency-related provisions. *See* 28 U.S.C. § 509 note, Pub.L. 114-325, ¶ 2(C)(3)-(8) (Dec. 16, 2016).

67.     Congress took further action regarding transparency of cold civil rights cases by enacting the Civil Rights Cold Case Records Collection Act of 2018 ("CRCCRA"), Pub.L. 115-426 (Jan. 8, 2019). Congress found that there was a "compelling interest in the prompt disclosure of civil rights cold case records for historical or Governmental purposes and for the purpose of fully informing the people of the United States about the history surrounding all civil rights cold cases in the United States." *Id*. "Civil rights cold cases" were defined to include those arising out of events occurring between January 1, 1940, and December 31, 1979, related to the criminal statutes referenced in the Till Act. This is a separate scheme from the FOIA for public disclosure of the records covered by the CRCCRA, although the CRCCRA explicitly and implicitly incorporates certain protective aspects from FOIA, such as protecting the privacy of living individuals.

68.     The Civil Rights Division's decision to publish closure memoranda from these cases, which are between 36 and 86 years old, does not waive its ability to protect long form closure memoranda from cases that were not part of the Till Act reviews. The Civil Rights Division can decide to waive its privilege and make discretionary releases of information consistent with the transparency requirements of a separate statute without abrogating its ability

17

to preserve the privilege or undermining its reasonable harm determination in other, unrelated

FOIA cases.[6]

## ADDITIONAL EXEMPTIONS

69.     As discussed above, the Civil Rights Division determined that the long form

closure memoranda are exempt from disclosure pursuant to Exemption 5.  However, in light of

the D.C. Circuit's ruling in *Maydak v. DOJ,* 218 F.3d 760 (D.C. Cir. 2000), CRT is also asserting

Exemptions 3, 6, 7(C), 7(D), 7(E), and 7(F) as additional grounds for withholding information in

this case.  5 U.S.C. §§ 552(b)(3), (6), (7)(C), (7)(D), (7)(E), and (7)(F).

## EXEMPTION 3

70.     Exemption 3 incorporates nondisclosure provisions contained in certain other

federal statutes.  It protects information when another federal statute either "requires that the

matters be withheld from the public in such a manner as to leave no discretion on the issue," or

"establishes particular criteria for withholding or refers to particular types of matter to be

withheld."  5 U.S.C. § 552(b)(3).  Any withholding statute "enacted after the date of the

enactment of the OPEN FOIA Act of 2009, [must] specifically cite[] to this paragraph" to qualify

for protection under Exemption 3.  *Id*.

71.     The Child Victims' and Child Witnesses' Rights Act, 18 U.S.C. § 3509(d),

protects from disclosure certain records containing personally identifying information of children

who were witnesses to crimes committed against another person.  The D.C. Circuit Court has

---

[6] Additionally, Till Act cases often suffered infirmaries due to age.  Subjects and/or witnesses were dead or their memories of the events had faded, evidence was lost or degraded, and applicable statutes of limitations had long since expired, rendering prosecution impossible.  These infirmaries, coupled with the Till Act's separate transparency requirements, undergird DOJ's decision to waive any privileges applicable to the Till Act memoranda and publish them on DOJ's website.

recognized this as an Exemption 3 withholding statute. It was enacted prior to the OPEN FOIA Act of 2009, so it is not required to cite Exemption 3 to qualify as a covered withholding statute.

72. Within the responsive records is information about several minors who witnessed the crimes being investigated or related crimes at issue in the cases, including their names and relationships to other witnesses or victims. This information is exempt pursuant to Exemption 3 in conjunction with 18 U.S.C. § 3509(d).

73. The foreseeable harm standard does not apply to Exemption 3 withholdings. The FOIA provides that "an agency shall only withhold information if: (1) the agency reasonably foresees that disclosure would harm an interest protected by one of the nine exemptions that FOIA enumerates; or (2) disclosure is prohibited by law." 5 U.S.C. § 552(a)(8). Since disclosure here is prohibited by law, CRT does not have to demonstrate foreseeable harm from disclosure.

### EXEMPTIONS 6 AND 7(C)

74. Contained within the responsive records in this case are the names and other identifying or personal information (*e.g.,* medical information) about numerous categories of people, including DOJ prosecutors and other law enforcement personnel, living crime victims, subjects not charged with Federal criminal civil rights violations, witnesses, informants/confidential sources, family members, and other third parties mentioned in the records. This information is exempt from disclosure pursuant to FOIA Exemptions 6 and 7(C).

75. Exemption 6 exempts from disclosure "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6). This is not an onerous standard; courts have held that Exemption 6 covers all information applying to a particular person.

