Matthew S.L. Cate (SBN 295546)
matt@matthewcatelaw.com
**LAW OFFICE OF MATTHEW S.L. CATE**
101 Montgomery Street, Suite 900
San Francisco, CA  94104
Tel/Fax: 415-964-4400

D. Victoria Baranetsky (SBN 311892)
Brooke Henderson (*pro hac vice*)
**THE CENTER FOR INVESTIGATIVE**
   **REPORTING**
222 Sutter Street, #600
San Francisco, CA 94108
Telephone: (510) 982-2890
Fax: (510) 849-6141
vbaranetsky@cir.org
bhenderson@cir.org

*Counsel for Plaintiff*

**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| The Center for Investigative Reporting,<br><br>Plaintiff,<br><br>v.<br><br>United States Department of Justice,<br><br>Defendant. | Case No. 4:25-cv-7309-AMO<br><br>Hon. Araceli Martínez-Olguín<br><br>**Plaintiff's Opposition to Defendant's Motion for Summary Judgment & Cross-Motion for Partial Summary Judgment**<br><br>Hearing:        Nov. 12, 2026<br>Time:           2:00 p.m.<br>Courtroom:   5 |

**Table of Contents**

Table of Authorities ................................................................................................................ iii

NOTICE OF CROSS-MOTION AND CROSS-MOTION ................................................................1

Memorandum of Points and Authorities.........................................................................................2

I.    Introduction....................................................................................................................2

    A.    The DOJ prepares Closing Memos for public accountability to reflect that it will not prosecute a possible civil rights violation and that the file is being closed......3

    B.    Understanding transparency's role in promoting accountability, the DOJ frequently discloses Closing Memos. ...............................................................5

    C.    CIR submits two FOIA requests seeking disclosure of Closing Memos relating to alleged civil-rights violations that resulted in death. ..................................6

II.   Legal Standard ................................................................................................................7

III.  Argument ........................................................................................................................7

    A.    The DOJ failed to fulfill its basic obligation under FOIA to search for records responsive to the First Request, and failed to show the First Request was unduly burdensome according to well-established caselaw. ........................................7

        1.    Volume and manner of search are irrelevant to whether a request "reasonably describes" the records sought. ........................................8

        2.    Even under the DOJ's burden framework, its showing falls far short of what FOIA requires........................................................................9

    B.    The DOJ has failed to meet its burden to conduct a segregability finding as FOIA requires. ................................................................................11

    C.    The DOJ has failed to carry its burden to withhold the Closing Memos under Exemption 5. ..................................................................................12

        1.    The Closing Memos are not attorney work product because they were not prepared in anticipation of litigation........................................13

        2.    Even if Exemption 5 applies, the DOJ has not demonstrated that reasonably foreseeable harm would arise from their disclosure.....................16

    D.    The DOJ has failed to meet its burden to demonstrate that any of the other cited exemptions justify nondisclosure..........................................................19

        1.    Exemption 3 does not apply to any of the Closing Memos. ...........................19

        2.    The DOJ has failed to demonstrate that Exemptions 6-7(C) apply to the material in the Closing Memos. ..............................................21

        3.    Exemption 7(D), (E) and (F) similarly do not justify nondisclosure..............23

    E.    Evidentiary Objections to Buchko Declaration .........................................................24

IV.   Conclusion ...................................................................................................................25

Plf's Opp'n to Def's MSJ & Cross-Mot. for Partial Summary Judgment / Case No. 4:25-cv-7309-AMO

**Table of Authorities**

**Cases**

*A. Michael's Piano v. FTC*,
   18 F.3d 138 (2d Cir. 1994)......................................................................................................15

*ACLU of N. Calif. v. U.S. Dep't of Justice*,
   880 F.3d 473 (9th Cir. 2018) ...............................................................................12, 13, 16, 17

*ACLU v. FBI*,
   No. C 12-03728 SI, 2013 WL 3346845 (N.D. Cal. July 1, 2013) .................................22

*Am. Fed'n of Gov't Emps., Local 2782 v. U.S. Dep't of Com.*,
   907 F.2d 203 (D.C. Cir. 1990) ......................................................................................10, 11

*Am. Oversight v. GSA*,
   311 F. Supp. 3d 327 (D.D.C. 2018) ..................................................................................22

*Callaway v. U.S. Dep't of Treasury*,
   No. 08-5480, 2009 WL 10184495 (D.C. Cir. June 2, 2009) .........................................24

*Canning v. U.S. Dep't of the Treasury*,
   No. 94-2704, 1998 U.S. Dist. LEXIS 24232 (D.D.C. May 7, 1998)............................14

*Coastal States Gas Corp. v. U.S. Dep't of Energy*,
   617 F.2d 854 (D.C. Cir. 1980) ...............................................................................13, 14, 15, 18

*Ctr. for Investigative Reporting v. U.S. Dep't of Labor*,
   424 F. Supp. 3d 771 (N.D. Cal. 2019) ..............................................................................16

*U.S. Dep't of State v. Ray*,
   502 U.S. 164 (1991) ............................................................................................................21

*Dow Jones & Co. v. U.S. Dep't of Justice*,
   724 F. Supp. 985 (D.D.C. 1989) .......................................................................................14

*Ellis v. U.S. Dep't of Justice*,
   110 F. Supp. 3d 99 (D.D.C. 2015)....................................................................................13

*Food Mktg. Inst. v. Argus Leader Media*,
   588 U.S. 427 (2019)............................................................................................................19

*Garris v. FBI*,
   937 F.3d 1284 (9th Cir. 2019) ....................................................................................24, 25

*Gavin v. SEC*,
   No. 04-4522 PAMJSM, 2007 WL 2454156 (D. Minn. Aug. 23, 2007)......................16

*Hamdan v. U.S. Dep't of Justice*,
   797 F.3d 759 (9th Cir. 2015) ......................................................................................11, 12

*Heggestad v. U.S. Dep't of Justice*,
  182 F. Supp. 2d 1 (D.D.C. 2000) ...................................................................................................16

*Human Rights Def. Ctr. v. U.S. Park Police*,
  126 F.4th 708 (D.C. Cir. 2025) .....................................................................................................16

*Judicial Watch, Inc. v. U.S. Dep't of Homeland Sec.*,
  598 F. Supp. 2d 93 (D.D.C. 2009) .................................................................................................21

*Kimberlin v. U.S. Dep't of Justice*,
  139 F.3d 944 (D.C. Cir. 1998) .......................................................................................................22

*Kishore v. U.S. Dep't of Justice*,
  575 F. Supp. 2d 243 (D.D.C. 2008) ...............................................................................................15

*Lawyers' Comm. for Civil Rights v. Dep't of the Treasury*,
  No. C 07-2572 PJH, 2008 WL 4482855 (N.D. Cal. Sept. 30, 2008)..............................................21

*Leopold v. U.S. Dep't of Justice*,
  94 F.4th 33 (D.C. Cir. 2024)..........................................................................................................17

*Mid-Atl. Innocence Project v. Fed. Bureau of Investigation*,
  No. 23-CV-2112 (BAH), 2026 WL 775907 (D.D.C. Mar. 19, 2026) ...............................19, 20, 21

*Minier v. CIA*,
  88 F.3d 796 (9th Cir. 1996) ....................................................................................................22, 23

*Nation Mag. v. U.S. Customs Serv.*,
  71 F.3d 885 (D.C. Cir. 1995) ....................................................................................................9, 10

*Nat'l Sec. Counselors v. CIA*,
  969 F.3d 406 (D.C. Cir. 2020) .......................................................................................................10

*Pac. Fisheries, Inc. v. United States*,
  539 F.3d 1143 (9th Cir. 2008) .................................................................................................12, 24

*Petroleum Info. Corp. v. U.S. Dep't of Interior*,
  976 F.2d 1429 (9th Cir. 1992) .........................................................................................................7

*Pinson v. U.S. Department of Justice*,
  80 F. Supp. 3d 211 (D.D.C. 2015)..................................................................................................10

*Plush Lounge Las Vegas LLC v. Hotspur Resorts Nevada Inc.*,
  371 F. App'x 719 (9th Cir. 2010) ...................................................................................................24

*Pomares v. Dep't of Veterans Affairs*,
  113 F.4th 870 (9th Cir. 2024) ..........................................................................................................7

*Power the Future v. White House Council on Envtl. Quality*,
  No. 24-1942 (RC), 2025 WL 2206947 (D.D.C. Aug. 4, 2025) ......................................................11

*Public Citizen v. Department of Education*,
    292 F. Supp. 2d 1 (D.D.C. 2003) ..............................................................................10

*Reporters Comm. for Freedom of the Press v. FBI*,
    3 F.4th 350 (D.C. Cir. 2021) ..............................................................................17, 18, 19

*Rojas v. Fed. Aviation Admin.*,
    941 F.3d 392 (9th Cir. 2019) ..............................................................................23

*Rosenfeld v. U.S. Dep't of Justice*,
    No. C07-03240MHP, 2008 WL 3925633 (N.D. Cal. Aug. 22, 2008) ..........................................24

