CRAIG H. MISSAKIAN (CABN 125202)
United States Attorney
PAMELA T. JOHANN (CABN 145558)
Chief, Civil Division
ROMAN A. SWOOPES (CABN 274167)
Assistant United States Attorneys
60 South Market Street, Suite 1200
San Jose, California 95113
Telephone: (408) 535-5084
FAX: (408) 535-5081
Roman.Swoopes@usdoj.gov

Attorneys for Federal Defendants

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

THE CENTER FOR INVESTIGATIVE
REPORTING,

      Plaintiff,

   v.

UNITED STATES DEPARTMENT OF
JUSTICE,

      Defendant.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

No. 4:25-cv-07309-AMO

**DEFENDANTS' REPLY IN SUPPORT OF
DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT AND OPPOSITION TO
PLAINTIFF'S CROSS-MOTION FOR
SUMMARY JUDGMENT**

Hearing Date:    November 12, 2026
Time:           2:00 p.m.
Courtroom:      TBD

Judge:          Hon. Araceli Martínez-Olguín

**TABLE OF CONTENTS**

I.    INTRODUCTION ...................................................................................................1

II.   ARGUMENT ........................................................................................................1

    A.    DOJ Properly Invoked Exemption 5 and Withheld Attorney Work Product ......................1

        1.    The "Closing" Memo Label Does Not Extinguish Work Product Protection ................................................................................1

        2.    Releasing the Memoranda Would Result in Reasonably Foreseeable Harm ....................................................................................4

        3.    Publishing Other Case Closing Memoranda Does Not Preclude Exemption 5 Withholdings ................................................................7

    B.    DOJ's Segregability Analysis Was Sufficient ................................................10

    C.    Plaintiff's First Request for Twenty Years of Closing Memos Fails to Comply with the Reasonable Description Requirement ........................................10

        1.    DOJ Has Sufficiently Explained Why Searching Through 20 Years of Files Would Be Unduly Burdensome ................................................10

        2.    Case Law Supports DOJ's View that the Requested Search is Unduly Burdensome ...............................................................................12

    D.    DOJ Properly Invoked Other FOIA Exemptions ................................................13

        1.    Exemption 3 ..................................................................................13

        2.    Exemption 6 and 7(C) ....................................................................14

        3.    Exemption 7(D), 7(E), and 7(F) ....................................................14

    E.    Plaintiff's Evidentiary Objections Lack Merit ................................................15

III.  CONCLUSION ......................................................................................................15

**TABLE OF AUTHORITIES**

Page(s)

Cases

*A. Michael's Piano, Inc. v. FTC*,
  18 F.3d 138 (2d Cir. 1994) ....................................................................................................3, 4
Am. Civil Liberties Union of N. Cal. v. U.S. Dep't of Justice,
  880 F.3d 473 (9th Cir. 2018) ..................................................................................................1, 6
*Am. Small Bus. League v. DOD*,
  372 F. Supp. 3d 1018 (N.D. Cal. 2019) ......................................................................................6
Blackwell v. F.B.I.,
  646 F.3d 37 (D.C. Cir. 2011) ....................................................................................................14
*Canning v. U.S. Dep't of the Treasury*,
  No. 94-2704, 1998 U.S. Dist. LEXIS 24232 (D.D.C. May 7, 1998) ..........................................3
Coastal States Gas Corp. v. U.S. Dep't of Energy,
  617 F.2d 854 (D.C. Cir. 1980) ................................................................................................3, 6
Comm. for Freedom of the Press v. CBP,
  567 F. Supp. 3d 97 (D.D.C. 2021) ..............................................................................................6
*Corley v. DOJ*,
  998 F.3d 981 (D.C. Cir. 2021) ..................................................................................................13
Ctr. for Investigative Reporting v. U.S. Dep't of Labor,
  424 F. Supp. 3d 771 (N.D. Cal. 2019) ........................................................................................5
*Dhakal v. Fed. Bureau of Investigation*,
  No. 1:24-CV-02525 (TNM), 2026 WL 787865 (D.D.C. Mar. 20, 2026) ...................................6
Dow Jones & Co. v. U.S. Dep't of Justice,
  724 F. Supp. 985 (D.D.C. 1989) .................................................................................................3
*Garris v. FBI*,
  937 F.3d 1284 (9th Cir. 2019) ..................................................................................................15
*Gavin v. SEC*,
  No. 04-4522, 2007 WL 2454156 (D. Minn. Aug. 23, 2007) ......................................................4
Gov't Accountability Project v. U.S. Dep't of Justice,
  852 F. Supp. 2d 14 (D.D.C. 2012) ..............................................................................................4
*Heggestad v. U.S. Dep't of Justice*,
  182 F. Supp. 2d 1 (D.D.C. 2000) ................................................................................................4
*Hickman v. Taylor*,
  329 U.S. 495, 67 S.Ct. 385, 91 L.Ed. 451 (1947) ......................................................................5
Human Rights Def. Ctr. v. U.S. Park Police,
  126 F.4th 708 (D.C. Cir. 2025) ...................................................................................................5
*Kimberlin v. Dep't of Just.*,
  139 F.3d 944 (D.C. Cir. 1998) ....................................................................................................7
*Kishore v. Dep't of Justice*,
  575 F. Supp. 2d 243 (D.D.C. 2008) ............................................................................................4
*Kortlander v. Bureau of Land Mgmt.*,
  816 F. Supp. 2d 1001 (D. Mont. 2011) .....................................................................................14
*Leopold v. U.S. Dep't of Justice*,
  94 F.4th 33 (D.C. Cir. 2024) .......................................................................................................5
*Martin v. Off. of Special Couns.*,
  819 F.2d 1181 (D.C. Cir. 1987) .................................................................................................10
*Mid-Atl. Innocence Project v. FBI*,
  No. 23-CV-2112 (BAH), 2026 WL 775907 (D.D.C. Mar. 19, 2026) .......................................13
Nation Mag., Washington Bureau v. U.S. Customs Serv.,
  71 F.3d 885 (D.C. Cir. 1995) ...............................................................................................10, 12
*Nat'l Sec. Couns. v. CIA*,
  969 F.3d 406 (D.C. Cir. 2020) ..................................................................................................12

