**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| The Center for Investigative Reporting, <br><br> Plaintiff, <br><br> v. <br><br> United States Department of Justice, <br><br> Defendant. | ) <br>) <br>) <br>) <br>) <br>) Civil Action No. 4:25-cv-07309-AMO <br>) <br>) <br>) <br>) <br>) |

**<u>SECOND DECLARATION OF JOHN BUCHKO</u>**

I, John Buchko, declare the following to be true and correct:

1.      I am the Acting Chief of the Freedom of Information/Privacy Act (FOI/PA) Branch of the Civil Rights Division (CRT) of the United States Department of Justice (DOJ) in Washington, D.C.  My duties include supervision of the FOI/PA Branch, which is responsible for processing all requests for access to CRT records pursuant to the Freedom of Information Act (FOIA), 5 U.S.C. § 552, and the Privacy Act, 5 U.S.C. § 552a.  I have been employed by the Civil Rights Division in various positions since December 1996.  I am a member of the Senior Executive Service and a licensed attorney.

2.      I make the statements herein on the basis of personal knowledge and information provided to or acquired by me in the course of performing my official duties.  This information includes information provided to my FOI/PA Branch staff by CRT employees in the Division's Criminal Section.

3.      CRT's FOI/PA Branch receives hundreds of FOIA and Privacy Act requests annually, touching upon some of the most sensitive and publicized topics of the day.  The branch also is responsible for handling all FOIA and Privacy Act litigation as well as myriad disclosure

issues impacting CRT's records, such as FOIA consultations with other DOJ components and other federal agencies involving documents with CRT equities and responses to audits conducted by DOJ's Office of the Inspector General and by the Government Accountability Office.

4.      Due to the nature of my official duties, I am familiar with the procedures followed by CRT in responding to FOIA and Privacy Act requests generally and with those followed in responding to Plaintiff's requests specifically.

5.      This is my second declaration in this case.  It incorporates by reference and supplements my prior declaration.  *See* ECF No. 28-2, Declaration of John Buchko (Jun. 11, 2026).  This declaration is offered in further support of Defendant's motion for summary judgment in this case.

## Long-Form Memoranda Precede CRT's Final Decision to Close a Case

6.      In its opposition to Defendant's motion for summary judgment, Plaintiff asserts that long-form memoranda are prepared after CRT has made a final decision to close an investigation without bringing criminal charges.  This is inaccurate.  Long-form memoranda are drafted by Criminal Section prosecutors to recommend closure to CRT decisionmakers.  The prosecutors themselves do not have the final say in the disposition of a case.

## CRT Does Not Regularly Release Long-Form Memoranda

7.      In its opposition to Defendant's motion for summary judgment, Plaintiff avers that CRT "regularly releases" long-form memoranda drafted by prosecutors.  This is incorrect.

8.      As evidence of its claim, Plaintiff produced copies of four memoranda, a report, and three press releases.  *See* ECF No. 33, Cate Declaration, Exhibits 1-4, 7-10.

a.    Two of the memoranda Plaintiff provided were prepared as part of DOJ's work on civil rights cold cases under the Emmett Till Unsolved Civil Rights Crime Act ("Till Act"), Pub. L. No. 110-344 (Oct. 7, 2008), as amended by the Emmett Till Unsolved Civil Rights Crimes Reauthorization Act of 2016, Pub. L. 114-325 (Dec. 16, 2016), in conjunction with the Civil Rights Cold Case Records Collection Act of 2018 ("CRCCRA"), Pub. L. No. 115-426 (Jan. 8, 2019). *See* ECF No. 33, Cate Declaration, Exhibits 3-4.  The two cases stem from deaths occurring in 1965 and 1969.  As explained in my prior declaration, the Till Act imposes specific requirements for and expectations of transparency on matters handled pursuant to that statute. Moreover, early in the process of complying with the Till Act, the Department decided to publish its memoranda regarding these cases due to their historical significance, as well as the historical significance of the civil rights cold cases initiative.  Accordingly, prosecutors drafting these memoranda understood at the time they were drafting that the memoranda would be published. In contrast, prosecutors drafting memoranda related to investigations of contemporary matters usually do not expect publication of the memoranda.

b.    Two of the memoranda relate to more contemporary cases that were not part of CRT's Till Act work.  *See* ECF No. 33, Cate Declaration, Exhibits 1-2.  The disclosure of these memoranda is the exception and not the rule in terms of how CRT normally handles such memoranda, which are privileged and have historically been withheld in response to FOIA requests and otherwise.  The disclosure of these two memoranda does not set a precedent, nor does it preclude CRT from withholding other memoranda.  Agencies are permitted to make