19

76.     Exemption 7(C) exempts from disclosure "records or information compiled for law enforcement purposes [when disclosure] could reasonably be expected to constitute an unwarranted invasion of personal privacy."  5 U.S.C. § 552(b)(7)(C).

77.     CRT asserted Exemption 6 in conjunction with Exemption 7(C) because they use a similar balancing test, and even though Exemption 7(C)'s standard for withholding is lower than Exemption 6's standard, the analysis and balancing of privacy and public interests required of both exemptions is sufficiently similar to warrant a consolidated discussion.

78.     Here, the protected information applies to particular people.  Thus, Exemption 6's threshold requirement is readily satisfied.

79.     Similarly, Exemption 7's threshold, which requires that records or information were "compiled for law enforcement purposes," is easily satisfied here.  Congress created the Civil Rights Division in 1957 to uphold the civil and constitutional rights of all Americans, particularly some of the most vulnerable members of our society.  The Division has authority to enforce Federal civil rights statutes.  This law enforcement authority includes responsibility for investigating and prosecuting criminal cases throughout the United States involving the interference with liberties and deprivation of rights defined in the Constitution or federal law including, for example, 18 U.S.C. §§ 241, Conspiracy Against Rights, and 242, Deprivation of Rights Under Color of Law.  The records responsive to Plaintiff's request were compiled for law enforcement purposes as part of CRT's authority to enforce 18 U.S.C. §§ 241-242.

80.     After satisfying the threshold requirements and before applying Exemptions 6 and 7(C), CRT must balance the privacy interests of the impacted individuals against any public interest in disclosure.  This requires that CRT first determine the nature and strength of the privacy interests of the individuals.  Then CRT must consider what public interest, if any, would

be served by public disclosure of information about these individuals and whether such a public interest, if it exists, outweighs their privacy interests.  For purposes of these exemptions, a public interest exists only when information about an individual would significantly increase the public's understanding of agency operations and activities – *i.e.*, of CRT's performance of its mission to protect the civil and constitutional rights of Americans through enforcement of Federal civil rights laws.  Where no public interest exists, an individual's privacy interests will necessarily prevail.

81.    CRT protects the identities of individuals associated with its criminal investigations, whether as investigators/prosecutors/other law enforcement personnel, victims, subjects, witnesses, informants/sources, or third parties merely mentioned.  Courts have long recognized that being associated with a criminal investigation is stigmatizing and may engender comment and speculation.

### Law Enforcement Personnel

82.    CRT prosecutors and other law enforcement personnel assigned to these criminal cases have privacy interests in avoiding publicity, adverse or otherwise, regarding any particular investigation as that may seriously impair their effectiveness in conducting future investigations and/or prosecuting cases.  They conduct official inquiries and other actions into violations of various criminal statutes, including investigations of violent and sensitive crimes such use of deadly force by law enforcement personnel.  These cases often result in reasonable but nonetheless serious disturbances in the lives of individuals.  It is possible for a person targeted by such law enforcement activity to carry a grudge for years.  The publicity associated with the release of the identity of these law enforcement personnel in connection with a particular investigation could trigger hostility towards them.  Finally, these personnel have access to

21

sensitive law enforcement information from the investigations, which could make them the targets of harassing inquiries for unauthorized access to such information.  CRT considers that they have a privacy interest in being free from such unnecessary, unofficial questioning as to the conduct of an investigation.

83.     CRT has concluded that there is no public interest in the identities of the law enforcement personnel protected in these records.  Specifically, their identities would not, by themselves, substantially increase the public's understanding of CRT operations and activities.

84.     As any privacy interest necessarily outweighs no public interest, CRT properly concluded that Exemptions 6 and 7(C) protect this information.

**Witnesses and Confidential Sources/Informants**

85.     Exemptions 6 and 7(C) also apply to the names and other identifying personal information of witnesses and confidential sources/informants who provided information to law enforcement during investigations of the conduct at issue in these cases.  Information provided by individuals during interviews or otherwise is one of the most productive investigative tools used by law enforcement agencies.  The largest roadblock to successfully obtaining desired information through an interview or other cooperation during an investigation is fear by the individual that their identity will possibly be exposed and consequently they could be harassed, intimidated, or threatened with legal or economic reprisal or possible physical harm.  These fears are more focused in the context of investigations like the ones at issue here, which involve deaths alleged to have been caused by law enforcement personnel.  To surmount these obstacles, individuals interviewed as part of/cooperating with law enforcement must be assured that their names and identifying information will be protected.