*Senate of Puerto Rico v. U.S. Dep't of Justice*,
    823 F.2d 574 (D.C. Cir. 1987) ..............................................................................13, 15, 16

*Shapiro v. CIA*,
    170 F. Supp. 3d 147 (D.D.C. 2016) ..............................................................................8, 9

*Tereshchuk v. Bureau of Prisons*,
    67 F. Supp. 3d 441 (D.D.C. 2014) ..............................................................................8, 10

Transgender Law Ctr. v. ICE,
    46 F.4th 771 (9th Cir. 2022) ..............................................................................11

*U.S. Dep't of Justice v. Landano*,
    508 U.S. 165 (1993) ..............................................................................24

*United States v. Jacobson*,
    785 F. Supp. 563 (E.D. Va. 1992) ..............................................................................20

*Willamette Industries v. United States*,
    689 F.2d 865 (9th Cir. 1982) ..............................................................................11

*Yagman v. Pompeo*,
    868 F.3d 1075 (9th Cir. 2017) ..............................................................................8, 9, 10

*Yeager v. DEA*,
    678 F.2d 315 (D.C. Cir. 1982) ..............................................................................8

*Yonemoto v. Dep't of Veterans Affairs*,
    686 F.3d 681 (9th Cir. 2012) ..............................................................................21, 22

**Federal Statutes**

5 U.S.C. § 552(a)(3)(A) ..............................................................................8

5 U.S.C. § 552(a)(4)(B) ..............................................................................7

5 U.S.C. § 552(b) ..............................................................................11

5 U.S.C. § 552(b)(3) ..............................................................................2, 19

5 U.S.C. § 552(b)(6) ..............................................................................21

Plf's Opp'n to Def's MSJ & Cross-Mot. for Partial Summary Judgment / Case No. 4:25-cv-7309-AMO

5 U.S.C. § 552(b)(7)(C) ..................................................................................................................21

18 U.S.C. § 242.................................................................................................................... 2, 3, 4

18 U.S.C. § 3509 ...........................................................................................................................20

18 U.S.C. § 3509(d) .........................................................................................................19, 20, 21

18 U.S.C. § 3509(d)(1)(B) ............................................................................................................20

Emmett Till Unsolved Civil Rights Crime Act of 2008 ..................................................................5

FOIA Improvement Act of 2016......................................................................................................16

**Federal Rules**

Fed. R. Civ. P. 56(a) ........................................................................................................................7

Fed. R. Civ. P. 56(c)(4)..................................................................................................................24

Fed. R. Evid. 602 ...........................................................................................................................24

Fed. R. Evid. 701 ...........................................................................................................................24

Fed. R. Evid. 702 ...........................................................................................................................24

Fed. R. Evid. 703 ...........................................................................................................................24

**Other Authorities**

N.D. Cal. Civil Local Rule 7-3(a)...................................................................................................24

*Proceeding*, Black's Law Dictionary (9th ed. 2009) .......................................................................20

S. Rep. No. 4, 114th Cong., 1st Sess. 2 (2015)...............................................................................16

U.S. Dep't of Just., Justice Manual § 8-3.190,
    https://www.justice.gov/jm/jm-8-3000-enforcement-civil-rights-criminal-statutes.......................4

U.S. Dep't of Just., Contact the Civil Rights Division,
    https://civilrights.justice.gov/..................................................................................................4

Jim Mason, *Civil Rights Probe Planned*,
    Richmond Times-Dispatch, Aug. 14, 2002, at B3, https://www.newspapers.com/im-
    age/837284458/.................................................................................................................4

Jonathan D. Silver, *FBI to Probe East End Shooting*,
    Pitt. Post-Gazette, Aug. 12, 2000, at C-1, https://www.newspapers.com/
    image/89796147/..............................................................................................................4

Curt Anderson, *FBI Probing Fla. Police Shooting of Man with Air Rifle*,
    Associated Press (July 8, 2015), https://www.police1.com/officer-shootings/articles/fbi-
    probing-fla-police-shooting-of-man-with-air-rifle-mfyFgKLfjhe3KZpR/....................................4

Plf's Opp'n to Def's MSJ & Cross-Mot. for Partial Summary Judgment / Case No. 4:25-cv-7309-AMO

Jon Schuppe, *Lawyers for Freddie Gray's Family Accept DOJ Decision to Not Charge Cops*, NBC News (Sept. 13, 2017), https://www.nbcnews.com/news/us-news/freddie-gray-s-family-lawyers-accept-doj-decision-not-charge-n801116..............................................................................4

DOJ, Civil Rights Division Emmett Till Act (Cold Case Closing Memoranda), https://www.justice.gov/crt/civil-rights-division-emmett-till-act-cold-case-closing-memoranda.............................................................................................................................5

**NOTICE OF CROSS-MOTION AND CROSS-MOTION**

**PLEASE TAKE NOTICE** that on November 12, 2026, at 2:00 p.m. or as soon thereafter as this matter may be heard in the Oakland Federal District Courthouse, 1301 Clay Street, Courtroom 5, Second Floor, Plaintiff The Center for Investigative Reporting ("CIR") will oppose the motion for summary judgment filed by Defendant United States Department of Justice ("DOJ"), Dkt. No. 28, and will cross-move this Court for an order under Federal Rule of Civil Procedure 56 granting partial summary judgment in CIR's favor on the issues identified below. CIR's cross-motion is based on the below Memorandum of Points and Authorities, the declarations of Matthew S.L. Cate and Jonathan Jones and accompanying exhibits, all materials on file in this action or which the Court may take judicial notice, and such further evidence and argument the Court may receive.

**Relief Sought**

CIR respectfully asks the Court to deny the DOJ's motion for summary judgment and grant CIR's cross-motion and thereby issue an order (1) ruling that the DOJ may not withhold any of the requested public records at issue in this Freedom of Information Act ("FOIA") case under FOIA Exemption 5; (2) requiring the DOJ to search for and produce all nonexempt portions of public records responsive to CIR's December 19, 2019, FOIA request on a timeframe to be proposed by the parties; (3) requiring the DOJ to disclose, within 30 days of the Court's order, all nonexempt portions of the public records responsive to CIR's March 7, 2024, FOIA request, and (4) instructing the parties to submit a joint status report to the Court within 60 days of its order.

**Issues to be Decided**

CIR's cross-motion raises the following issues:

1.      Whether the DOJ complied with its obligation to search for records responsive to the First Request;

2.      Whether the DOJ has met its burden to prove that it need not comply with its obligation to release segregable portions of the requested public records but instead may withhold records in their entirety, under FOIA Exemptions 3, 5, 6, and/or 7;

3.      Whether the DOJ has met its burden to prove that the public records CIR requested, in both the First Request and Second Request, may be lawfully withheld from disclosure under FOIA

Exemption 5, 5 U.S.C. § 552(b)(5), including whether the DOJ has demonstrated that disclosure would cause foreseeable harm to the interests meant to be protected by Exemption 5;

4.      Whether the DOJ has met its burden to prove that the requested public records may be lawfully withheld from disclosure under Exemption 3, 5 U.S.C. § 552(b)(3); and

5.      Whether certain portions of the Declaration of John Buchko the DOJ submitted in support of its motion for summary judgment constitute inadmissible evidence on which the DOJ may not rely in support of its motion for summary judgment.

**Memorandum of Points and Authorities**

## I.      Introduction

This case seeks to vindicate the public's right to know how the federal government pursues justice when a person dies at the hands of law enforcement officers or other state actors. As the DOJ acknowledges, those incidents often spark intense local and even national interest, and the public has a substantial interest in transparency into the circumstances of the killings and the decisions by the DOJ either to file charges or close a case without them.

CIR has asked the agency to disclose records that reveal that ultimate decision made by the DOJ. It seeks the records from 1998-2018 involving alleged fatal violations of 18 U.S.C. § 242 (the Reconstruction Era law designed to punish unlawful deprivation of civil rights and that is used to federally prosecute police misconduct). The requested records (the "Closing Memos") are the singular written account of the agency's decision *not* to prosecute such alleged offenses—a decision most valuable to the community at hand. They identify what is known about the fatal incident and most importantly, reflect the agency's final determination of why the government chose, in the end, not to prosecute. The agency regularly releases these records in other contexts, whether because they are particular types of "cold cases," because a person has asked for them under the FOIA, or because the agency chooses to release them as press releases.

Nonetheless, the DOJ now seeks to shield these critical narratives from the public under various theories, none of which have factual or legal merit.