Public Citizen v. Department of Education,
    292 F. Supp. 2d 1 (D.D.C. 2003)............................................................................................12
Reporters Committee for Freedom of the Press v. FBI,
    3 F.4th 350 (D.C. Cir. 2021)................................................................................................4, 5
*Rojas v. Fed. Aviation Admin.*,
    941 F.3d 392 (9th Cir. 2019) ..................................................................................................14
Schoeffler v. United States Dep't of Agric.,
    795 F. App'x 526 (9th Cir. 2020) ...........................................................................................15
Senate of Puerto Rico v. U.S. Dep't of Justice,
    823 F.2d 574 (D.C. Cir. 1987)..................................................................................................2
*Shapiro v. CIA*,
    170 F. Supp. 3d 147 (D.D.C. 2016)........................................................................................12
*Tereshchuk v. Bureau of Prisons*,
    67 F. Supp. 3d 441 (D.D.C. 2014)..........................................................................................12
*Weirich v. Bd. of Governors of the Fed. Rsrv. Sys.*,
    No. CV-10-5031-EFS, 2010 WL 4717211 (E.D. Wash. Nov. 15, 2010) ...............................12
*Yagman v. Pompeo*,
    868 F.3d 1075 (9th Cir. 2017) ................................................................................................13

Statutes

5 U.S.C. § 552..................................................................................................................................13
18 U.S.C. § 242................................................................................................................................11
18 U.S.C. § 3509..............................................................................................................................13

## I.    INTRODUCTION

Plaintiff's argument that the DOJ improperly withheld internal prosecution memos as attorney work product rests on two faulty premises: (1) the memos conclusively ended investigations (and thus were not prepared in anticipation of litigation); and (2) DOJ's release of such memos in specific, highly publicized cases negates the need for work product protection in all cases.  Plaintiff is wrong on both points.  Notwithstanding their label, the "closing" memos at issue were merely recommendations by line prosecutors to close cases; they were made while investigations were still ongoing "in anticipation of litigation."  And Plaintiff cites no authority for the proposition that declining to assert work product protection in one case destroys work product protection in unrelated cases.  Thus, the Court should rule that DOJ properly applied FOIA Exemption 5 to withhold the closing memos sought by Plaintiff.

If the Court determines that work product protection applies to all closing memos, it need not decide the other issues in this case.  If it does reach these issues, the Court should conclude that Plaintiff's first FOIA request was overbroad and that searching for an additional twenty years' worth of closing memos from 1998 to 2018 would pose an undue burden.  The Court should also conclude that DOJ properly applied additional exemptions to the records reviewed from 2018 to 2024.

## II.    ARGUMENT

### A.    DOJ Properly Invoked Exemption 5 and Withheld Attorney Work Product

Plaintiff does not dispute that FOIA Exemption 5 allows the withholding of attorney work product, which includes "mental impressions, conclusions, opinions, or legal theories of a party's attorney" that were "prepared in anticipation of litigation or for trial." *Am. Civil Liberties Union of N. Cal. v. U.S. Dep't of Justice*, 880 F.3d 473, 483 (9th Cir. 2018) (quoting Fed. R. Civ. P. 26(b)(3)).  *See* ECF No. 31 ("Opp.") at 13.  Nor does Plaintiff dispute that the closing memos contain attorneys' mental impressions and opinions.  Plaintiff's only arguments against applying Exemption 5 to the memos are (1) the memos "were not prepared in anticipation of litigation" because they are "closing" memos, and (2) DOJ has not shown "that disclosure would foreseeably harm the interest the work product doctrine protects."  Opp. at 12-13.  As explained below, neither of these arguments withstands scrutiny.

#### 1.    The "Closing" Memo Label Does Not Extinguish Work Product Protection

Plaintiff's first argument for denying work product protection for the memos rests on the erroneous

factual assumption that "the Closing Memos are the final determination of the agency to end the case, not work product created in connection with an ongoing case." Opp. at 14. Plaintiff cites two sources in support of this assumption: (1) the memos' title, *i.e.*, "Notice to Close File," and (2) paragraph 47 of the 1st Buchko Declaration. That paragraph states, in its entirety:

> 47. The records at issue in this case – long form closure memoranda – are covered by the attorney work product privilege and thus exempt from disclosure under Exemption 5. Because the memoranda all follow the same fundamental format, contain the same types of information, and serve the same purpose, CRT concluded that the justifications for withholding the memoranda are common to all of them and thus, has addressed them categorically here.

ECF No. 28-2 ¶ 47. By focusing on the memo's titles and a paragraph from the Buchko declaration that says nothing about when or how they were created, Plaintiff baselessly concludes that "the memos were all prepared *after* it was determined that no charges would be filed." Opp. at 14.