3

discretionary releases of records that are otherwise exempt under the FOIA without forever waiving their ability to protect similar records in the future.[1]

c.       Plaintiff also provided a copy of DOJ's "Report Regarding the Criminal Investigation Into the Shooting Death of Michael Brown by Ferguson, Missouri Police Officer Darren Wilson." *See id.*, Exhibit 7.

i.       This report is not a long-form closing memorandum.

ii.       Mr. Brown was shot and killed by Officer Wilson in Ferguson, Missouri, on August 9, 2014. The shooting sparked intense local protests, clashes with police, and deployment of the National Guard in Ferguson. DOJ opened a criminal investigation of the shooting as well as a civil pattern or practice investigation of the Ferguson Police Department. DOJ publicly acknowledged its criminal investigation shortly after the shooting occurred and provided updates throughout the investigation.[2] Attorney General Eric Holder publicly

---

[1] Records about one of the cases, the investigation of the death of Lennon Lacy, including records from the North Carolina State Bureau of Investigation's investigation of his death, are available in the FBI's FOIA "Vault" at https://vault.fbi.gov/lennon-lacy (last accessed Aug. 4, 2026).

[2] *See* "Statement by Attorney General Eric Holder on Latest Developments in Ferguson, Missouri" (Aug. 14, 2014), https://www.justice.gov/archives/opa/pr/statement-attorney-general-eric-holder-latest-developments-ferguson-missouri; "FBI, Justice Officials Announce Next Steps in Federal Civil Rights Investigation in Ferguson, Missouri" (Aug. 15, 2014), https://www.justice.gov/archives/opa/pr/fbi-justice-officials-announce-next-steps-federal-civil-rights-investigation-ferguson; "Statement by Justice Department Spokesman on Latest Developments in Federal Civil Rights Investigation in Ferguson, Missouri" (Aug. 17, 2014), https://www.justice.gov/archives/opa/pr/statement-justice-department-spokesman-latest-developments-federal-civil-rights-investigation; "Attorney General Statement on Latest Developments in Federal Civil Rights Investigation in Ferguson, MO" (Aug. 18, 2014), https://www.justice.gov/archives/opa/pr/attorney-general-statement-latest-developments-federal-civil-rights-investigation-ferguson-mo; "AG Eric Holder Travels to Ferguson, Missouri" (Aug. 20, 2014), https://www.justice.gov/opa/gallery/attorney-general-eric-holder-travels-ferguson-missouri; "AG Eric Holder's Statement on Developments in Ferguson, MO" (Aug. 21, 2014), https://www.justice.gov/archives/opa/video/ag-eric-holders-statement-developments-ferguson-mo; "Attorney General Holder Visits Ferguson, Missouri" (Aug. 22, 2014), https://www.justice.gov/archives/opa/blog/attorney-general-holder-visits-ferguson-missouri; "Readout of Justice Department Officials' Trip to Ferguson, Missouri" (Oct. 3, 2014), https://www.justice.gov/archives/opa/pr/readout-justice-department-officials-trip-ferguson-missouri; "Readout of Attorney General Holder's Phone Call with Elected Officials from Missouri" (Nov. 12, 2014), https://www.justice.gov/archives/opa/pr/readout-attorney-general-holders-phone-call-elected-officials-missouri; "Attorney General Holder Statement on the Conclusion of the Grand Jury Proceeding in the Shooting of Michael Brown" (Nov. 24, 2014), https://www.justice.gov/archives/opa/pr/attorney-general-holder-statement-conclusion-grand-jury-proceeding-shooting-michael-brown (last accessed Aug. 3, 2026).

announced the conclusion of the investigations on March 4, 2015.[3]  Simultaneously, DOJ

publicly issued its "Report Regarding the Criminal Investigation Into the Shooting Death of

Michael Brown by Ferguson, Missouri Police Officer Darren Wilson."[4]

        iii.        Generally, DOJ does not comment on or acknowledge ongoing

investigations.  *See* Justice Manual § 1-7.400, https://www.justice.gov/jm/jm-1-7000-media-relations (last accessed Aug. 3, 2026).  Only certain designated Department officials can decide

to publicly comment on an ongoing investigation and only under certain circumstances.  *Id*.