86.     CRT has concluded that there is no public interest in these individuals' identities because on their own, they would not substantially increase the public's understanding of CRT's operations and activities.  But even assuming there is some minimal public interest in this information, law enforcement's continued access to individuals willing to honestly relate pertinent facts bearing upon a particular investigation far outweighs any benefit the public might derive from being furnished their names.

## Subjects/Individuals of Investigative Interest

87.     Exemptions 6 and 7(C) also apply to protect the identities of individuals who were of investigative interest in these cases but who CRT decided not to prosecute under Federal criminal civil rights statutes.  Being linked with any law enforcement investigation carries a strong negative connotation and a stigma.  To release the identities of these individuals to the public could subject them to harassment or embarrassment, as well as undue public attention.  Accordingly, CRT concluded that these individuals have substantial privacy interests.

88.     CRT further concluded that any public interest in this information is minimal as it would add little, if anything, to the public's understanding of CRT operations and activities.  Any such minimal contribution to the public's understanding does not outweigh these individuals' substantial privacy interests.

## Third Parties Merely Mentioned

89.     Finally, Exemptions 6 and 7(C) apply to protect the identities of third parties who were merely mentioned in the records.  These individuals were not of investigative interest, nor were they witnesses or sources.  Courts recognize that such individuals appearing by happenstance in law enforcement files have substantial privacy interests in not being publicly associated with Federal criminal investigations.  Disclosure of their identities could subject these

individuals to possible harassment or criticism and focus derogatory inferences and suspicion on them.

90.    In contrast, there is no public interest in this information, as these individuals' identities would not, themselves, significantly increase the public's understanding of CRT's operations and activities.  Accordingly, these individuals' privacy interests necessarily prevail over the nonexistent public interest.

### Foreseeable Harm

91.    CRT concluded that disclosure would result in reasonably foreseeable harm to the interests protected by these exemptions.  Public disclosure of this information creates a real and concrete risk of these individuals being directly contacted for no official reason or purpose, opening them up to harassment and exposing them to stigmatization for being associated with criminal investigations of violent and sensitive matters.  These are the very types of privacy invasions that Exemptions 6 and 7(C) are designed to prevent.  Accordingly, CRT concluded that it is reasonably foreseeable that disclosure of these individuals' identities would invade their privacy interests without any overriding public interest in doing so, thus resulting in an unwarranted invasion of their privacy.

### EXEMPTION 7(D)

92.     Exemption 7(D) exempts records and information compiled for law enforcement purposes that "could reasonably be expected to disclose the identity of a confidential source, . . . and, in the case of a record or information compiled by a criminal law enforcement authority in the course of a criminal investigation . . . , information furnished by a confidential source."  5 U.S.C. § 552(b)(7)(D).  Criminal investigations often rely on assistance from confidential sources or informants – *i.e.*, sources who provide information under express assurances of

confidentiality or under circumstances from which an assurance of confidentiality can be reasonably inferred due to the nature of the crime and the source's relationship to it.

93.     The records at issue here involve circumstances resulting in the deaths of individuals, sometimes following violent confrontations with police officers, occurring in correctional facilities, or following suspected criminal activities by the victims, including murder and gang or drug activities.  The sources were in close proximity to the potential criminal activities and/or had relationships with subjects or victims in the cases.

94.     There is foreseeable harm in disclosing these individuals' identities.  They are in positions that could subject them to acts of reprisal or harassment for cooperating with law enforcement officials investigating these cases, or that could draw an unnecessary amount of public attention if their cooperation was disclosed.  Individuals who confidentially provide investigative information must be free to furnish that information with complete candor and without the understandable tendency to hedge or withhold information out of fear of public disclosure.  Disclosing their identities risks putting them in harm's way and also threatens the ability of law enforcement to recruit or maintain confidential sources in the future.  Exemption 7(D) protects against such harms.

### EXEMPTION 7(E)

95.      Exemption 7(E) protects records or information compiled for law enforcement purposes when disclosure "would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of law."  5 U.S.C. § 552(b)(7)(E).  Exemption 7(E) protects techniques and procedures that are not known to

25

the public as well as non-public details about the use of publicly-known techniques and procedures.

### Investigative Techniques and Procedures

96.    Exemption 7(E) has been applied here to protect non-public information about: procedures and techniques used by law enforcement agencies including the FBI in investigating the criminal civil rights cases at issue in this litigation; the use of a confidential source and an undercover officer in the context of particular investigations; and the composition and operational plans of a gang task force.  Disclosure of this information could enable subjects of criminal investigations to circumvent the use of these techniques and procedures in similar circumstances.  The relative benefit of these techniques and procedures will be diminished if they are publicly disclosed.  Such disclosure would facilitate the accumulation of information by investigative subjects regarding the circumstances under which the techniques and procedures are used or requested and the value of the information obtained.