*First*, the DOJ has improperly failed to satisfy its basic obligation to search for Closing Memos responsive to CIR's request for records relating to investigations from 1998 through 2017 (the "First

Request"). Its argument that CIR has not reasonably described what records it seeks is belied by the agency's admission that it knows exactly what CIR wants and how to comply with the request. And the DOJ has failed to demonstrate that compliance with the request would cause an undue burden. *See below* Mem. § III(A). **Second**, the DOJ has generally failed to address, much less carry, its burden to lawfully withhold, in their entirety, the Closing Memos relating to investigations from 2018 through 2024 (the "Second Request"). Even if the agency's claimed exemptions applied to those memos, FOIA requires all nonexempt information within them to be disclosed. *See id.* § III(B). **Third**, the Closing Memos may not lawfully be withheld under Exemption 5 because they are not materials prepared in anticipation of litigation. Quite the opposite: The memos were prepared with the full expectation that no case would be brought at all. Moreover, even if Exemption 5 applied to the records, the DOJ has failed to demonstrate that it is reasonably foreseeable that disclosure of the requested Closing Memos would cause harm to interests protected by the work-product doctrine. *See id.* § III(C). **Finally**, just as it failed to demonstrate blanket applicability of Exemption 5, the DOJ has similarly fallen far short of the showing needed to withhold material from memos responsive to the Second Request under Exemptions 3, 6 and 7. The agency misconstrues the statute at the heart of its Exemption 3 assertion, and it improperly relies on conclusory assertions to seek to justify the rest. *See id.* § III(D).

Transparency is not an optional courtesy in matters of civil rights; it is the cornerstone of public trust. The Court should therefore deny the DOJ's motion for summary judgment, grant CIR's cross-motion, and order the agency to comply with CIR's requests and the law.

**A.    The DOJ prepares Closing Memos for public accountability to reflect that it will not prosecute a possible civil rights violation and that the file is being closed.**

Federal law prohibits the willful deprivation of civil rights by any person acting "under color of law" and provides for life imprisonment or the death penalty when the unlawful conduct results in death. *See* 18 U.S.C. § 242. Alleged violations of this law often result in investigations. The DOJ's Civil Rights Division ("CRT") is the agency component with the responsibility of enforcing that law and investigating potential violations as well as prosecuting those who violate it. *See* Compl. ¶ 13; Answer ¶ 13; Declaration of John Buchko ("Buchko Decl.") ¶ 52.

Closing Memos are often a result of public inquiry into potential violations of the law. The DOJ recognizes that these types of cases "often spark intense public interest."[1] If there is suspicion of a civil rights violation, in violation of 18 U.S.C. § 242, the DOJ invites the public to request an investigation by filing a formal complaint with the CRT. Civil rights organizations such as the NAACP, members of Congress, or the victim's family often do so.[2]

For the families and communities that seek these investigations, the announcement that the DOJ will open one often comes with a sense of relief that an independent body is taking their allegations seriously.[3] The announcement does not mean wrongdoing occurred, but it reassures the community that its concerns will not be ignored, a critical value of the Closing Memos that the DOJ acknowledges. *See* Buchko Decl. ¶ 52 (acknowledging that some investigations arise "due to actual or perceived conflicts of interest in local jurisdictions").[4] In many cases, the federal investigation represents the last realistic opportunity for criminal accountability.

When the CRT decides that it will not pursue charges for a potential violation of Section 242, it prepares a Closing Memo, under the title "Notice to Close File," that explains the reasons it will not prosecute the alleged offense. *See, e.g.*, CIR Exs. 1–4.[5] In cases where the alleged civil rights violation led to a person's death—for example, in the case of an incident where a police officer shot and killed

---

[1] U.S. Dep't of Just., Justice Manual § 8-3.190 (updated Apr. 2018), https://www.justice.gov/jm/jm-8-3000-enforcement-civil-rights-criminal-statutes.

[2] U.S. Dep't of Just., Contact the Civil Rights Division, https://civilrights.justice.gov/ (last visited July 13, 2026) (public portal for reporting civil rights violations); *see, e.g.*, Jim Mason, *Civil Rights Probe Planned*, Richmond Times-Dispatch, Aug. 14, 2002, at B3, https://www.newspapers.com/image/837284458/ (Virginia NAACP requests for federal investigation of two fatal police shootings).

[3] Jonathan D. Silver, *FBI to Probe East End Shooting*, Pitt. Post-Gazette, Aug. 12, 2000, at C-1, https://www.newspapers.com/image/89796147/ (quoting local coroner saying, "I'm gratified that people at the federal level have determined that the case warrants further investigation"); *see also* Curt Anderson, *FBI Probing Fla. Police Shooting of Man with Air Rifle*, Associated Press (July 8, 2015), https://www.police1.com/officer-shootings/articles/fbi-probing-fla-police-shooting-of-man-with-air-rifle-mfyFgKLfjhe3KZpR/ (stating the family "welcomes the FBI probe").

[4] *See also, e.g.*, Jon Schuppe, *Lawyers for Freddie Gray's Family Accept DOJ Decision to Not Charge Cops*, NBC News (Sept. 13, 2017), https://www.nbcnews.com/news/us-news/freddie-gray-s-family-lawyers-accept-doj-decision-not-charge-n801116 ("[W]e are satisfied that . . . the Department of Justice did what they were supposed to do in conducting this investigation.").

[5] References to "CIR Ex. __" are to the exhibits attached to the Declaration of Matthew S.L. Cate ("Cate Decl.") filed concurrently with this cross-motion.

— 4 —

someone—the memoranda typically identify the factual background of the alleged violation by the person claimed to be acting "under color of law," identify relevant exculpatory and inculpatory facts, and provide the agency's rationale for the decision not to file criminal charges for civil rights violations. *See id.*

The DOJ also recognizes that its decision and reasoning to pursue charges, and especially not to pursue charges, as discussed in the Closing Memos, is important to the public because it helps to restore trust in law enforcement and create accountability for the decisionmaking process, so transparency is critical to achieving those goals. *See* CIR Ex. 5 at 3 (the Department's "goal is to promote transparency and accountability, which will increase public trust"); CIR Ex. 6 at 3 (stating that CRT rebuilds trust by following the evidence "whether that means an indictment or closing the case").

**B.      Understanding transparency's role in promoting accountability, the DOJ frequently discloses Closing Memos.**

The DOJ has previously disclosed a number of Closing Memos in which the alleged violations of Section 242 resulted in death. *See* Answer ¶¶ 16–17; CIR Exs. 1–4, 7–10.

For example, in certain matters, the DOJ issues press releases or other public reports that publish Closing Memo content regarding the facts of a fatal shooting and the agency's discussion for why charges will not be pursued. *See* CIR Exs. 7–10.

Similarly, the DOJ publishes its Closing Memos prepared in connection with its investigations of civil rights cold cases that CRT reviews under the Emmett Till Unsolved Civil Rights Crime Act of 2008 and that law's 2016 reauthorization (together, the "Emmett Till Act"). *See* Answer ¶ 16; CIR Exs. 3–4.[6] As with other Closing Memos, these published memoranda explaining the rationale for closing Emmett Till Act investigations appear under the title "Notice to Close File," disclose factual background of the alleged, fatal civil-rights violation, and set forth the analysis behind the decision to close the case file. *Compare* CIR Exs. 1–2 *with* CIR Exs. 3–4. The DOJ has emphasized, meanwhile,

---

[6] DOJ, Civil Rights Division Emmett Till Act (Cold Case Closing Memoranda), https://www.justice.gov/crt/civil-rights-division-emmett-till-act-cold-case-closing-memoranda (disclosing 127 closing memoranda regarding alleged Section 242 violations that occurred from 1921 through 2019).

that it will continue to publish these Closing Memos consistent with FOIA and the DOJ's stated, over-arching goals underlying its investigations of the fatal incidents: "to provide transparency to family members of the victims and to provide the greater public with truthful accounts of these matters." *See* CIR Ex. 11 at 3, 38.

Finally, CRT has disclosed Closing Memos for investigations that do not fall under the Emmett Till Act in response to FOIA requests. *See* Jones Decl. ¶¶ 8–10; CIR Ex. 1. For example, in 2018, the DOJ disclosed its Closing Memo relating to the 2008 death of Billey Joe Johnson, Jr. *See* Jones Decl. ¶ 9; CIR Ex. 1. That disclosure, in particular, serves as a useful example of how a Closing Memo can be an invaluable tool to improve government accountability. In 2021 CIR produced *Mississippi Goddam: The Ballad of Billey Joe*, a seven-part investigative podcast series that investigated the 2008 death of a Black high school football star, Billey Joe Johnson, Jr., during a traffic stop with a White deputy. Jones Decl. ¶¶ 3, 11. The story was reported after community members wanted to know more information. CIR requested and obtained the Closing Memo that was an integral part of the podcast series. *Id.* ¶ 3. The Closing Memo, alongside other reporting, revealed massive inconsistencies in the official story provided by local officials and allowed Johnson's family and community to understand how law enforcement had investigated and handled the case. *Id.* ¶¶ 5, 12–14.

**C.    CIR submits two FOIA requests seeking disclosure of Closing Memos relating to alleged civil-rights violations that resulted in death.**

On December 19, 2019, CIR submitted a FOIA request to CRT seeking disclosure of "[a]ny long-form closing memoranda reflecting the Division's decision not to prosecute a 242 matter that resulted in death" for matters investigated between 1998 and 2018 (the "First Request"). *See* Buchko Decl. ¶¶ 6–8; DOJ Ex. 1. The DOJ denied the First Request to the extent it requested Closing Memos, and it has not disclosed any Closing Memos responsive to that request. *See* Buchko Decl. ¶¶ 12, 43.