In fact, the memos in question are "memoranda prepared by Civil Rights Division prosecutors *recommending* that prosecution be declined," not summaries prepared after a final decision not to prosecute. ECF No. 28-2 ¶ 49 (emphasis added). Mr. Buchko clarifies that long-form memoranda *precede* CRT's final decision to close a case and that "the prosecutors" who draft the memos "do not have the final say in the disposition of a case." Second Declaration of John Buchko ("Buchko 2d Decl.") ¶ 6. Instead, the memos, which are created during criminal investigations:

> reflect prosecutors' analysis and mental impressions about what facts were relevant to the *potential charges* in the case, the relative strengths and/or weaknesses of evidence necessary to prove those facts and the existence of any contradictory facts or evidence, the availability and reliability of witnesses, and whether the facts that could be proven were sufficient to carry the government's burden of establishing guilt beyond a reasonable doubt.

ECF No. 28-2 ¶ 54 (emphasis added). Plaintiff provides no competent evidence to refute this description.

The fact that line prosecutors created the closing memos here before each investigation was closed distinguishes this case from all of Plaintiff's cited authorities that denied work product protection. Plaintiff asserts that *Senate of Puerto Rico* is "directly instructive," but Plaintiff admits that the case involved "memoranda created *after* the April 1980 closure of the investigation," not in anticipation of litigation. Opp. at 15 (emphasis added). *See Senate of Puerto Rico v. U.S. Dep't of Justice*, 823 F.2d 574, 586 (D.C. Cir. 1987) ("absent *any* additional support, we are reluctant to credit a claim that documents generated

while there was no active investigation underway were prepared 'in anticipation of litigation.'").  Even in that case, the D.C. Circuit took pains to clarify that "[w]e do not mean to suggest that documents prepared while no active investigations were underway are necessarily unprotected by the work-product doctrine." *Id.* at 586 n.42.

Plaintiff's other citations are similarly distinguishable.  In *Dow Jones*, the court rejected work product protection for a document when "DOJ virtually admit[ted] that the document was not prepared in contemplation of litigation." *Dow Jones & Co. v. U.S. Dep't of Justice*, 724 F. Supp. 985 (D.D.C. 1989).  That is not the case here.  In *Canning*, the court found no work product protection for a document that "appear[ed] to be a letter written after the conclusion of the investigation and after the decision to forego litigation was made." *Canning v. U.S. Dep't of the Treasury*, No. 94-2704, 1998 U.S. Dist. LEXIS 24232, at *11 (D.D.C. May 7, 1998).  On the other hand, the court concluded that several other memos "all clearly constitute attorney work product." *Id.* at *11-12.  Finally, *Coastal States* did not involve an investigative memo at all; rather, it involved "memoranda from regional counsel to auditors working in DOE's field offices, issued in response to requests for interpretations of regulations." *Coastal States Gas Corp. v. U.S. Dep't of Energy*, 617 F.2d 854, 858 (D.C. Cir. 1980).  The court concluded that these were not prepared in anticipation of litigation because they supported "audits," which were not "investigations" because "no charge had been made nor was a violation necessarily suspected." *Id.*  Plaintiff does not cite a single case in which a memo containing a lawyer's mental impressions was created before the conclusion of an investigation and not protected by work product.

At the same time, Plaintiff fails to distinguish this case from others in which courts ruled that work product protection shielded memos containing attorney recommendations not to prosecute from disclosure.  For example, in *A. Michael's Piano, Inc.*, the Second Circuit affirmed a ruling that "exemption 5 still applies, even if a staff attorney is considering or recommending closing an investigation." *A. Michael's Piano, Inc. v. FTC*, 18 F.3d 138, 146 (2d Cir. 1994).  The court explained:

> Here the FTC investigation was not closed at the time the documents at issue were created, and the fact that staff members may have thought that litigation might not ever occur does not take the documents out of the scope of those materials exempt because they were created in anticipation of litigation. Instead, the reports and recommended action with respect to the status of an investigation submitted before any final decision is made as to the course an investigation qualify as documents prepared in anticipation of litigation.

*Id.* at 146-47.

Courts regularly apply work product protection to memos recommending an end to an investigation. In *Gavin*, the district court approved the SEC's reliance on the work product doctrine to withhold "case opening reports" and "case closing reports," among other types of documents. *Gavin v. SEC*, No. 04-4522, 2007 WL 2454156, at *8 (D. Minn. Aug. 23, 2007). The court noted that much like the closing memos here, "[t]he case closing reports are internal reports that contain recommendations to close SEC investigations. The reports include legal analyses, mental impressions, and legal conclusions regarding the investigation." *Id.* at *9 (internal citation omitted). Because "SEC attorneys prepared these documents in the course of active investigations focusing on specific actions and possible securities law violations," the documents "were prepared in anticipation of litigation and qualify as attorney work product." *Id.*; *see also Kishore v. Dep't of Justice*, 575 F. Supp. 2d 243 (D.D.C. 2008) (concluding that work product protection applied to "information that 'set forth and identified [the assistant United States attorney's] reasons and rationale for the immediate declination of prosecution by the federal government.'"); *Heggestad v. U.S. Dep't of Justice*, 182 F. Supp. 2d 1, 10 (D.D.C. 2000) ("Plaintiff's argument that these prosecution memoranda are not subject to the deliberative process and attorney work-product privileges because they recommend declining prosecution is unsupported by fact or law."); *Gov't Accountability Project v. U.S. Dep't of Justice*, 852 F. Supp. 2d 14, 26 (D.D.C. 2012) (applying work product protection to documents that "relate to whether the DOJ should pursue prosecution of the case").