Disclosure of the Brown shooting investigation was a departure from the practice of not

acknowledging ongoing investigations and driven by the particular circumstances of that case.

        iv.        Consistent with DOJ's practice of providing public updates and

information throughout the investigation, the Attorney General publicly announced its outcome

at the conclusion of the investigation.  The Report was released in conjunction with his public

statement to document DOJ's investigation, findings, and conclusions.  Unlike prosecutors

drafting long-form memoranda, which are *not* regularly made public, the employees drafting the

Report would have different expectations given DOJ's history of providing the public updates

throughout the investigation.  Accordingly, publication of the Report does not undermine CRT's

assessments about the risks of harm from publication of the long-form memoranda requested by

Plaintiff.

---

[3] "Attorney General Holder Delivers Update on Investigation in Ferguson, Missouri," March 4, 2015. https://www.justice.gov/archives/opa/speech/attorney-general-holder-delivers-update-investigations-ferguson-missouri (last accessed Aug. 3, 2026).

[4] "Department of Justice Report Regarding the Criminal Investigation Into the Shooting Death of Michael Brown by Ferguson, Missouri Police Officer Darren Wilson," March 4, 2015. https://www.justice.gov/sites/default/files/opa/press-releases/attachments/2015/03/04/doj_report_on_shooting_of_michael_brown_1.pdf (last accessed Aug. 3, 2026).

d.      Finally, Plaintiff pointed to three press releases to argue that CRT regularly releases long-form memoranda.  *See* ECF No. 33, Cate Declaration, Exhibits 8-10.  DOJ's decision to issue press releases upon the conclusion of high-profile investigations into the deaths of Freddie Gray Jr., Tamir Rice, and Alton Sterling does not support the claim that CRT regularly discloses long-form memoranda.  Like the death of Michael Brown, the deaths of these three individuals drew nationwide interest and sparked, to varying degrees, protests and civil unrest.  While the press releases contained detailed information about DOJ's investigations, they are not the long-form memoranda from those cases.  The press releases were prepared for public disclosure through consultation among the prosecutors assigned to the cases and other CRT and DOJ personnel and leaders.  The prosecution declination memoranda from the cases were not published in conjunction with the press releases.  Thus, rather than supporting Plaintiff's argument, DOJ's decision to draft separate documents (*i.e.*, the press releases) to inform the public about the cases—rather than simply disclosing any closing memoranda from the cases— shows that CRT does not regularly disclose long-form memoranda and underscores CRT's assessment that there is harm in doing so.

**Complying With Plaintiff's First Request Would Be Unduly Burdensome**

9.      For additional clarity regarding the overbreadth of Plaintiff's first request, which spans two decades of records,[5] more detail about CRT's search for records in response to Plaintiff's second, narrower request is illustrative.

---

[5] Plaintiff's first request covered the period 1998 – 2018.  Plaintiff's second request covered the period 2018-2024. CRT concluded that, standing on its own the second request was not overly burdensome, searched for and identified responsive records, and processed those records, ultimately determining that they were exempt with no reasonably segregable non-exempt portions available for disclosure.  Accordingly, Plaintiff's first request is functionally narrowed to the period 1998-2017.

6

a.        To respond to the second request, CRT's Criminal Section searched its case management database to identify investigations of potential violations of 18 U.S.C. § 242 that resulted in death.  This search identified 53 cases, two of which were determined to be Till Act cases and thus, already publicly available.  Then, CRT records management staff needed to research the transfer memoranda associated with those cases to identify the location of the relevant case files.  More than 70 transfer memoranda were identified and reviewed.  Based on the information in those transfer memoranda, CRT records management staff retrieved more than 100 boxes, which were then hand-searched to locate any long-form memoranda associated with the 51 cases.

b.        Based on a search of the case management database for the period covered by Plaintiff's first request, CRT identified approximately 1670 cases that would need to be reviewed to determine whether they included a long-form memorandum and if so, to retrieve it. Using the data above, it can be extrapolated that this would require review of approximately 2392 records transfer memoranda and retrieval/manual searches of at least 3277 boxes of files just to determine whether and what responsive records exist.  Based on the amount of time spent completing these tasks for the period 2018-2024, CRT estimates it would take at least 1200 hours just to locate any records responsive to Plaintiff's request covering the period 1998-2017.  This does not include any time that the National Archives and Records Administration (NARA) would need to retrieve records stored in NARA facilities.[6]

---

[6] Because of the relative newness of the records covered by Plaintiff's second request, CRT did not have to request any boxes from NARA.  Since Plaintiff's first request covers two decades, it is almost certain that at least some boxes are currently with NARA.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed this 7th day of August 2026.

John Buchko, Acting Chief
FOI/PA Branch
Civil Rights Division
U.S. Department of Justice
Washington, D.C. 20530