97.    There is foreseeable harm in releasing this type of information.  Specifically, it would enable investigative subjects to educate themselves and then develop/deploy countermeasures to circumvent the effectiveness of these techniques and procedures, and continue to violate the law.

### Types of FBI Investigations and Bases for Initiation

98.    Exemption 7(E) has also been applied to information about the types of investigations initiated by the FBI in these criminal civil rights cases and information revealing the bases warranting initiation of a particular type/level of investigation based on the specific

facts and circumstances of a case.[7]  Disclosure of this information would allow individuals to know the types of activities that trigger a full investigation as opposed to a preliminary investigation as opposed to an assessment.  This would then tell them what types of techniques, procedures, and tools are authorized for investigators to use.

99.    There is foreseeable harm in disclosing this information.  It would permit individuals to more effectively develop and deploy countermeasures to thwart investigative efforts.  Thus, disclosure is reasonably expected to impede the FBI's effectiveness and potentially aid in the circumvention of law.

### EXEMPTION 7(F)

100.    Exemption 7(F) protects records or information compiled for law enforcement purposes when disclosure "could reasonably be expected to endanger the life or physical safety of an individual."  5 U.S.C. § 552(b)(7)(F).  Unlike Exemptions 6 and 7(C), no balancing of privacy and public interests is required in applying Exemption 7(F).

101.    CRT concluded that the exemption applies to protect the identities of law enforcement personnel mentioned in the records who were working on drug and gang task forces, including one operating undercover; a confidential source involved in a drug buy; and witnesses to a murder allegedly perpetrated by the victim in one case.  The identities of law enforcement personnel enforcing federal drug laws are regularly protected under Exemption 7(F) because of the threat of violence routinely associated with such cases.  That threat is more acute

---

[7]  There are various types/levels of investigation that the FBI is authorized to undertake.  The investigative techniques, procedures, and tools permitted for use varies based on the level of the investigation.  The level of factual predication necessary to qualify for a particular type of investigation also varies.  Cases with a lower level of factual predication have a more limited range of authorized investigative techniques, procedures, and tools.  As the level of factual predication increases, so too does the range of authorized investigative techniques, procedures, and tools.  An investigation can begin at one level and move to another as it progresses.  *See generally* FBI Domestic Investigations and Operations Guide (DIOG) (Feb. 2024).
https://vault.fbi.gov/FBI%20Domestic%20Investigations%20and%20Operations%20Guide%20%28DIOG%29

for the undercover officer. Similarly, confidential sources in drug trafficking cases and witnesses to murder face repercussions based on their proximity to and knowledge of criminal activity, as well as their cooperation with law enforcement investigations of that criminal activity. CRT can reasonably expect that disclosure of their identities would endanger their lives or physical safety. Thus, there is foreseeable harm in releasing this information.

## CONCLUSION

102.    For the reasons described above, the long form closure memoranda responsive to Plaintiff's second request are categorically exempt under Exemption 5 in conjunction with the attorney work product privilege, and specific information in the memoranda is also exempt under Exemptions 3, 6, 7(C), 7(D), 7(E), and/or 7(F). CRT has articulated how foreseeable harm would result from disclosure of these memoranda and information in them. Finally, because the attorney work product privilege applies to both facts and analysis, there is nothing that can be segregated for release.

103.    CRT has also demonstrated that it conducted searches reasonably calculated to locate records responsive to Plaintiff's second request, and indeed, located such records. While there are three memoranda that have not been located in the places CRT would reasonably expect them to be, this is not an indication that the search methodology was flawed. Moreover, CRT is continuing efforts to try to locate the missing documents.

104.    Finally, CRT has demonstrated that fulfilling the entirety of both of Plaintiff's requests, which span over 25 years of cases, would require retrieval and manual searches of thousands of case files in order to locate responsive long form closure memoranda. Likely, those memoranda would then be withheld in full pursuant to Exemption 5 in conjunction with the attorney work product privilege, for the reasons discussed herein. Plaintiff's requests are overly

28

broad, which presents an undue burden on CRT.  When such burdens exist, requests are not reasonably described and are not, therefore, proper FOIA requests.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct, and that Exhibits 1-16 attached hereto are true and correct copies.

Executed this 11th  day of June 2026.

John Buchko, Acting Chief
FOI/PA Branch
Civil Rights Division
U.S. Department of Justice
Washington, D.C. 20530