On March 7, 2024, CIR submitted a request to CRT seeking disclosure of "any long-form closing memoranda reflecting the Division's decision not to prosecute a (18 U.S.C.) 242 matter that resulted in death between 2018 and 2024" (the "Second Request"). Buchko Decl. ¶¶ 20–22; DOJ Ex. 11. The DOJ denied the Second Request and has not disclosed to CIR any Closing Memos responsive to that request. *See, e.g.*, Buchko Decl. ¶ 45.

After CIR brought this action, the DOJ has confirmed that it has identified 45 Closing Memos responsive to the Second Request. *See id.* ¶ 44; DOJ Attachment A. The DOJ does not know how many Closing Memos are responsive to the First Request,[7] and it has not explained how long it would take to find out and to search them in compliance with the First Request. *See* Buchko Decl. ¶¶ 40–43. The DOJ claims that all Closing Memos, except for two Emmett Till Act memos published online, are exempt from disclosure and need not be provided to CIR under the FOIA. *See generally* Mot.

## II.   Legal Standard[8]

An agency resisting disclosure of public records has the burden to justify its withholding and demonstrate that its claimed exemptions apply. *See* 5 U.S.C. § 552(a)(4)(B). When assessing whether an agency has carried that burden, courts remain "[m]indful of FOIA's general command to provide 'broad disclosure'" and thus interpret FOIA "exemptions narrowly[.]" *Pomares v. Dep't of Veterans Affairs*, 113 F.4th 870, 881 (9th Cir. 2024). As with all cases, summary judgment should be granted only when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Further, "[w]hen an agency seeks to protect material which, even on the agency's version of the facts, falls outside the proffered exemption, summary judgment in favor of the FOIA plaintiff is appropriate." *Petroleum Info. Corp. v. U.S. Dep't of Interior*, 976 F.2d 1429, 1433 (9th Cir. 1992).

## III.   Argument

### A.   The DOJ failed to fulfill its basic obligation under FOIA to search for records responsive to the First Request, and failed to show the First Request was unduly burdensome according to well-established caselaw.

The DOJ argues it is not required to comply with FOIA's search requirement for the First Request because doing so would require it to spend an unspecified amount of time searching "boxes." *See* Mot. at 20–22; Buchko Decl. ¶¶ 40–43. The DOJ's argument to avoid compliance with the First Request fails for two independent reasons. For one, the DOJ admits it knows exactly what records CIR seeks, where they are, and how to find them—which by itself demonstrates that the First Request

---

[7] The parties have construed the First Request as seeking memos for 1998 through 2017 and the Second Request as seeking memos for 2018 through 2024. *See* Mot. at 5.

[8] Unless otherwise indicated, all internal citations, ellipses, quotation marks, and brackets have been omitted from the citations provided in this memorandum.

"reasonably describes" the records at issue and obligates the DOJ to search for them. Separately, even if the burden of conducting a search might excuse compliance with a request in some cases, this is not one of them: the DOJ has not made the "substantial" evidentiary showing that FOIA requires to avoid compliance with a clear request. The Court should order the DOJ to comply with the First Request.

**1.    Volume and manner of search are irrelevant to whether a request "reasonably describes" the records sought.**

An agency's obligation to "search" for requested records that have been "reasonably describe[d]" is a statutory mandate, not an optional courtesy. *See* 5 U.S.C. § 552(a)(3)(A). "[T]he linchpin inquiry is whether the agency is able to determine 'precisely what records are being requested.'" *Yeager v. DEA*, 678 F.2d 315, 326 (D.C. Cir. 1982) (quoting FOIA legislative history) (emphasis added). When a requester has described *what* it seeks, the "*number* of records requested" is "irrelevant" to the question of whether the agency must comply with the request. *Yagman v. Pompeo*, 868 F.3d 1075, 1081 n.6 (quoting *Yeager*, 678 F.2d at 326).

Indeed, the FOIA "puts no restrictions on the quantity of records that may be sought" and instead "explicitly contemplates unusually large requests" by giving "agencies additional time to search for a voluminous amount of separate and distinct records which are demanded in a single request." *Id.* Courts accordingly will not let agencies avoid compliance based on the "sheer volume of records requested," or the number of places agencies must search. *Tereshchuk v. Bureau of Prisons*, 67 F. Supp. 3d 441, 454–55 (D.D.C. 2014); *Shapiro v. CIA*, 170 F. Supp. 3d 147, 155 (D.D.C. 2016) ("FOIA's reasonable-description requirement does not doom requests that precisely describe the records sought, even if compliance might overwhelm an agency's response team.").

The DOJ's own declaration establishes that this standard is met. The First Request asks a single DOJ component to disclose a specific record (and one that appears to follow a standard format under a "Notice to Close File" heading). Buchko Decl. ¶¶ 8, 47; DOJ Ex. 1. The DOJ acknowledges that it knows exactly *what* records to look for (the specific, well-known memos), *how* to look for them (in boxes), and *where* they are probably located (either in the DOJ's own records storage or at the National Archives and Records Administration). *See* Buchko Decl. ¶ 42 & n.3. It has demonstrated as much, of course, by completing the search for memos responsive to the Second Request, which is substantively

the same as the First Request. *See id.* ¶ 44. Nonetheless, the DOJ argues that completing the search for memos responsive to the First Request will take more work than compliance with the Second Request did because it is a manual rather than electronic search, and asks to be relieved of its obligation on that basis. *See* Mot. at 21–22.[9]

That argument fails as a matter of law. A manual search does not defeat FOIA's search requirement; manual searches are how the statute was complied with for the majority of FOIA's history. And because the volume and difficulty of search are "irrelevant" to the "reasonably describes" inquiry, *see Yagman*, 868 F.3d at 1081 n.6, the Court should reject the DOJ's argument on this ground alone.

> **2.    Even under the DOJ's burden framework, its showing falls far short of what FOIA requires.**

In the limited circumstances where courts allow an agency to resist searching for a request based on burden, they require the agency to make a "substantial" showing "with reasonably specific detail" the scope of the burden and demand on agency resources. *See Shapiro*, 170 F. Supp. 3d at 155–56; *see also Nation Mag. v. U.S. Customs Serv.*, 71 F.3d 885, 892 (D.C. Cir. 1995) (agency asserting burden must provide a sufficiently concrete showing of the time, expense, personnel, and methods a search would require).

The DOJ does not come close to satisfying that test. It asserts that there are 1,773 investigation files that "may contain" responsive memoranda, Buchko Decl. ¶¶ 39–40, and that searching them "could" require reviewing "transfer memoranda," retrieving file boxes from storage or the National Archives and Records Administration, which it *may* then need to "hand search." *Id.* ¶ 42 & n.3. Its *hunch* is that the number of boxes might be as varied as in the "hundreds," or in the "thousands." *Id.* ¶ 42. That showing is pure guesswork. Nowhere does the DOJ estimate employee hours, staffing needs, cost or time to complete, and it fails to offer any other quantifiable measure or opera-

---

[9] The agency's logic would hold that it would not have been burdensome had CIR divided its First Request into requests seeking only a few years' worth of memos at a time. But the process to comply with such requests would not be any different from, or more or less burdensome than, the steps required to comply with the First Request as CIR submitted it. In fact, it is presumably far more efficient to proceed as CIR has requested.

tional impact. *See* Buchko Decl. ¶¶ 40–44. The DOJ's bare assertion that compliance "would significantly interfere with the DOJ's operations," Mot. at 22, is unsupported by any evidence at all, as the request is in line with many other kinds of FOIA requests that agencies routinely fulfill.

Courts have rejected materially identical showings to the DOJ's. In *Pinson v. U.S. Department of Justice*, the DOJ likewise argued that a manual search was unreasonably burdensome but the court denied summary judgment because, as here, the DOJ had provided no information about how many hours the search would take. *See* 80 F. Supp. 3d 211, 216–17 (D.D.C. 2015). Similarly, in *Public Citizen v. Department of Education*, the agency asserted that searching roughly 25,000 paper files would be "costly and take many hours" and require either transporting records from Texas to California or employees in the other direction. *See* 292 F. Supp. 2d 1, 6 (D.D.C. 2003). The court found the agency's showing insufficient, emphasizing—as is the case here—that the search was "certain to turn up responsive documents." *Id.* And in *Tereshchuk*, the Bureau of Prisons showed that compliance with the FOIA request "implicate[d] 214,456" hardcopy records requiring redaction, but the court still rejected the burden argument because the agency failed to explain the extent of the burden or whether it was "unusual" noting that FOIA requests are "frequently" time-consuming and "it is not unusual" to "last over a year." *See* 67 F. Supp. 3d at 455–56. The DOJ's showing here similarly falls far short of the "substantial" demonstration required.