The authorities cited above compel a conclusion that the closing memos, which prosecutors created as part of open investigations, and contain prosecutors' mental impressions and recommendations, were created "in anticipation of litigation." Accordingly, they constitute privileged attorney work product.

### 2.    Releasing the Memoranda Would Result in Reasonably Foreseeable Harm

The parties agree that an agency can withhold materials under Exemption 5 only if it "reasonably foresees that disclosure would harm an interest protected by [this] exemption," 5 U.S.C. § 552(a)(8)(A)(i)(I), but in arguing that DOJ has not shown harm, Plaintiff invents a new and heightened harm standard that is totally divorced from the context of attorney work product analysis. Specifically, Plaintiff relies on *Reporters Committee for Freedom of the Press v. FBI*, 3 F.4th 350 (D.C. Cir. 2021) to argue that DOJ must "concretely explain how disclosure [of the Closing Memos] 'would'—not 'could'—

adversely impair" the interest that the work-product privilege protects. Opp. at 17. Plaintiff then argues: "That interest is fairness within the framework of the adversary system." *Id.* (quotation marks omitted).

But *Reporters Committee* did not articulate the foreseeable harm standard for cases involving work product; it involved withholding records reflecting an agency's deliberative process—a separate basis for Exemption 5. In context, the relevant passage from which Plaintiffs quote only a few words is:

> *In the context of withholdings made under the deliberative process privilege*, the foreseeability requirement means that agencies must concretely explain how disclosure "would"—not "could"—adversely impair internal deliberations. A "perfunctory state[ment] that disclosure of all the withheld information—regardless of category or substance—would jeopardize the free exchange of information between senior leaders within and outside of the [agency]" will not suffice. Instead, what is needed is a focused and concrete demonstration of why disclosure of the particular type of material at issue will, *in the specific context of the agency action at issue*, actually impede those same agency deliberations going forward. Naturally, this inquiry is *context specific*.

*Reporters Committee*, 3 F.4th at 369-70 (emphasis added) (internal citations omitted). By failing to provide context, Plaintiffs overlook the fact that *Reports Committee* does not even mention attorney work product, much less shed light on the harm that at agency needs to show to withhold work product.

Nor do Plaintiff's other citations articulate the foreseeable harm that an agency must show to withhold work product. *See* Opp. at 16-18; *Ctr. for Investigative Reporting v. U.S. Dep't of Labor*, 424 F. Supp. 3d 771 (N.D. Cal. 2019) (discussing FOIA Exemption 4 related to commercial or financial information); *Human Rights Def. Ctr. v. U.S. Park Police*, 126 F.4th 708 (D.C. Cir. 2025) (discussing FOIA Exemption 6 related to personal privacy); *Leopold v. U.S. Dep't of Justice*, 94 F.4th 33 (D.C. Cir. 2024) (discussing FOIA Exemption 8 related to regulating financial institutions).

The one case cited in this section of Plaintiff's brief that even addresses work product explains that the harm from being forced to disclose attorney work product is that lawyers would be less willing to record their thoughts at all:

> The principles of the work-product privilege have been developed in federal courts from the landmark decision in *Hickman v. Taylor*, 329 U.S. 495, 510-11, 67 S.Ct. 385, 393, 91 L.Ed. 451 (1947), which held that "it is essential that a lawyer work with a certain degree of privacy, free from unnecessary intrusion by opposing parties and their counsel." The purpose of the privilege, however, is not to protect any interest of the attorney, who is no more entitled to privacy or protection than any other person, but to protect the adversary trial process itself. It is believed that the integrity of our system would suffer if adversaries were entitled to probe each other's thoughts and plans concerning the case. *Certainly less work-product*

> *would be committed to paper*, which might harm the quality of trial preparation.

*Coastal States*, 617 F.2d at 864 (emphasis added). Contrasting the harm standard for deliberative process cases, later decisions have explained that "'[a]n agency's burden under the foreseeable harm requirement may be more easily met when invoking' the attorney-client and 'other privileges and exemptions for which the *risk of harm through disclosure is more self-evident* and the potential for agency overuse is attenuated.'" *Dhakal v. Fed. Bureau of Investigation*, No. 1:24-CV-02525 (TNM), 2026 WL 787865, at *4 (D.D.C. Mar. 20, 2026) (emphasis added) (quoting *Comm. for Freedom of the Press v. CBP*, 567 F. Supp. 3d 97, 120 (D.D.C. 2021)).

Thus, Courts do not require agencies asserting work product protection to prove that each disclosure will "undermine adversarial fairness," as Plaintiff suggests. Opp. at 17. Instead, once a document is confirmed to be work product, it is normally exempt from disclosure. *See ACLU*, 880 F.3d at 484 n.8 ("[A]lthough a party to particular litigation may be able to overcome the [work product] privilege by showing need and hardship, that does not remove the documents from the category of the *normally* privileged which are protected by Exemption 5") (internal quotation marks omitted); *Am. Small Bus. League v. DOD*, 372 F. Supp. 3d 1018, 1031 n.3 (N.D. Cal. 2019) (regarding foreseeable harm, "[t]his order finds that the government's assertion that circumvention of traditional discovery rules through FOIA would significantly impact its 'ability to conduct complex and multi-faceted litigation' . . . sufficient for the purposes Section 552(a)(8)(A).").