This case is also far afield from those the DOJ cites. *See* Mot. at 20. The cases it relies on for the notion that some requests are too burdensome to require compliance, *id.*, involve broadly phrased requests where the agency had little idea where to search or where compliance involved searches of potentially hundreds of offices or thousands of employee-hours to complete. *See Yagman*, 868 F.3d at 1081–82 (request failed to identify relevant parties, *types of documents*, or *any* meaningful temporal limits, requiring "quite a bit of guesswork"); *Nat'l Sec. Counselors v. CIA*, 969 F.3d 406, 410 (D.C. Cir. 2020) (sweeping request for records possessed by entire CIA made it "difficult to determine where responsive information would likely be located"); *Nation Mag.*, 71 F.3d at 891 (request for all records "pertaining to" H. Ross Perot, an individual requiring a search through 23 years of *unindexed* files); *Am. Fed'n of Gov't Emps., Local 2782 v. U.S. Dep't of Com.*, 907 F.2d 203, 208 (D.C. Cir. 1990) (compliance required searching over 350 offices' filing systems for every related

administrative file, and *not a discrete record type*); *Power the Future v. White House Council on En-vtl. Quality*, No. 24-1942 (RC), 2025 WL 2206947, at \*4–5 (D.D.C. Aug. 4, 2025) (all emails sent to and from one official, with no subject-matter limitation, requiring 21,870 hours if every FOIA specialist worked on the request).

In direct contrast to the facts of those cases, the First Request asks a *single* component to disclose *one*, discrete, standardized type of document. The DOJ knows what records are sought, knows that they almost certainly exist, and knows generally where they are kept, how to locate the boxes containing them, and how to search them. Buchko Decl. ¶ 42 & n.3. In other words, the DOJ has simply described a sound search plan, not a basis to avoid compliance. The Court should accordingly reject the DOJ's argument and order the DOJ to search for and disclose all Closing Memos responsive to the First Request.

**B.    The DOJ has failed to meet its burden to conduct a segregability finding as FOIA requires.**

Under the FOIA, "any reasonably segregable portion of a record shall be provided . . . after deletion of the portions which are exempt[.]"5 U.S.C. § 552(b). Thus, an "agency cannot justify withholding an entire document simply by showing that it contains *some* exempt material." *Willamette Industries v. United States*, 689 F.2d 865, 867 (9th Cir. 1982) (affirming district court order requiring disclosure of IRS records after redaction of material covered by Exemption 3) (emphasis added). Instead, agencies must "establish that all reasonably segregable portions of a document have been segregated and disclosed." *Hamdan v. U.S. Dep't of Justice*, 797 F.3d 759, 779 (9th Cir. 2015) (agency failed to demonstrate segregability of material covered by Exemptions 3 and 6). Further, "[i]t is reversible error for the district court to simply approve the withholding of an entire document without entering a finding on segregability, or the lack thereof, with respect to that document." *Id.*; *see also, e.g.*, *Transgender Law Ctr. v. Immigration & Customs Enf't*, 46 F.4th 771, 785 (9th Cir. 2022) (same). As discussed more below, the DOJ incorrectly claims Exemption 3, 5, 6, 7 apply to the memos in a way that justify withholding in full. Here, at least hundreds if not thousands of pages are at issue[10] and still the DOJ suggests, without any discussion, that not even a single sentence of a single page can be

---

[10] The memos responsive to the Second Request comprise 342 pages. DOJ Attachment A.

disclosed to CIR. The declaration offers no explanation for why the DOJ failed to segregate any of the information in the possibly thousands of pages of records. That is not how segregability works in the Ninth Circuit: The burden is on the agency, and the DOJ has not carried it here. *Compare Hamdan*, 797 F.3d at 781 (agency failed to provide "any detail about whether or not [it] considered releasing reasonably segregable information"); *with* Buchko Decl. ¶¶ 70–73 (failing to address segregability with respect to Exemption 3 assertion); *id.* ¶¶ 74–91 (same as to Exemptions 6 & 7(C)); *id.* ¶¶ 92–94 (Exemption 7(D)); *id.* ¶¶ 95–99 (Exemption 7(E)); *id.* ¶¶ 100–101 (Exemption 7(F)).

Further, the DOJ's argument regarding the segregability of alleged Exemption 5 material is incorrect. CIR acknowledges that when the attorney work-product doctrine applies to a document, in its entirety, the segregability requirement does not apply. *See, e.g.*, *Pac. Fisheries, Inc. v. United States*, 539 F.3d 1143, 1148 (9th Cir. 2008). But the work-product privilege does not apply in the first instance. *See infra*. Moreover, the Ninth Circuit has more recently held that "where only *portions* of the documents are covered by the [work-product] privilege, the non-exempt parts may be appropriately segregated and disclosed." *See ACLU of N. Calif.*, 880 F.3d at 488. As discussed below, the Closing Memos are not work-product materials at all because they were not created in anticipation of litigation. But even if some portions of them implicate the interests served by the doctrine, the memos—which "follow the same fundamental format" as all Closing Memos, *see* Buchko Decl. ¶ 47—demonstrate that the memos certainly contain standalone recitations of factual information that are not intertwined with any legal analysis. *See, e.g.*, CIR Ex. 1 at 2–11 (factual background); *id.* at 15–16 (legal analysis). And the DOJ has not demonstrated that any factual material in the withheld memos is necessarily and inextricably intertwined with legal analysis. *See ACLU of N. Calif.*, 880 F.3d at 488. The Court should therefore deny the DOJ's motion.

**C.    The DOJ has failed to carry its burden to withhold the Closing Memos under Exemption 5.**

The DOJ argues that all Closing Memos may be withheld in full because they allegedly constitute attorney work product that falls under Exemption 5. *See* Mot. at 7–11. That argument is legally and factually flawed. The Closing Memos do not constitute attorney work product because they were not prepared in anticipation of litigation, and in any event, the DOJ has failed to carry its burden to

demonstrate—with any specificity—that disclosure would foreseeably harm the interest the work-product doctrine protects.

**1.  The Closing Memos are not attorney work product because they were not prepared in anticipation of litigation.**

"To qualify for work-product protection, documents must: (1) be prepared in anticipation of litigation or for trial and (2) be prepared by or for another party or by or for that other party's representative." *ACLU of N. Calif. v. U.S. Dep't of Justice*, 880 F.3d 473, 484 (9th Cir. 2018). The doctrine's "core purpose" is "to encourage effective legal representation *within the framework of the adversary system* by removing counsel's fears that his thoughts and information will be invaded by his adversary." *Id.* at 486 (emphasis added). Materials that "serv[e] no cognizable adversarial function," "generally would not constitute work product." *Id.* As the D.C. Circuit has explained, the doctrine's purpose "is not to protect any interest of the attorney, who is no more entitled to privacy or protection than any other person, but to protect the adversary trial process itself"—that is to prevent "prob[ing] each other's thoughts and plans concerning the case." *Coastal States Gas Corp. v. U.S. Dep't of Energy*, 617 F.2d 854, 864 (D.C. Cir. 1980).

Applying this "uniformly" held rule—a "significant limitation of the doctrine"—means that documents that are not "prepared in contemplation of litigation" do not qualify for its protection. *Id.* Courts thus require that agencies show, with "specificity and in detail," that the doctrine applies. *Senate of Puerto Rico v. U.S. Dep't of Justice*, 823 F.2d 574, 585 (D.C. Cir. 1987). For instance, Courts require the agency to "(1) provide a description of the nature of and contents of the withheld document, (2) identify the document's author or origin, (3) note the circumstances that surround the document's creation, and (4) provide some indication of the type of litigation for which the document's use is at least foreseeable." *Ellis v. U.S. Dep't of Justice*, 110 F. Supp. 3d 99, 108 (D.D.C. 2015). The DOJ has not made that showing, and so its motion should be denied, and CIR's cross-motion should be granted.

The entirety of the DOJ's attorney work-product claim rests on a generic assertion by the acting chief of the CRT's FOIA branch that the Closing Memos contain "the thoughts and impressions" of prosecutors regarding whether the government could carry its burden if charges were pursued. Buchko Decl. ¶ 54. From this he concludes, improperly and without foundation (*see infra* § III(E)), that "these

records were prepared in reasonable anticipation of litigation." *Id.* But neither Buchko's declaration nor the DOJ's motion addresses the key, undisputed fact that contradicts Buchko's conclusion: the Closing Memos are the final determination of the agency to end the case, not work product created in connection with an ongoing case. Indeed, this is likely why Buchko ignored the plain fact that all the documents, which follow the "same fundamental format," bear the title "Notice to Close File," because the memos were all prepared *after* it was determined that no charges would be filed. *See* CIR Exs. 1– 4; Buchko Decl. ¶ 47. Under these circumstances, the Closing Memos cannot be characterized as having been prepared "in anticipation of litigation" and so cannot constitute attorney work product.

The DOJ's own declaration undercuts its position to the contrary. It asserts that "litigation is anticipated when the Government is investigating specific wrongdoing in an attempt to gather evidence and build a case against a suspected wrongdoer." Buchko Decl. ¶ 51. That makes sense—but the Closing Memos, by definition, are *not* documents created under those circumstances. They are not created to "gather evidence" nor "build a case" and certainly not created during an *ongoing* investigation. *See id.* Indeed, they are just the opposite. The Closing Memos are created *after* the investigation is over, after the evidence has been obtained and assessed, and after the agency has decided not to prosecute. *See* CIR Exs. 1–4.