"To qualify for work-product protection, documents must: (1) be 'prepared in anticipation of litigation or for trial' and (2) be prepared 'by or for another party or by or for that other party's representative.'" *ACLU*, 880 F.3d at 484. DOJ has met that standard here. DOJ's declarant explained that the memos "consist of the thoughts and impressions of the Criminal Section prosecutors assigned to the criminal investigations." ECF No. 28-2 ¶ 54. "The memoranda reflect prosecutors' analysis and mental impressions about what facts were relevant to the potential charges in the case." *Id.* And they precede DOJ's decision to close a case. Buchko 2d Decl. ¶ 6. Mr. Buchko also declares that:

> Knowing that otherwise privileged communications may be publicly disclosed will chill prosecutors in expressing and memorializing candid thoughts about and analysis of different legal theories, discussing and disagreeing about potential legal arguments and enforcement/prosecution

> strategies, considering and advocating for or against potentially unpopular or controversial positions, candidly identifying weaknesses, and otherwise zealously representing the interests of their client, the American people.

ECF No. 28-2 ¶ 61.  This is more than sufficient to meet DOJ's burden under *ACLU* and *American Small Business League*.  To the extent that Plaintiff seeks proof of harm for each individual memo, Plaintiff ignores the proffered evidence that "the memoranda all follow the same fundamental format, contain the same types of information, and serve the same purpose."  ECF No. 28-2 ¶ 47.  Thus, the harm from releasing all of them is the same.

### 3. Publishing Other Case Closing Memoranda Does Not Preclude Exemption 5 Withholdings

Plaintiff fails to support its argument that since DOJ has released a subset of its closing memos under the Emmett Till Act, there must not be harm in releasing any of them.  *See* Opp. at 18-19.  Under Plaintiff's reasoning, a party who waives work product protection in one case would be forced to waive work product protection of unrelated subject matter in all future cases.  This cannot be the law.  *Cf. Kimberlin v. Dep't of Just.*, 139 F.3d 944, 949 (D.C. Cir. 1998) (in context of FOIA Exemption 7(C), "Thar's statement to the press undoubtedly does diminish his interest in privacy . . . . He still has a privacy interest, however, in avoiding disclosure of the details of the investigation . . . .").

Here, Plaintiff is also wrong on the facts, asserting, without any factual support, that "[t]hese memos have a public purpose and are often released to the public."  Opp. at 18.  While that may be true for the small subset of records that qualify for release under the Emmett Till Act or related legislation, *see* ECF No. 28 at 10-11, that is an exception and not the rule.  DOJ's declarant explains that in general, "[t]he records protected in this case document and reflect [prosecutor's] actions and deliberations by Criminal Section prosecutors as part of the CRT's prosecutorial decisionmaking."  ECF No. 28-2 ¶ 61.  "A zone of privacy around the prosecutors' forthright internal discussions was and is necessary to protect attorney impressions about core legal strategy and ensure thorough and proper decisions about whether to bring the force of the United States government against an individual in a criminal proceeding."  *Id.*

The documents Plaintiff attaches to its brief cannot rebut a finding that DOJ does not disclose closing memos for most cases because doing so would seriously interfere with prosecutors' ability to do their jobs.  To support its claim, Plaintiff produced copies of four memoranda, a report, and three press

releases.  *See* ECF No. 33-1 – 33-4, 33-7 – 33-10.  None of these examples rebuts the need for work product protection for long-form closing memos.

According to Mr. Buchko, two of the memos Plaintiff filed were prepared as part of DOJ's work on civil rights cold cases under the Emmett Till Unsolved Civil Rights Crime Act ("Till Act") and stem from deaths occurring in 1965 and 1969.  Buchko 2d Decl. ¶ 8.a; *see* ECF No. 33-3, 33-4.  The Till Act imposes specific requirements for and expectations of transparency on matters handled pursuant to that statute.  The Department decided to publish its memoranda regarding these cases due to their historical significance, as well as the historical significance of the civil rights cold cases initiative.  Buchko 2d Decl. ¶ 8.a.  Thus, "prosecutors drafting these memoranda understood at the time they were drafting that the memoranda would be published.  In contrast, prosecutors drafting memoranda related to investigations of contemporary matters usually do not expect publication of the memoranda."  *Id.*

Two other memos relate to more recent cases that were not part of CRT's Till Act work.  *See* Buchko 2d Decl. ¶ 8.b; ECF No. 33-1, 33-2.  But, Mr. Buchko explains, "[t]the disclosure of these memoranda is the exception and not the rule in terms of how CRT normally handles such memoranda, which are privileged and have historically been withheld in response to FOIA requests and otherwise.  The disclosure of these two memoranda does not set a precedent, nor does it preclude CRT from withholding other memoranda."  *Id.* ¶ 8.b.  Indeed, records about one of the cases, the investigation of the death of Lennon Lacy, are available publicly elsewhere, limiting the incremental harm of releasing a DOJ memo.[1]

Plaintiff also cited a copy of DOJ's "Report Regarding the Criminal Investigation Into the Shooting Death of Michael Brown by Ferguson, Missouri Police Officer Darren Wilson."  ECF No. 32-7.  As Mr. Buchko explains, however, this report "is not a long-form closing memorandum."  Buchko 2d Decl. ¶ 8.c.i.  Not only would the report not be responsive to Plaintiff's FOIA requests, it also does not reflect the DOJ's typical process in handling civil rights investigations.

Generally, DOJ does not comment on or acknowledge ongoing investigations.  Buchko 2d Decl. ¶ 8.c.iii; Justice Manual § 1-7.400, https://www.justice.gov/jm/jm-1-7000-media-relations.  Only certain designated DOJ officials can decide to publicly comment on an ongoing investigation and only under

---

[1] *See* https://vault.fbi.gov/lennon-lacy

certain circumstances.  Buchko 2d Decl. ¶ 8.c.iii.