The DOJ's argument that the Closing Memos are work product simply because they apply law to facts, *see* Mot. at 9, is foreclosed by precedent. Courts have repeatedly rejected this argument where, as here, the analysis was not written in anticipation of litigation and, in particular, when the documents were created *after* the agency decided not to pursue charges. *See, e.g.*, *Coastal States*, 617 F.2d at 866 (describing material reflecting "a detailed discussion of facts and applicability of [the law] to a specific case" as insufficient to establish attorney-work product protection); *Dow Jones & Co. v. U.S. Dep't of Just.*, 724 F. Supp. 985, 989 (D.D.C. 1989), *aff'd by* 917 F.2d 571 (D.C. Cir. 1990) (no work-product protection for letter "recit[ing] facts, and opinions about those facts, that the attorneys developed during the course of investigation" where the letter was prepared *after* DOJ decided not to prosecute); *Canning v. U.S. Dep't of the Treasury*, No. 94-2704, 1998 U.S. Dist. LEXIS 24232 at *11

(D.D.C. May 7, 1998) (Exemption 5 inapplicable to prosecutor's letter detailing "reasons for declination of prosecution" that was "written after the conclusion of the investigation and after the decision to forgo litigation was made").

*Senate of Puerto Rico* is directly instructive on this point. There, the CRT, FBI, and other agencies investigated the killing of two activists by local police—precisely the same type of alleged crimes at issue in the Closing Memos. 823 F.2d at 577–78. The investigations closed in April 1980 without the DOJ filing any charges. *Id.* at 578. While a FOIA request from a Puerto Rican Senate committee to the DOJ was pending, and three years after closing its investigation, the DOJ in August 1983 reopened the matter due to new evidence and ultimately obtained grand jury indictments against officers involved in the killing. *Id.* The DOJ withheld from the Senate several memoranda created after the April 1980 closure of the investigation, claiming attorney work-product protection under Exemption 5. *See id.* at 584. Reversing the district court, the D.C. Circuit Court of Appeals held that the DOJ had failed to demonstrate the "essential element" of its exemption claim—that the material at issue was prepared in anticipation of litigation. Even though the memos related to a criminal proceeding that was soon reopened and prosecuted, the court concluded it was "reluctant to credit a claim that documents generated while there was no active investigation underway were prepared 'in anticipation of litigation.'" *Id.* at 586.

There is even less genuine confusion about the nature of the records here, where the DOJ has not demonstrated that any of the closed investigations were ever reopened and prosecuted, and so the same conclusion must follow. The Closing Memos reflect the decision *not* to pursue criminal charges and the DOJ has not demonstrated that "there was even the dimmest expectation of litigation *when these documents were drafted*." *Id.* (quoting *Coastal States*, 617 F.2d at 865) (emphasis in original).

The DOJ argues nonetheless that a record's identification of potentially "specific claims" that "make litigation possible" is enough to trigger the work-product doctrine. *See* Mot. at 9. But none of the cases the DOJ cites for that proposition holds it, and none involves circumstances or records like the Closing Memos. *See A. Michael's Piano v. FTC*, 18 F.3d 138, 142, 146 (2d Cir. 1994) (memoranda were prepared before agency determined it would not pursue charges); *Kishore v. U.S. Dep't of Justice*, 575 F. Supp. 2d 243, 259 (D.D.C. 2008) (records concerned "trial preparation and strategy" for a filed

criminal case); *Gavin v. SEC*, No. 04-4522 PAMJSM, 2007 WL 2454156, at *9 (D. Minn. Aug. 23, 2007) ("SEC attorneys prepared the documents in question in the course of active investigations"); *Heggestad v. U.S. Dep't of Justice*, 182 F. Supp. 2d 1, 4 (D.D.C. 2000) (records concerned "decision-making process" for prosecution of case actually filed).

Here by contrast, the Closing Memos were created *after* the prosecutor declined to pursue charges. Since there would be no prosecution and has been no prosecution, release of the memos would not allow any "adversary" to obtain counsel's "thoughts and information" about any case. *See ACLU*, 880 F.3d at 484. Allowing the DOJ to withhold the memos on this basis would therefore fail to "serve the core purpose of the" work-product doctrine, *see id.*, while simultaneously frustrating the "overwhelming thrust of FOIA toward complete disclosure," *Senate of Puerto Rico*, 823 F.2d at 585. The DOJ has thus not demonstrated—and cannot demonstrate—that the Closing Memos were drafted in anticipation of litigation. Failure to establish that "essential element" is fatal to its Exemption 5 claim. The Court should accordingly reject the DOJ's Exemption 5 assertion and order the Closing Memos to be disclosed.

**2. Even if Exemption 5 applies, the DOJ has not demonstrated that reasonably foreseeable harm would arise from their disclosure.**

Under the FOIA Improvement Act of 2016, an agency must disclose requested public records, *even if an exemption applies*, unless it can demonstrate that it is reasonably foreseeable "that disclosure would harm an interest protected by an exemption . . . or disclosure is prohibited by law." 5 U.S.C. § 552(a)(8)(A); *Ctr. for Investigative Reporting v. U.S. Dep't of Labor,* 424 F. Supp. 3d 771, 780 (N.D. Cal. 2019) ("[E]ven if information falls within the scope of a discretionary exemption, it cannot be withheld from the public unless the agency also shows that disclosure will harm the interest protected by that exemption."). This requirement "is a countermeasure against excessive withholding." *Human Rights Def. Ctr. v. U.S. Park Police*, 126 F.4th 708, 717 (D.C. Cir. 2025). Congress adopted it because agencies' reliance on discretionary exemptions was "growing and troubling," resulting in agencies "taking advantage of" the exemptions to withhold "large swaths of Government information, even though no harm would result from disclosure"— a concern the Senate Judiciary Committee singled out with respect to Exemption 5 in particular. S. Rep. No. 4, 114th Cong., 1st Sess. 2 (2015) at 3.

So, to justify withholding records to which Exemption 5 applies, the DOJ must "articulate both the nature of the harm from release and the link between the specified harm and specific information contained in the material withheld." *Reporters Comm. for Freedom of the Press v. FBI*, 3 F.4th 350, 369 (D.C. Cir. 2021). That requires "a focused and concrete demonstration of why disclosure of the particular type of material at issue will, in the specific context of the agency action at issue, actually impede" the interests protected by a FOIA exemption. *Leopold v. U.S. Dep't of Justice*, 94 F.4th 33, 37 (D.C. Cir. 2024).

The DOJ fails to make this showing. It offers only a vague, generalized concern—in essence, that its lawyers might be reluctant to write candid Closing Memos if they know that the public could eventually see the reasons the CRT declined to bring charges in other, Section 242 cases. *See* Buchko Decl. ¶ 61. Specifically, the Buchko Declaration asserts that (1) a "zone of privacy" "is necessary to protect" prosecutors' discussions about prosecution, (2) disclosure "will hinder CRT's future prose-cutions" in some unexplained way, (3) knowledge that memos "may be publicly disclosed will chill prosecutors" from "expressing and memorializing candid thoughts"; and (4) disclosure could "deprive prosecutors of the privacy necessary to cull relevant from irrelevant facts, analyze and decide between different legal theories and arguments, assess the strengths and weaknesses of the case, and effectively strategize." *Id.* These bare conclusions, unsupported by any foundation, fall far short of satisfying the DOJ's burden.

The DOJ does not tie its concerns to the interest the work-product doctrine actually protects. To carry its burden on this point, the DOJ must "concretely explain how disclosure [of the Closing Memos] 'would'—not 'could'—adversely impair" the interest that the work-product privilege pro-tects. *Reporters Committee*, 3 F.4th at 369–70. That interest is fairness "within the framework of the adversary system," particularly by preventing a party from obtaining opposing counsel's thoughts about the case. *See ACLU-NC*, 880 F.3d at 486.

The DOJ never engages with this interest, let alone shows how disclosure of the Closing Memos would undermine adversarial fairness. *See* Mot. at 8–10; Buchko Decl. ¶¶ 50–62. It argues only that prosecutors might be less forthcoming in their internal discussions generally. *See, e.g.*, Mot. at 10. But the work-product doctrine is not meant "to protect any interest of the attorney, who is no

more entitled to privacy or protection than any other person, but to protect the adversary trial process itself." *Coastal States*, 617 F.2d at 864. Also, given the DOJ's history of disclosing various Closing Memos, *see* CIR Exs. 1–4, 7–10, memo authors are already on notice that the records may be publicly released. And, it bears repeating, the Closing Memos are prepared only once it is apparent and decided that *there will be no case*, *see id.*, so there is no adversarial process for the doctrine to protect.