Disclosure of the Brown shooting investigation was a departure from the practice of not acknowledging ongoing investigations and driven by the particular circumstances of that case.  *Id.*  Mr. Brown was shot and killed by Officer Wilson in Ferguson, Missouri, on August 9, 2014.  Buchko 2d Decl. ¶ 8.c.ii.  The shooting sparked intense local protests, clashes with police, and deployment of the National Guard in Ferguson.  *Id.* ¶ 8.c.ii.  DOJ opened investigations of the shooting and the Ferguson Police Department.  *Id.* ¶ 8.c.ii.  DOJ publicly acknowledged its criminal investigation shortly after the shooting occurred and provided updates throughout the investigation.  *Id.* ¶ 8.c.ii.  Attorney General Eric Holder publicly announced the conclusion of the investigations on March 4, 2015.  *Id.* ¶ 8.c.ii.  Simultaneously, DOJ publicly issued its "Report Regarding the Criminal Investigation Into the Shooting Death of Michael Brown by Ferguson, Missouri Police Officer Darren Wilson." *Id.* ¶ 8.c.ii.  Consistent with DOJ's practice of providing public updates and information throughout the investigation, the Attorney General publicly announced the conclusion of the investigation.  *Id.* ¶ 8.c.iv.  The Report was released in conjunction with his public statement to document DOJ's investigation, findings, and conclusions.  *Id.* ¶ 8.c.iv.

Mr. Buchko explains that "[u]nlike prosecutors drafting long-form memoranda, which are *not* regularly made public, the employees drafting the Report would have different expectations given DOJ's history of providing the public updates throughout the investigation."  *Id.* ¶ 8.c.iv.  Thus, publication of the Report does not undermine CRT's assessments about the risks of harm from publishing the long-form memos that Plaintiff requests.

Similarly, Plaintiff's citation to three press releases to argue that CRT regularly releases long-form memos misses the mark.  See ECF No. 33-8 – 33-10.  DOJ's decision to issue press releases upon the conclusion of high-profile investigations into the deaths of Freddie Gray Jr., Tamir Rice, and Alton Sterling does not support the claim that CRT regularly discloses long-form memoranda.  Like the death of Michael Brown, the deaths of these three individuals drew nationwide interest and sparked protests. *See* Buchko 2d Decl. ¶ 8.d.  Like the Brown report, the press releases are not long-form closing memos containing attorneys' private mental impressions.  Rather, they were prepared for public disclosure through consultation among the prosecutors assigned to the cases and other CRT and DOJ personnel and leaders.  The prosecution declination memoranda from these three cases were not published in conjunction

with the press releases.  Buchko Decl. ¶ 8.d.

DOJ's decision to draft separate documents (*i.e.*, the press releases) to inform the public about the cases—rather than simply disclosing any closing memoranda from the cases—shows that CRT does not regularly disclose long-form memoranda and supports DOJ's view that there is harm in doing so.[2]

**B.    DOJ's Segregability Analysis Was Sufficient**

Plaintiff does not dispute that "when the attorney work-product doctrine applies to a document, in its entirety, the segregability requirement does not apply."  Opp. at 12.  Moreover, under the FOIA, work product protection extends to factual materials as well as an attorney's legal analysis, mental impressions, and opinions. *See, e.g., Martin v. Off. of Special Couns.*, 819 F.2d 1181, 1187 (D.C. Cir. 1987) ("The work-product privilege simply does not distinguish between factual and deliberative material.").  Thus, because each of the closing memos is protected as work product, the DOJ did not need to segregate portions that are exempt from disclosure.

**C.    Plaintiff's First Request for Twenty Years of Closing Memos Fails to Comply with the Reasonable Description Requirement**

Plaintiff concedes that there are "limited circumstances where courts allow an agency to resist searching for a request based on burden," Opp. at 9, and those circumstances are present here.  While Plaintiff cites *Nation Magazine* for the proposition that an agency "must provide a sufficiently concrete showing of the time, expense, personnel, and methods a search would require," Opp. at 9, the D.C. Circuit articulated no such requirement.  Rather, the *Nation* Court required the government to provide "sufficient explanation as to why such a search would be unreasonably burdensome."  *Nation Mag., Washington Bureau v. U.S. Customs Serv.*, 71 F.3d 885, 892 (D.C. Cir. 1995).

**1.    DOJ Has Sufficiently Explained Why Searching Through 20 Years of Files Would Be Unduly Burdensome**

DOJ has satisfied its burden.  Notably, Plaintiff does not dispute the nature of the search that DOJ would need to undertake to search through records of 1,773 cases involving Section 242 violations that resulted in death that may (or may not) contain long-form closing memoranda from 1998 to 2018.  *See* ECF No. 28 at 21; ECF No. 28-2 ¶¶ 40-42.  Specifically, each case file must be reviewed to locate any

---

[2] DOJ objects that another document Plaintiff attached to its brief, the Declaration of Daniel Jones, ECF No. 32 is irrelevant to any issue presently before the Court. *See* Fed. R. Evid. 402/403.

such memo associated with the case. *Id.* ¶ 42. To do so, records management staff must research each case to determine whether it was archived in DOJ records storage (and where) or whether it has been accessioned to the National Archives and Records Administration (NARA). *Id.* Records management staff must then take administrative steps to retrieve the boxes in which the case files were archived from DOJ records storage or from NARA. *Id.*

Plaintiff gripes that DOJ does not quantify resources required to complete the search for records from 1998 to 2018, Opp. at 9, but Mr. Buchko's Second Declaration provides these estimates based on the work it took to fulfill Plaintiff's second request, for the period of 2018 to 2024.