Further, the DOJ does not link its concerns to the content or the context of the Closing Memos. *See e.g.*, *Reporters Committee*, 3 F.4th at 370 ("[W]hat is needed is a focused and concrete demonstration of why disclosure of the particular type of material at issue will, in the specific context . . . cause the harm . . . ."Naturally, this inquiry is context specific."). These memos have a public purpose and are often released to the public, undermining the DOJ's assertions that disclosure would chill prosecutors from writing their thoughts. This is exactly "the kind of boilerplate, unparticularized, and hypothesized assertion of harm" the FOIA Improvement Act was designed to eliminate. *See, e.g.*, *Reporters Committee*, 3 F.4th at 371 (rejecting assertions of harms because the court was "hard pressed to imagine how these assertions differ in any material way from the routine assertions of deliberative process privilege that pre-dated the FOIA Improvement Act"). When considering the context surrounding the Closing Memos, it is apparent that no harm would arise from their disclosure.

Finally, and perhaps most importantly, the DOJ's own practice of disclosing Closing Memos defeats its harm claim. Most tellingly, the DOJ has already released 127 memos that are functionally indistinguishable from the Closing Memos requested here. *See* Cate Decl. ¶ 4; CIR Exs. 1–4. Even accepting the DOJ's generic chilling effect theory at face value, the DOJ does not explain how disclosing the requested Closing Memos would cause harm that has not arisen from disclosure of the 127 Emmett Till Act memos the DOJ publishes on its own website, that it reveals in press releases or other reports, or that it has disclosed in response to other FOIA requests. *See* CIR Exs. 1–4, 7–10. The DOJ addresses these prior disclosures only to argue that they do not constitute a waiver as to the other memos. *See* Mot. at 11 (citing Buchko Decl. ¶ 68). That argument falls short: waiver is irrelevant to whether disclosure would result in foreseeable harm. Nor has the DOJ identified any harm arising from those disclosures, and it offers no reason why disclosure of materially similar memos would suddenly cause the harm the work-product doctrine is designed to protect. If disclosure of the Emmett

Till Act memos has not caused any harm, then it is not reasonably foreseeable that disclosure of the other requested Closing Memos would, either.

The FOIA Improvement Act was designed to prevent agencies from relying on "wholly generalized and conclusory" assertions of harm that merely "mouth[] the generic rationale for the" claimed exemption. *Reporters Committee*, 3 F.4th at 370. That is exactly what the DOJ has done here. Because it has failed to carry its burden to demonstrate foreseeable harm from disclosure of the Closing Memos, the Court should deny the DOJ's motion, grant CIR's cross-motion, and order the DOJ to disclose the Closing Memos responsive to both of CIR's requests.

**D.    The DOJ has failed to meet its burden to demonstrate that any of the other cited exemptions justify nondisclosure.**

**1.    Exemption 3 does not apply to any of the Closing Memos.**

Exemption 3 allows withholding of records "specifically exempted from disclosure by statute." 5 U.S.C. § 552(b)(3). The DOJ asserts that some Closing Memos contain "information about several minors who witnessed the crimes being investigated or related crimes, including their names and relationships to other witnesses or victims" and that such information is required to be confidential under the Child Victims' and Child Witnesses' Rights Act ("CVCWRA") codified at 18 U.S.C. § 3509(d). Buchko Decl. ¶ 72.[11] Therefore, it argues, the DOJ must withhold those Closing Memos under Exemption 3 in full. Mot. at 12. The DOJ's exemption claim is plainly without merit, because the CVCWRA does not apply to information not implicated in a federal criminal court proceeding, and the Closing Memos definitionally do not implicate any criminal court proceedings.

When interpreting a statute, the "proper starting point lies in a careful examination of the ordinary meaning and structure of the law itself." *Food Mktg. Inst. v. Argus Leader Media*, 588 U.S. 427, 436 (2019). And the plain text of Section 3509(d) simply precludes its application here. That statute provides that a *limited category* of people who are acting "in connection with a criminal proceeding" must be kept confidential. *See* 18 U.S.C. § 3509(d); *see also Mid-Atl. Innocence Project v. Fed. Bureau of Investigation*, No. 23-CV-2112 (BAH), 2026 WL 775907, at *5 (D.D.C. Mar. 19,

---

[11] The DOJ's *Vaughn* index indicates that Exemption 3 has been asserted as to four of the Closing Memos. *See* DOJ Attachment A.

2026) ("This confidentiality obligation attaches only 'in connection with a criminal proceeding,' however[.]"). The phrase "criminal proceeding," however, does *not* include pre-charge investigations or, necessarily, closed investigations that do not lead to any formal charges. Instead, a "proceeding" refers to "[t]he regular and orderly progression of a lawsuit, including all acts and events between the time of commencement and the entry of judgment" and as including "[t]he business conducted by a court or other official body; a hearing." *Proceeding*, Black's Law Dictionary (9th ed. 2009). And a "criminal proceeding" is "[a] proceeding instituted to determine a person's guilt or innocence or to set a convicted person's punishment; a criminal hearing or trial." *Id.*

It is apparent, therefore, that Section 3509(d) applies only in contexts in which federal court proceedings have been initiated (*i.e.*, through the filing of charges). The rest of the language of Section 3509(d) further supports that reading, since the provision applies only to (1) people "connected with the case" or "involved in the case," (2) "employees of the court," (3) the "defendant," their employees or lawyers, and anyone the lawyer hires to help "in the proceeding," and (4) "members of the jury." 18 U.S.C. § 3509(d)(1)(B). Had Congress intended the act to impose a broader confidentiality requirement, it surely would not have applied such limited terminology to the confidentiality provisions of the statute, especially while declining, anywhere in the statute, to use words signaling that intent (*e.g.*, "investigation," "investigator," or "pre-trial").

Likewise, it is apparent from the broader framework of what is codified in Section 3509 that Congress wrote, and intended to write, the CVCWRA to protect children as they are involved only in criminal cases from initiation through sentencing. Specifically, that act (1) creates "[a]lternatives to live in-court testimony" from minors in certain criminal cases, (2) presumes children competent to testify, (3) directs certain people involved to keep certain information confidential, (4) provides procedures for "[c]losing the courtroom" when a child testifies, (5) allows for appointments of guardians *ad litem*, (6) allows courts to expedite cases involving child testimony, and (7) allows for devices to "assist[] a child in testifying." *See generally* 18 U.S.C. § 3509. Indeed, "the primary purpose of this statute is to protect children who must *testify* in court." *United States v. Jacobson*, 785 F. Supp. 563, 567 (E.D. Va. 1992). The statute is not properly invoked to shield the names of minors who are not "called to testify before a court." *Id.*; *see also Mid-Atl. Innocence Project*, 2026 WL 775907, at *6

("The text of the Child Victims Act . . . is sufficient to demonstrate that 'criminal proceedings' refers only to proceedings in federal court . . . .").

The Closing Memos do not involve any proceeding designed to determine a person's guilt, innocence, or sentence; neither do the investigations and interviews to which they refer. The investigations that may be reflected in the memos are necessarily limited to gathering information needed to determine whether to initiate such proceedings. And, of course, the Closing Memos are simply notices that *no* such proceedings will be brought at all. *See* CIR Exs. 1–4. There is accordingly no basis to apply Section 3509(d) to any information contained with the Closing Memos.

Because Section 3509(d) does not apply outside court proceedings, it cannot justify the DOJ's invocation of Exemption 3 to withhold Closing Memos.

**2.      The DOJ has failed to demonstrate that Exemptions 6-7(C) apply to the material in the Closing Memos.**

The DOJ argues that *all* of the Closing Memos contain information implicating the privacy-related provisions of Exemption 6 and Exemption 7(C). *See* Mot. at 13–17. The two exemptions are "essentially the same." *Judicial Watch, Inc. v. U.S. Dep't of Homeland Sec.*, 598 F. Supp. 2d 93, 96 n.1 (D.D.C. 2009). Exemption 6 covers "personnel and medical files and similar files,"[12] while Exemption 7(C) covers "records or information compiled for law enforcement." 5 U.S.C. §§ 552(b)(6), (b)(7)(C). But both concern the release of records that would "inva[de] *personal* privacy."  5 U.S.C. §§ 552(b)(6), (b)(7)(C) (emphasis added). And an agency's burden to justify either exemption "is an onerous one." *Lawyers' Comm. for Civil Rights v. Dep't of the Treasury*, 2008 WL 4482855, at *19 (N.D. Cal. Sept. 30, 2008).

To carry its burden, an agency must first demonstrate that "disclosure implicates a personal privacy interest that is 'nontrivial.'" *Yonemoto v. U.S. Dep't of Veterans Affairs*, 686 F.3d 681, 693 (9th Cir. 2012). A nontrivial privacy intrusion is one that would subject a person to *tangible* and "significant" embarrassment, harassment, or risk of mistreatment. *U.S. Dep't of State v. Ray*, 502 U.S.

---

[12] CIR assumes for the purposes of its cross-motion that the "similar files" requirement has been met. *Elec. Frontier Found. v. ODNI*, 639 F.3d 876, 885 (9th Cir. 2010) (assuming "without deciding" that the records were similar files).