To respond to the second request, CRT's Criminal Section searched its case management database and identified 53 investigations of potential violations of 18 U.S.C. § 242 that resulted in death. Buchko 2d Decl. ¶ 9.a. Then, CRT records management staff needed to research the transfer memoranda associated with those cases to identify the location of the relevant case files. *Id.* More than 70 transfer memoranda were identified. *Id.* Based on the information in those transfer memoranda, CRT records management staff retrieved more than 100 boxes, which were then hand-searched to locate any long-form memoranda associated with the 51 cases for which records had not already been released under the Till Act. *Id.*

Based on a search of the case management database for the period covered by Plaintiff's first request, CRT identified approximately 1,670 cases that would need to be reviewed to determine whether they included a long-form memorandum and if so, to retrieve it. Buchko 2d Decl. ¶ 9.b. Using the data above, Mr. Buchko estimates that "this would require review of approximately 2392 records transfer memoranda and retrieval/manual searches of at least 3277 boxes of files just to determine whether and what responsive records exist." *Id.* Based on the amount of time spent completing these tasks for the period 2018-2024, DOJ "estimates it would take at least 1200 hours just to locate any records responsive to Plaintiff's request covering the period 1998-2017." *Id.* And this estimate "does not include any time that the National Archives and Records Administration (NARA) would need to retrieve records stored in NARA facilities." *Id.*

### 2.    Case Law Supports DOJ's View that the Requested Search is Unduly Burdensome

Based on similar facts, courts have held that an agency need not provide records because the requested search would be unduly burdensome. *See, e.g., Nation Mag.*, 71 F.3d at 892 (a "search through 23 years of unindexed files for records pertaining to [former presidential candidate Ross] Perot" would "impose an unreasonable burden on the agency"). Here, nothing in the records suggests that there is an index to the thousands of boxes DOJ would need to review to look for closing memos. In *National Security Counselors*, the court found that a search would be unduly burdensome because it was "difficult to determine where responsive information would likely be located within the Agency because the request [was] so general." *Nat'l Sec. Couns. v. CIA*, 969 F.3d 406, 410 (D.C. Cir. 2020). Similarly, here, "records management staff must research each case to determine whether it was archived in DOJ records storage (and where) or whether it has been accessioned to the National Archives and Records Administration (NARA)." ECF No. 28-2 ¶ 42. And in *Weirich*, which Plaintiff does not attempt to distinguish, the court concluded that a search that would require "producing thousands of documents" would "significantly interfere with the [agency's] operations." *Weirich v. Bd. of Governors of the Fed. Rsrv. Sys.*, No. CV-10-5031-EFS, 2010 WL 4717211, at *4 (E.D. Wash. Nov. 15, 2010)

Plaintiff incorrectly assumes that DOJ "knows exactly what CIR wants and how to comply with the request." Opp. at 3. To be clear, to even determine whether a long form closing memo for a case exists, DOJ must search for records transfer memoranda (for which there might be more than one for a given case); it must retrieve paper records from DOJ or NARA storage; and it must hand search each box—all for something that might or might not exist. *See* ECF No. 28-2 ¶ 42 n.3.

From its flawed assumption about DOJ's indexing, Plaintiff cites several cases that are distinguishable from the facts here. This case is unlike *Public Citizen v. Department of Education*, 292 F. Supp. 2d 1, 6 (D.D.C. 2003), in which a search was "certain to turn up responsive documents." In *Tereshchuk v. Bureau of Prisons*, 67 F. Supp. 3d 441, 454 (D.D.C. 2014), the agency was "not asked to search for records" at all, but rather, asked to produce "all records already identified in the indexes provided" to Plaintiff, where BOP had already "estimated the exact number of pages of records it would have to produce." In *Shapiro v. CIA*, 170 F. Supp. 3d 147, 154 (D.D.C. 2016), the agency "disclaimed

any effort to estimate how time-consuming the search would be." That is not the case here. And in *Yagman v. Pompeo*, 868 F.3d 1075, 1081 n.6 (9th Cir. 2017), although the court noted in dicta that it "is not to say that Yagman's request fails simply because it may encompass a large number of documents," the court ultimately found that the plaintiff's request was too vague to require a search.

DOJ acknowledges that some courts have been reluctant to reject a search merely because it would return a large number of records, but even Plaintiff concedes that there are circumstances in which "courts allow an agency to resist searching for a request based on burden." Opp. at 9. Based on the timespan of the records at issue, number of cases to examine, the fact that paper records from multiple locations would need to be retrieved and reviewed, the uncertainty that responsive records will be returned for all cases, and DOJ's estimate that the search would require at least 1200 working hours to complete, the Court should rule that Plaintiff's First request fails to comply with 5 U.S.C. § 552(a)(3)(A) and not require DOJ to search for records.