Plf's Opp'n to Def's MSJ & Cross-MPSJ / Case No. 4:25-cv-7309-AMO

164, 176–77 (1991). If the agency fails to show that any nontrivial interests are at stake, the inquiry ends there. *Yonemoto*, 686 F.3d at 694. If there are nontrivial privacy interests implicated in disclosure, the agency must also show that those interests outweigh the public's interest in disclosure. *Id.* The DOJ has failed at every step.

First, the DOJ has not carried its burden to provide competent, nonconclusory declarations to establish that these exemptions apply whatsoever. *See, e.g.*, *Minier v. CIA*, 88 F.3d 796, 800 (9th Cir. 1996) (government bears "burden of proving the applicability of an exemption"). The DOJ's justification for the application of these exemptions is inadequate, as its declarations address this two-part test using only conclusory and boilerplate assertions regarding the supposed privacy interests of some vague categories of people, involving often highly publicized matters that have already become public and been officially acknowledged, and all cases are closed. *See Kimberlin v. U.S. Dep't of Justice*,139 F.3d 944, 949 (D.C. Cir. 1998) (prosecutor's public acknowledgment that he was subject of disciplinary proceedings "undoubtedly does diminish his interest in privacy").

Second, the DOJ has failed to demonstrate that disclosure of the Closing Memos would implicate any *nontrivial* privacy interests. *See* Buchko Decl. ¶¶ 72–90 (blanketly asserting that vague, "numerous categories of people" deserve withholding of data because "Exemption 6 [and 7] covers *all* information applying to a particular person" and that absolutely "*no* public interest" exists in disclosure) (emphasis added). Identifying a privacy interest is especially unlikely in this case because the Closing Memos involve often highly publicized cases and would likely not disclose any new information or people, but only how our government responded to it. This Court has previously dismissed such generic privacy claims. *See, e.g.*, *ACLU v. FBI*, No. C 12-03728 SI, 2013 WL 3346845, at *7 (N.D. Cal. July 1, 2013) ("the identities of many [] protestors [] were covered extensively by the news media."); *see also Am. Oversight v. GSA*, 311 F. Supp. 3d 327 (D.D.C. 2018) (rejecting GSA's privacy arguments because the names of the transition team were already known).

Third, even if the Court finds nontrivial privacy interests, the DOJ has not demonstrated that those interests clearly outweigh the public's interest in disclosure. Courts regularly find that even in cases where a privacy interest exists, disclosure is appropriate where it "would shed light on an agency's performance of its statutory duties" or "appreciably further" the public interest. *Rojas v. Fed.*

– 22 –

*Aviation Admin.*, 941 F.3d 392, 405 (9th Cir. 2019). Here, the Closing Memos are certain to achieve *both* forms of public interest: (1) they reveal how the government responded to an important civil rights case and why they decided to close it and (2) these cases are also especially important to the public interest because they involve community flashpoints where different values involving criminal justice, civil rights, race, and police accountability are all at issue, which is why the government has released many similar kinds of memos. The Buchko Declaration asserts the bald conclusion that there is no public interest in disclosing the memos—without discussing any particulars of why, how, or what is at issue. Cases that were publicly known, reported on, acknowledged and involving pressing public matters, most certainly require more than such vague and conclusory reasons. The Court should therefore reject the DOJ's Exemptions 6 and 7(C) assertions.

### 3. Exemption 7(D), (E) and (F) similarly do not justify nondisclosure.

The DOJ argues that other Exemption 7 provisions also apply to some of the memos. *See id.* at 17–18 (asserting Exemption 7(D) (identifying confidential sources);[13] *id.* at 18–19 (Exemption 7(E) (involving techniques and procedures);[14] *id.* at 19–20 (Exemption 7(F) (information expected to endanger a life).[15] Rather than  sufficiently demonstrating with the specificity required that any of these exemptions apply, the DOJ perfunctorily invokes them in a kitchen-sink effort to avoid disclosure. *See, e.g.*, *Minier*, 88 F.3d at 800 (government bears "burden of proving the applicability of an exemption"). The DOJ is unable to provide any specific facts to support these exemptions because the claims to them are spurious at best. Given the age of some of the incidents discussed in the Closing Memos, the possibility that there are any "confidential sources," "techniques and procedures" and relevant confidential information from that time is highly unlikely. Indeed, it is likely that many of the people involved in several of the incidents are deceased and that the techniques and procedures are all outdated and surpassed by new technology and protocols. Moreover, even if any of these exemptions apply, they still certainly require a more precise segregability analysis approach, as discussed above. Courts have repeatedly denounced categorical withholding according to these exemptions. *See, e.g.,*

---

[13] Asserted for three memos. *See* DOJ Attachment A (Arriaga, McNeil, and Wright memos).
[14] Asserted for nine memos. *See* DOJ Attachment A (Arriaga, Cesena, Cho, Ghaisar, Knight, McNeil, Mendiola, Rainey, and Santellana memos).
[15] Asserted for three memos. *See* DOJ Attachment A (Arriaga, Lopez, and McNeil).

*U.S. Dep't of Justice v. Landano*, 508 U.S. 165, 177–178 (1993) (declining to allow categorical exemption of documents under FOIA Exemption 7(D)).

### E.    Evidentiary Objections to Buchko Declaration

A declaration filed in support of a summary judgment motion "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4). Much of the Buchko Declaration fails to comply with these requirements. Pursuant to Local Rule 7-3(a), CIR thus asserts the following objections to the Buchko Declaration:

**Improper legal conclusion, opinion, and/or argument**. *See* Fed. R. Civ. P. 56(c)(4) (declarations must "set out *facts*") (emphasis added); Fed. R. Evid. 701–703. The Buchko Declaration consists primarily of improper legal conclusions on the applicability of the relevant legal standards. Legal argumentation has no place in affidavits. *See, e.g.*, *Pacific Fisheries*, 539 F.3d at 1148 (stating that "affidavits must not be conclusory"); *Callaway v. U.S. Dep't of Treasury*, 2009 WL 10184495, at *2 (D.C. Cir. June 2, 2009) (rejecting affidavits that "state only legal conclusions regarding segregability"). The following paragraphs consist of or substantially include such improper assertions and are thus inadmissible: Buchko Decl. ¶¶ 43 n.4, 46–51, 54–63, 68, 70–73, 75–76, 78–82, 84–86, 87–92, 94, 95, 97–101, and 102–04.

**Lack of personal knowledge, lack of foundation, and/or speculative**. *See* Fed. R. Evid. 602, 701, 702. A declarant may testify only on matters on which they have personal knowledge, *see* Fed. R. Evid. 602, and even if they are qualified as an expert, "declarations present[ing] legal conclusions without underlying factual support, . . . constitute "unsupported speculation" that is inadmissible. *See Plush Lounge Las Vegas LLC v. Hotspur Resorts Nevada Inc.*, 371 F. App'x 719, 720 (9th Cir. 2010); *see also, e.g.*, *Garris v. FBI*, 937 F.3d 1284, 1293 (9th Cir. 2019) (holding, in Privacy Act case, that district court erred in admitting declaration from FBI Assistant Special Agent in Charge who merely speculated about agency's "purpose in creating and maintaining" memo plaintiff requested); *Rosenfeld v. U.S. Dep't of Justice*, No. C07-03240 MHP, 2008 WL 3925633, at *12 (N.D. Cal. Aug. 22, 2008) (Section Chief of FBI records section failed to lay foundation for statements about search efforts in field offices outside his supervision).

Buchko asserts that he supervises the CRT branch that processes all of its FOIA and Privacy Act requests. Buchko Decl. ¶ 1. Despite the limited nature of the role he describes, Buchko makes a range of assertions about the DOJ's "purpose in creating" the Closing Memos, *see Garris*, 937 F.3d at 1293, various concerns that various people—none of whom he says he has spoken with—allegedly may have if the memos are disclosed, law-enforcement operations, and other matters far afield from facts one may gather while overseeing the processing of FOIA requests. CIR thus objects to the following material as inadmissible on these grounds: Buchko Decl. ¶¶ 53–54, 59, 61–62, 82–83, 85, 87, 89, 91, 93–94, 96–98.

## IV.   Conclusion

For the foregoing reasons, the Court should deny the DOJ's motion for summary judgment and grant CIR's motion for partial summary judgment, entering an order (1) ruling that Exemption 5 does not apply to the Closing Memos, (2) instructing the DOJ to search for and produce all nonexempt portions of Closing Memos responsive to CIR's First Request on a timeframe to be proposed by the parties, (3) instructing the DOJ to disclose all Closing Memos responsive to CIR's Second Request within 30 days of the order, with the parties to confer thereafter regarding any redactions the DOJ may apply to those materials, and (4) instructing the parties to submit a joint status report to the Court within 60 days of the order apprising the Court of whether there remains any dispute regarding the Second Request memos.

Date: July 16, 2026

LAW OFFICE OF MATTHEW S.L. CATE

*/s/ Matthew S.L. Cate*
Matthew S.L. Cate

THE CENTER FOR INVESTIGATIVE REPORTING

*/s/ D. Victoria Baranetsky*
D. Victoria Baranetsky
Brooke Henderson (*pro hac vice*)

*Counsel for Plaintiff*