### D.    DOJ Properly Invoked Other FOIA Exemptions

#### 1.    Exemption 3

Plaintiffs do not dispute that Courts have recognized Child Victims' and Child Witnesses' Rights Act, 18 U.S.C. § 3509(d) as an Exemption 3 withholding statute. *E.g., Corley v. DOJ*, 998 F.3d 981, 985 (D.C. Cir. 2021). Plaintiffs argue, however, that the statute's confidentiality obligations only apply "in connection with a criminal proceeding," 18 U.S.C. § 3509(d)(1), and that the statute does not apply before formal criminal charges have been filed. Plaintiff cites no caselaw that supports its reading of the statute. The one case it does cite merely holds that § 3509(d) "is inapplicable to 'criminal proceedings' held in State or local courts," rather than federal court. *Mid-Atl. Innocence Project v. FBI*, No. 23-CV-2112 (BAH), 2026 WL 775907, at *7 (D.D.C. Mar. 19, 2026).

Plaintiff's argument, based on a narrow definition of "proceeding" ignores part of the statutory text: "in connection with." A prosecutor's investigation leading to criminal charges is at least connected to a nascent criminal proceeding. And the D.C. Circuit has tacitly rejected placing temporal limitations on restrictions that protect children's privacy: "we seriously doubt that Congress intended that sensitive information become publicly available as soon as a criminal case ends." *Corley*, 998 F.3d at 986. Similarly, this Court should find that Congress did not intend that sensitive information regarding children

should become public simply because prosecution did not commence.

### 2.    Exemption 6 and 7(C)

Plaintiffs make three arguments against DOJ's Exemption 6 and 7(C) withholdings based on personal privacy, but none of the arguments is persuasive. *See* Opp. at 22. First, Plaintiff argues there is no proof that the privacy exemptions apply, but DOJ presented unrebutted evidence that the files contain personal information about law enforcement personnel, witnesses, and confidential informants, among others. *See* ECF No. 28-2 ¶ 83, 85.

Second, Plaintiff argues that DOJ has not proven the existence of any "nontrivial" privacy interests, but Plaintiff's cited case law holds that "[t]his is not a demanding standard" and that even a government employee's email address can be withheld under Exemption 6. *Rojas v. Fed. Aviation Admin.*, 941 F.3d 392, 405 (9th Cir. 2019). Identifying information for government employees, witnesses, and third parties in law enforcement files is entitled to similar protection. *See Blackwell v. F.B.I.*, 646 F.3d 37, 41 (D.C. Cir. 2011) ("As a result of Exemption 7(C), FOIA ordinarily does not require disclosure of law enforcement documents (or portions thereof) that contain private information.").

Third, case law rebuts Plaintiff's public interest argument. "The names, addresses, . . . and other personal identifier information of federal employees as well as third parties who may be mentioned in . . . files has been found appropriate to withhold[,] as the privacy interest in avoiding embarrassment, stigma, and harassment that arises from public association with a criminal investigation outweighs the public interest in the agency's performance of its duties." *Kortlander v. Bureau of Land Mgmt.*, 816 F. Supp. 2d 1001, 1015 (D. Mont. 2011).

Thus, DOJ properly applied Exemptions 6 and 7(C) to the records in this case.

### 3.    Exemption 7(D), 7(E), and 7(F)

Plaintiff does not dispute that Exemptions 7(D), 7(E), and 7(F) protect law enforcement information involving confidential sources, techniques and procedures for investigations, and records that could endanger life or physical safety, respectively. Plaintiff's only argument against the applicability of these exemptions is to *speculate* that the records in question are old and that "many of the people involved in several of the incidents are deceased and that the techniques and procedures are all outdated." Opp. at 23. Plaintiff cites no evidence in support of these assertions. To the extent that Plaintiff is trying to

compare the remaining cases subject to its second request to cases in which records were released under the Till Act, DOJ has explained that the Till Act and the related Cold Case Records Collection Act have a "a separate scheme from the FOIA for public disclosure" for qualifying records. ECF No. 28-2 ¶ 67. Even if a case were old, that fact, in itself, would be insufficient to negate applicable FOIA exemptions.

### E.    Plaintiff's Evidentiary Objections Lack Merit

Plaintiff's complaint that Mr. Buchko states legal conclusions is unfounded. The point of Mr. Buchko's declaration was to explain the process that DOJ followed in responding to Plaintiff's FOIA requests, including DOJ's search process and rationale for withholding certain information. Providing this factual explanation necessarily required some understanding of DOJ's FOIA obligations. Mr. Buchko is not asking the Court to accept his conclusions *as law* but is rather asking the Court to rule that the actions described in his (largely unrebutted) factual assertions complied with the law.

The Ninth Circuit has squarely rejected Plaintiff's argument that an agency's FOIA declarant must have personal knowledge of every aspect of his declaration: "[W]hile non-expert witnesses ordinarily may testify only as to matters within their personal knowledge, an agency's declarations in FOIA cases are exempt from that 'personal knowledge requirement.'" *Schoeffler v. United States Dep't of Agric.*, 795 F. App'x 526, 527 (9th Cir. 2020) (quoting *Garris v. FBI*, 937 F.3d 1284, 1292–93 (9th Cir. 2019)). In any event, Mr. Buchko provides a sufficient foundation for his testimony: He has worked for DOJ since 1996, supervises the branch responsible for processing all FOIA requests for access to CRT records, and is familiar with the procedures followed by CRT in responding to FOIA requests generally and with the response to Plaintiff's requests specifically. Buchko 2d Decl. ¶¶ 1, 4.

## III.    CONCLUSION

For the foregoing reasons, the Court should grant DOJ's motion for summary judgment and deny Plaintiff's cross-motion.

DATED:  August 7, 2026

Respectfully submitted,

CRAIG H. MISSAKIAN
United States Attorney

*/s/ Roman A. Swoopes*
ROMAN A. SWOOPES
Assistant United States Attorney
Attorneys for Defendant